# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| MENG HUANG,<br>        Plaintiff,<br>v.<br>THE OHIO STATE UNIVERSITY and<br>GIORGIO RIZZONI,<br>        Defendants. | Case No: 2:19-cv-1976<br><br>Judge James L. Graham<br><br>Magistrate Judge: Chelsey M. Vascura |

## **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Now come Defendants The Ohio State University and Dr. Giorgio Rizzoni, and for their Reply in Support of Motion for Summary Judgment, state as follows:

### **I.    Introduction**

Throughout the entirety of this case, Plaintiff has relied on broad allegations and bold speculation as a proxy for proof. In her Memorandum in Opposition, she wades even farther into these murky waters in the hopes of muddying the issues. This Court should not get stuck in this morass.

As will be more fully demonstrated below, just because this case involves an analysis of *expansive* facts does not mean that there exist any genuine disputes of *material* fact. And while Plaintiff seeks to salvage her claims by alternatively engaging in unfettered speculation, misrepresenting the facts which have been established during the exhaustive discovery proceedings and misconstruing applicable law, it is not enough to forestall summary judgment. Plaintiff fails to meet her affirmative burden as the non-moving party to point the Court to facts in the record that create genuine issues of fact with respect to her specific claims. As such, her claims must be dismissed as a matter of law.

## II. Standard of Review

### A. Plaintiff is Incorrect that Engaging in Speculation is the Same Thing as a "Reasonable Inference" from Evidence.

Initially, as Defendants demonstrated in their Memorandum in Support, Plaintiff's claims are in many respects so contradicted by undisputed fact that she cannot possibly prevail on them. Rather than confront this directly, Plaintiff seeks to shift the focus by claiming that Defendants "ignore the essential standard of review" because Defendants cited multiple cases where courts in this circuit have dismissed claims as a matter of law for being too implausible and contradicted by record evidence. (MIO, ECF #114, PAGEID # 6254). Plaintiff further attempts to claim that dismissal in such a circumstance is only appropriate where "video" evidence demonstrates that Plaintiff's claims are "beyond belief." Id. That is not the law in this circuit. Defendants cite to multiple cases where claims have been dismissed based upon indisputable evidence other than video. See, e.g., *Gearhart v. E.I. DuPont de Nemours and Co.,* 833 Fed. App'x. 416, 424 (6th Cir. 2020)(medical records), *Stokes v. Bridgestone Firestone N.A., LLC,* 2009 WL 1617731, *7 (N.D. Ohio June 9, 2009) (business or personnel records) and *Mason v. Wal-Mart Corporation,* 2016 WL 2624960, *9 (S.D. Ohio May 9, 2016) and *Mhanna v. AK Steel Corporation,* 2011 WL 4711902, * 5 (S.D. Ohio Oct. 6, 2011) (testimony of uninterested witnesses). The same result should hold here.

Plaintiff further mischaracterizes Defendants' position by claiming that Defendants are asking the Court to determine issues of credibility versus weighing actual evidence. (MIO, ECG #114, PAGEID # 6254). That characterization is also incorrect. Rather, as Defendants have demonstrated, many of Plaintiff's fundamental allegations are based upon speculation or misrepresentation of facts – not evidence in the record. Plaintiff

2

mischaracterizes her speculation as "reasonable inference," but that mischaracterization does not change this Court's analysis or save her claims. Id., PAGEID ## 6254-58.

More precisely, most of Plaintiff's speculation relates to what she claims is a far-flung conspiracy against her stemming from her "rejection" of Dr. Rizzoni's alleged sexual advances toward her and Dr. Rizzoni's alleged attempts to retaliate against her for doing so. For instance:

• Plaintiff speculates that Dr. Rizzoni and the members of her Ph.D. candidacy committee conspired to give her a failing grade on her Ph.D. candidacy examination. Id., PAGEID # 6256. The evidence in the record, however, in the form of sworn, unrebutted testimony demonstrates that the independent members of her committee failed her based upon their own objective considerations and they were not influenced by Dr. Rizzoni. (Exhibit H to MSJ, Affidavits of candidacy committee members).

• Plaintiff speculates that the University conspired to dismiss her internal complaint of sexual misconduct against Dr. Rizzoni in order to "protect" Dr. Rizzoni, a "powerful and influential" faculty member. (MIO, PAGEID## 6257-58). The evidence in the record, however, in the form of sworn, unrebutted testimony, demonstrates that the University investigators had never even heard of Dr. Rizzoni and reached their investigative conclusions based upon the evidence they discovered and not some undue influence related to Dr. Rizzoni. (Hoge Depo., pg. 46, 50; Parry Depo., pg. 66; Brennan Depo., pg. 52).

• Plaintiff speculates that Dr. Rizzoni must have known about her sexual misconduct complaint much sooner than he did (which is crucial to Plaintiff's retaliation claims) because he should have construed questions about Plaintiff failing her Ph.D. candidacy examination as complaints about sexual harassment. (MIO, PAGEID## 6256-57). The evidence in the record, however, in the form of sworn, unrebutted testimony, demonstrates that Dr. Rizzoni had no knowledge of Plaintiff's complaint of sexual misconduct until December 18, 2018, 5 days after it was made. (Rizzoni Depo. Vol. III, pgs. 79-83). As such, any "action" taken with respect to Plaintiff *prior to* Dr. Rizzoni actually learning that Plaintiff filed a complaint against him cannot form the basis for any claim for retaliation.

The Sixth Circuit has repeatedly held that courts reviewing motions for summary judgment may draw reasonable inferences from evidence but cannot accept as "evidence"

3

speculation or conjecture, especially in cases where the speculation is directly contradicted by the record. See, e.g., *Jordan v. Kohl's Department Stores*, 490 Fed. Appx. 738, 743 (6th Cir. 2021) ( ". . . unsubstantiated speculation does not create or support a reasonable inference . . . ."). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt the version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In short, this Court can and should see Plaintiff's arguments for what they are—extensive speculation unmoored from the facts—and need only rely on the undisputed facts, not issues of credibility, to dismiss them accordingly

> **B. Plaintiff Fails to Meet her Affirmative Burden as the Non-Moving Party to Point the Court to Facts in the Record That Create Issues of Fact with Respect to her Specific Claims.**

Notably, Plaintiff relies on the above misdirection because she has not identified any actual record facts that create a genuine issue. While the burden is initially on the moving party to show the absence of any genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the nonmoving party must then present "significant probative evidence" to "do more than show that there is some metaphysical doubt as to the material facts" to defeat the motion. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). In order to defeat summary judgment, a non-moving party is *required* to direct the Court to specific "materials in the record, including depositions, documents, electronically stored information, affidavits or declaration,

4

stipulations, admissions, interrogatory answer or other materials" that demonstrate a "genuine dispute of material fact." *M.J. v. Akron City School District,* 1 F. 4th 436, 445-46 (6th Circuit 2021)(Citations omitted). When the nonmovant does not effectively address the movant's assertion of a fact, the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Plaintiff spent very little time citing the Court to evidence in the record and applying the facts to the law. Instead, Plaintiff's Memorandum in Opposition offers a few bare-bones arguments and simply attaches a separate document which she refers to as her "Counterstatement of Facts," with no explanation of how that document creates genuine issues of material fact. Either Plaintiff expects the Court to search through the record and/or her "Counterstatement of Facts" to locate the facts that she claims support her arguments, or she simply seeks to obscure the fact that she cannot make those connections. Either way, Plaintiff fails to meet her burden as a matter of law. The Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims. That is the plaintiff's job. *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404-406 (6th Cir. 1992) ("It is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not.") See also, *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007); *Viergutz v. Lucent Techs., Inc.,* 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted)(The party opposing summary judgment has a shifting burden and

5

"must . . . set out specific facts showing a genuine issue for trial [on each of its claims]."); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–1480 (6th Cir. 1989)("[T]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

Defendants' motion for summary judgment should be decided – and granted – based upon the non-speculative facts cited by Defendants in the extensive record developed through discovery in this case.

**III.     Plaintiff's Causes of Action**

    **A.     Plaintiff's Title VII Sexual Harassment Against OSU Only Fails as a Matter of Law.**

Plaintiff's legal arguments fare no better.  To be clear, Plaintiff alleges sexual harassment pursuant to Title VII. (Compl., Section V (C)).  Courts recognize two types of actionable sexual harassment pursuant to Title VII:  quid pro quo and hostile work environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S. Ct. 2399 (1986).  Plaintiff claims both forms of sexual harassment in this case. (Compl., ¶¶ 188, 189).  Defendant OSU has raised an absolute defense to the entirety of Plaintiff's Title VII sexual harassment claims – that her claims are barred by the affirmative defense set forth by the United States Supreme Court in the cases of *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 765 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998).

Inexplicably, Plaintiff alleges in her Memorandum in Opposition that because OSU did not discuss the underlying elements to establish a hostile work environment claim that it has "tacit[ly] admi[tted] that summary judgment is inappropriate on this claim." (MIO, PAGEID #6258).  Such an assertion is without merit.  As Plaintiff is forced to admit, OSU "seek[s] summary judgment on the entirety of Plaintiff's claims." Id.  The University

6

thoroughly discussed and addressed the dismissal of Plaintiff's sexual harassment claims pursuant to the *Ellerth/Faragher* defense in its motion. That defense applies equally to all sexual harassment claims, both hostile work environment and quid pro quo. *Thornton v. Federal Express Corp.,* 530 F. 3d 451, 457 (6th Cir. 2008). And, as discussed more fully below, Plaintiff fails to anchor her bare opposition to applicable facts or law.

**1.** ***Ellerth/Faragher* bars Plaintiff's sexual harassment claims.**

As previously addressed in Defendants' motion for summary judgment, an employer like OSU may avoid vicarious liability for an employee's claims of sexual harassment by establishing an affirmative defense consisting of the following elements: 1.) there was no tangible action taken with respect to the plaintiff's employment, 2.) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and 3.) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Deters v. Rock-Tenn. Co., Inc.*, 245 F. App'x 516, 525 (6th Cir. 2007)(Citations omitted). Defendant OSU meets all elements of this defense.

**a.     No tangible employment action.**

Plaintiff claims that she suffered a tangible employment action which defeats the *Ellerth/Faragher* defense in the form of "revocation of Huang's supplemental stipend, removal from the Ford research project and termination of her position as a graduate research associate." (MIO, PAGEID # 6264). Plaintiff's assertions are without merit.

First, as previously addressed in Defendants' motion for summary judgment, Title VII is an *employment* statute. (Title VII prohibits discriminatory practices by "employers." 42 U.S.C. ¶ 2000e-2). Plaintiff's Title IX "sexual harassment" claims, *based upon her status*

7

*as a student*, have been dismissed by this Court. (Order on MTD, ECF #38, PAGEID # 483-84)(Dismissing Plaintiff's Title IX sexual harassment claims in their entirety.) As such, in order to defeat the *Ellerth/Faragher* defense, Plaintiff must demonstrate a tangible action related to her employment, not her student status at the University. She has not and cannot do so.

Plaintiff was a Graduate Fellow (student status) at the University until the end of August 2017. (Jeffrey Bons Affidavit, Exhibit S to MSJ, ECF # 12-2). It was during her time as a Graduate Fellow that Plaintiff received University credits toward her OSU degree as a visiting scholar in 2016 at Ford Motor Company and as an intern in 2017, also at Ford. Id. While she received stipends from the University to offset her educational costs during this time, she did not receive compensation as an employee of the University until she became a Graduate Research Associate in late August, 2017 – after she returned to Ohio from her summer internship at Ford. Id.; see also (Compl., ¶¶ 54, 100). So, when Plaintiff claims a tangible "employment" action related to the revocation of her supplemental student stipend and the termination of her student internship with Ford, she complains of actions related to her status as a student, not an employee. Plaintiff provides no evidence to the contrary; rather, her opposition seeks only to sow confusion.

Second, with respect to Plaintiff's employment as a graduate research associate with the University, she claims that her employment was "terminat[ed]," but provides no evidentiary support for that bald claim. [1] (MIO, PAGEID# 6264). In fact, Plaintiff continued as a Graduate Research Associate under the supervision of her new advisor, Dr. Kumar,

---

[1] Plaintiff's Memorandum in Opposition is the very first time Plaintiff has ever alleged that her employment as a Graduate Research Associate was "terminated." She makes no such allegation in her Complaint because it is not true. Nor does she provide any factual support for this claim.

8

until the time of her graduation. (Graduate Associate Appointment, Exhibit T to MSJ). She even received a pay raise in the fall of 2018. Id. Again, the undisputed facts flatly contradict her unsupported assertions.

### b. OSU promptly corrected any alleged sexually harassing behavior.

Plaintiff further claims that the *Ellerth/Faragher* defense is inapplicable because "[i]ssues of material fact exist as to whether OSU promptly investigated [Huang's complaint and] whether OSU corrected the harassment." (MIO, PAGEID # 6265). First, conducting a "prompt" investigation is not an element of the *Ellerth/Faragher* defense. That defense requires only that the employer "correct promptly any sexually harassing behavior" upon receiving a complaint of sexual harassment from an employee. *Deters,* 245 Fed. App'x at 525. Even if a "prompt" investigation was an element of the *Ellerth/Faragher* defense, Plaintiff has provided no caselaw or other authority to support a claim that the investigation completed by OSU was not prompt. Second, Plaintiff does not dispute that OSU promptly corrected any sexually harassing behavior, as she admits: "the investigation was promptly initiated [and] OSU separated Huang and Rizzoni and she was not sexually harassed by him after December 2017 [the day she complained to OSU]." (MIO, PAGEID # 6265). Plaintiff, however, goes on to claim that the sexual harassment was not "corrected" because she "was not returned to the Ford Research project and she did not graduate from the Center for Automotive Research program." [2] Id. Again, Plaintiff attempts to add

---

[2] As fully established by OSU in its Motion for Summary Judgment, there is no such thing as "graduating" from CAR. CAR is a research entity. It is not a graduate program within the University from which a student could earn a degree. (Rizz. Depo. Vol. III, pgs. 8-9, 13). This is a good example of the type of blatant misrepresentation in which Plaintiff repeatedly engages in response to Defendants' Motion for Summary Judgment

9

elements to the *Ellerth/Faragher* defense that do not exist.  OSU was required to correct "any sexually harassing behavior," which it clearly did.

### c.    OSU acted reasonably to prevent sexual harassment on campus.

Plaintiff next claims that OSU did not act reasonably to prevent sexual harassment on campus because it did not "implement mandatory sexual harassment training . . . until 2017 [and] because it closed its Office of Sexual Empowerment and Civility." (MIO, PAGEID # 6265).   Again, Plaintiff seeks to add additional elements to the well-defined *Ellerth/Faragher* defense.  In order to satisfy the "act reasonably to prevent" element of the defense, the Sixth Circuit has held that an employer satisfies that prong when it has shown that it has a sexual harassment policy that it follows and enforces. While there is no exact formula for assessing whether or not a specific sexual harassment policy is adequate, the Sixth Circuit has held that "an effective harassment policy should at least: (1) require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide a mechanism for bypassing a harassing supervisor when making a complaint; and (4) provide for training regarding the policy." *Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 349-50 (6th Cir. 2005). The existence of such a policy is "strong evidence that the employer took sufficient general measures to prevent harassment." *Collette v. Stein-Mart, Inc.*, 126 Fed. App'x. 678, 685 (6th Cir. 2005).

It is undisputed that OSU's policy, both now and at the time of the alleged harassment, satisfies all requirements set forth by the Sixth Circuit.  (Sexual Misconduct Policy, Exhibit M to MSJ).  The policy, even as far back as 2014, provided for ongoing training within its various divisions, even though campus-wide training was not required at

10

that time. With respect to students, the University provided training upon their admission on issues of sexual misconduct, provided copies of OSU's policies with respect to investigating and adjudicating claims of sexual misconduct (which are also easily accessed on line) and provided ongoing information regarding OSU's initiatives to combat sexual misconduct on campus. (Brennan Depo., pg. 85.) "Specialized" training on sexual harassment and University sexual misconduct polices was provided to international students "to ensure that they knew their rights and options." Id. pgs. 160-61.

Indeed, Dr. Rizzoni testified that, although he did not participate in campus-wide sexual harassment training until 2017, he participated in training on sexual harassment and University polices well before then at faculty meetings. ( Rizz. Depo., pg. 111.) He has also read the University's sexual misconduct policy in its entirety and, even before mandatory training was initiated by the University, "the faculty and the staff at the University understood the basic significance of sexual harassment." Id. Dr. Rizzoni further testified that even before mandatory training was initiated by the University, he was aware that "harassment towards an individual related to things such as unwanted sexual advances and the like was not an appropriate behavior, not an accepted and tolerated behavior." Id.

### d. Plaintiff's 4-year failure to report is unreasonable.

As the final element of the *Ellerth/Faragher* defense, OSU has demonstrated with citations to controlling caselaw that Plaintiff's failure to report the alleged harassment for nearly 4 years was unreasonable. (MSJ, pgs. 65-71). Plaintiff baldly claims that she "has produced sufficient evidence for a jury to find that it was reasonable for her to fear retaliation if she made a complaint," but fails to describe what that "evidence" is or to cite

11

the Court to any record evidence on that topic. (MIO, PAGEID #6266). Defendants will not reiterate their arguments on this topic here but direct the Court to the record citations and case authority contained in its Motion for Summary Judgment on pages 65 to 71. Ultimately, then, none of Plaintiff's attempted parries succeed, and summary judgment on this claim is appropriate.

### B. Plaintiff's Title VII and Title IX Retaliation Against OSU Only Fail as a Matter of Law.

Plaintiff's attempts to salvage her retaliation claims fare no better. Retaliation claims under Title VII and Title IX are analyzed under the same framework. *Bose v. Bea,* 947 F. 3d 983, 988 (6th Cir. 2020). In order to prevail on a retaliation claim under either statute, a plaintiff must demonstrate "that (1) [s]he engaged in protected activity, (2) [defendant] knew of the protected activity, (3) [s]he suffered an adverse school-related [or employment] action, and (4) a causal connection exists between the protected activity and the adverse action." Id., quoting *Gordon v. Traverse City Area Pub. Schs.*, 686 Fed. App'x 315, 320 (6th Cir. 2017). The Memorandum in Opposition does not come close to offering a legitimate case for her claims moving forward.

#### 1. Plaintiff's alleged protected activity and OSU's knowledge of it.

Apparently realizing that many of the actions of Dr. Rizzoni and OSU that Plaintiff claims are "retaliation" occurred *well before* Plaintiff engaged in any "protected activity," Plaintiff once again urges the Court to engage in wholesale speculation to save her claims. The only protected activity in which Plaintiff engaged was making her report of sexual misconduct to the University on December 12, 2017 and allegedly rejecting Dr. Rizzoni's

sexual advances.³ It is undisputed that Dr. Rizzoni knew nothing of her report until December 18, 2017. (Rizzoni Depo., Vol. III, pg. 80). Dr. Rizzoni believed he was meeting with University officials on December 18 to discuss the "aftermath of a [candidacy] exam failure" and was "quite surprised" to learn a student had complained about sexual misconduct. Id. Plaintiff has presented not a shred of evidence, beyond speculation and conjecture, that OSU was on notice of her claims of sexual misconduct before December 12, 2017 or that Dr. Rizzoni was on notice of her claims of sexual misconduct before December 18, 2017.

Lacking any record facts to the contrary, Plaintiff instead asks the Court to speculate that a jury could "infer" that Dr. Rizzoni "deduced that Huang had discussed [] harassment with her Ford supervisor [in November 2017]." (MIO, PAGEID # 6267). Of course, Huang, herself admits that she did not discuss any alleged sexual misconduct with Ford until *after* she had complained to OSU in December 2017. (Plf. Depo., pg. 167-73).⁴ Further, Plaintiff admitted that she told no one of the alleged harassment until after she complained to the University (Plf. Depo., pg. 129-30) and Dr. Rizzoni's undisputed testimony establishes that he had absolutely no knowledge related to any complaint of sexual misconduct until

---

³ The issues surrounding alleged retaliation for Plaintiff rejecting alleged sexual advances is fully discussed in Defendants' Motion for Summary Judgment on pages 79-82 and will not be reiterated here. Plaintiff does not even mention this issue in her Memorandum in Opposition – except for the conclusory statement that she "suffered adverse employment actions at the hands of [Dr.] Rizzoni after she refused to meet with him in person." She provides no description of the adverse employment actions or citations to evidence to support this allegation. (MIO, PAGEID # 6268).

⁴ One must question why Plaintiff would suggest that a jury could infer that she told Ford about the alleged harassment (at this point in time) when she admits in her sworn testimony that she did not.

13

December 18, 2017.  (Rizzoni Depo., Vol. III, pg. 80).  Plaintiff cannot change the facts by urging the Court or a jury to engage in speculation.  *Jordan,* 490 Fed. Appx. at 743.

### 2. Alleged retaliation.

Because an employer's knowledge of protected conduct by an employee is an essential element of a claim of retaliation, only allegedly retaliatory actions by OSU after December 12 or by Dr. Rizzoni after December 18 may be considered to support Plaintiff's claims.  *Gordon,* 686 Fed. App'x at 320.   Critically, Plaintiff does not examine the alleged retaliatory acts in connection with the timeline of protected activities or in view of the facts underlying the acts themselves, and for good reason—doing so definitively disproves her claim.  Specifically:

> • Plaintiff's allegations of retaliation include that she "lost her [student] stipend, was denied access to her research, was removed from the Ford Research Project [and no longer researched at] CAR. " (MIO, PAGEID # 6268).  Plaintiff, herself, admits that these actions occurred after her failure of the Ph.D. examination but *before* she even filed the university complaint against Dr. Rizzoni, so these cannot constitute retaliatory acts. (Plf. Depo., pgs. 277-85).

> • Plaintiff alleges that she "had to wait an additional semester to graduate." (MIO, PAGEID # 6268).  Plaintiff's date of graduation had nothing to do with Dr. Rizzoni or the University. Instead, the undisputed evidence demonstrates that Plaintiff's graduation was delayed because she had not authored any peer reviewed journal publications.  (Dr. Kumar Aff., Ex. P to MSJ).

> • Plaintiff alleges that the University conducted a "sham" investigation in retaliation for her complaint.  (MIO, PAGEID #6268). Because an essential element of a retaliation claim is that the employee or student suffered an "adverse consequence," Plaintiff cannot maintain a retaliation claim related to the University investigation.  When Plaintiff was asked in her deposition what adverse consequences she suffered as a result of OSU's investigation, she stated 1.) that she "was traumatized," 2.) Dr. Rizzoni was reinstated, 3.) her reputation suffered because students, faculty members and staff knew that Dr. Rizzoni was "wholly reinstated," 4.)

14

her physical health suffered, 5.) her graduation was delayed because of the "sexual harassment and investigation," and 6.) she lost job opportunities because of Dr. Rizzoni's influence in the auto industry. (Plf. Depo., pgs. 257-61). Plaintiff admits she was assigned a new advisor, was given another chance to take her Ph.D. candidacy examination and graduated from OSU in 2019. Id., pg. 124. In summary, none of the above alleged "consequences" from the investigation, even if true, constitute retaliation because none "significantly impacted [Plaintiff's] advancement." See, e.g., *James v. Metropolitan Gov't of Nashville,* 243 Fed. App'x. 74, 79 (6th Cir. 2007), (no retaliation where an employee received bad employment evaluations, had been denied a lateral transfer, and had had work quotas imposed upon her because none of these had significantly impacted her professional advancement); *Vaughn v. Louisville Water Co.,* 302 Fed. App'x. 337, 348 (6th Cir. 2008) (although negative performance evaluations could be materially adverse actions, a plaintiff must show that his salary or professional advancement was affected); *Hunter v. Secretary of U.S. Army,* 565 F.3d 986, 996–97 (6th Cir. 2009)(transfer to a different unit not an adverse action where the plaintiff did not allege that it had "resulted in significantly different responsibilities, a change in benefits, or any other negative effect."); *Moore v. Abbott Laboratories,* 780 F. Supp. 600, 623 (S.D. Ohio 2011)(co-worker's negative comments about a plaintiff's competency or performance not actionable retaliation).

Plaintiff's claims of retaliation under both Title VII and Title IX fail as a matter of law.

### C. Plaintiff's Claim of Violation of Substantive Due Process Via Sexual Harassment Under 42 U.S.C. § 1983 Against Dr. Rizzoni Only Fail as a Matter of Law.

Finally, Plaintiff has invented factual scenarios to support her claim against Dr. Rizzoni which are disproven by record evidence, unassailable facts, and indisputable testimony of uninterested third parties. Again, "[w]hen opposing parties tell two different stories, one which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt the version of the facts for purposes of ruling on a motion for summary judgment." *Scott,* 550 U.S. at 380. With respect to this claim against Dr. Rizzoni – as with the other causes of action in her Complaint – Plaintiff cites the Court to

15

not a single fact, document, or any other evidence in support of this claim in her Memorandum in Opposition. Instead, Plaintiff simply declares that she has "produced sufficient evidence" or that she has "established that sufficient evidence exists to support her claims of sexual harassment and assault" *without a single citation to any such record evidence.* (MIO, PAGEID ## 6269 - 6271). Because the Court is not required to try to figure out what, if any, evidence supports her sexual harassment allegation against Dr. Rizzoni, her claim should be dismissed on these grounds alone.

This claim was fully addressed in Defendants' Motion for Summary Judgment and will not be reiterated here except to point the Court to further misrepresentations of the record as perpetrated by Plaintiff in her "Counterstatement of Facts." Plaintiff attempts to mislead the Court into believing that other witnesses or record evidence support her claims that she was sexually harassed by Dr. Rizzoni when, in fact, the only witness to make such allegations is the Plaintiff herself and the overwhelming weight of the evidence clearly disproves her claims.

Plaintiff repeatedly attempts to mislead the Court, *by citing to the depositions of Jonathan Parry (the OSU human resources professional who investigated her complaint to the University) or Dr. Rizzoni to establish that she was inappropriately touched by Dr. Rizzoni.* For instance, Plaintiff's Counterstatement of Facts states that Dr. "Rizzoni grabbed and rubbed her buttocks," Dr. Rizzoni "touch[ed] her breasts and buttocks," Dr. "Rizzoni pulled her to him and squeezed her legs between his thighs while he was sitting in his office chair." As evidentiary support for these statements, Plaintiff cites the Court to the deposition testimony of Jonathan Parry and Dr. Rizzoni. (Counterstatement of Facts, PAGEID ## 6277-6280). The citations to the depositions of Dr. Rizzoni and Mr. Parry,

16

however, do not, in any fashion, support Plaintiff's claims that she was inappropriately touched by Dr. Rizzoni. In fact, Dr. Rizzoni repeatedly and emphatically denied ever inappropriately touching Plaintiff. There is not a single word of Dr. Rizzoni's testimony which supports Plaintiff's claims. (Rizzoni Depo., Vol. III, pg. 81)(All of Plaintiff's allegations are "false");(Rizzoni Depo., Vol. I, pg. 194, Rizzoni Depo., Vol II, pgs. 50-51)(Denying that he ever "grabbed" or "touched" Plaintiff). Further, Mr. Parry could not verify Plaintiff's claims of inappropriate touching even if he wanted to because he was not present during any of the alleged touching incidents, and, in fact, specifically concluded that Plaintiff's allegations were not supported by any evidence and were unsubstantiated. (Parry Depo., pg. 85)(OSU "investigated Meng's allegations and did not find sufficient evidence to support her allegations.") Plaintiff's citations to the depositions of Dr. Rizzoni and Mr. Parry to support her claim that she was sexually harassed by Dr. Rizzoni are yet another example of Plaintiff's attempt to create an issue by misconstruing the facts so completely that they are rendered undeniably false.

**IV. <u>Conclusion.</u>**

No reasonable juror could find in favor of Plaintiff, given the overwhelming amount of record evidence that undermines her claims and her mischaracterizations of both law and fact only emphasize how weak her claims are. Any allegation that a material fact is, or is not, in dispute must be supported by the record and cannot consist of speculation or inaccurate misrepresentations about what the record states. Fed. R. Civ. P. 56(c)(1). As stated by the Sixth Circuit, a "mere 'scintilla of evidence' within the record that militates against the overwhelming weight of contradictory corroboration does not create a genuine issue of fact." *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir.

2015)(Citations omitted).  Plaintiff has failed to demonstrate a triable issue and her claims must be dismissed in their entirety.

        Respectfully submitted,

        By: /s/ Christina L. Corl
        Christina L. Corl (0067869)
        Plunkett Cooney
        300 E. Broad Street, Suite 590
        Columbus, OH 43215
        (614) 629-3018
        ccorl@plunkettcooney.com
        *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this **3rd day of August 2021**, I filed the foregoing document with the Clerk of Court via the Court's electronic filing system.  All parties shall also be notified and receive service via electronic mail, through the Court's ECF system.

        /s/ Christina L. Corl
        Christina L. Corl  (0067869)

Open.25577.83339.26800943-1