IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| MENG HUANG,<br><br>  Plaintiff,<br><br>v.<br><br>THE OHIO STATE UNIVERSITY and GIORGIO RIZZONI,<br><br>  Defendants. | Case No: 2:19-cv-1976<br><br>Judge James L. Graham<br><br>Magistrate Judge: Chelsey M. Vascura |

**DEFENDANT'S MOTION FOR AN AWARD
OF ATTORNEY'S FEES AND COSTS AGAINST PLAINTIFF**

NOW COMES Defendant, The Ohio State University, by and through counsel, and requests this Honorable Court for a judgment against Plaintiff, Meng Huang, awarding Defendant's attorney fees and costs in this matter. The Ohio State University was completely successful in defending Plaintiff's baseless claims, recently obtaining summary judgment in its favor pursuant to Rule 56(a) on all of Plaintiff's claims against it – under Title VII of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972. As such, Defendant is the prevailing party and is entitled to an award of attorney's fees and costs under 42 USCA § 1988(b) and Fed. R. Civ. P. 54. Of the original 18 claims brought by Plaintiff, only one claim remains for trial. That claim is against Defendant Dr. Giorgio Rizzoni for sexual harassment under 42 U.S.C. § 1983. No claims remain against the University.

Pursuant to the facts, law, and arguments contained in the attached memorandum in support, Defendant respectfully requests this Honorable Court for a Judgment against Plaintiff awarding Defendant's attorney fees and costs.

1

Respectfully submitted,

PLUNKETT COONEY

By: /s/ Christina L. Corl
Christina L. Corl (0067869)
*Attorney for Defendants*
716 Mt. Airyshire Blvd.
Suite 150
Columbus, OH 43235
(614) 629.3018
ccorl@plunkettcooney.com

## **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS AGAINST PLAINTIFF**

### **INTRODUCTION**

The Ohio State University (the "University" or "OSU") recognizes that prevailing party attorney fees and costs are not awarded routinely to prevailing defendants, but rather when the plaintiff's actions are unreasonable, frivolous, meritless, or vexatious. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694 (1978). But critically, this is not a routine case. From the moment that she filed this case (curiously, in a Michigan court), Plaintiff has intentionally pursued excessive, unnecessary, meritless, and highly costly litigation practices in service of claims that required little to no additional factual development to expose as baseless.

Indeed, as this Court's recent summary judgment decision dismissing all claims against the University found, the reasonableness of the University's actions relative to Plaintiff's complaints, the appropriateness of its investigation of her allegations, and its compliance with applicable law related to harassment and retaliation claims were clear from information available to her at the outset of this case.

This Court specifically observed, among other things, that: (1) "it is apparent that during Plaintiff's matriculation and employment at Ohio State, the university had a sexual harassment policy in place which satisfies all of the above requirements" (p. 18); (2) "… there is nothing in Parry's thorough and articulate report which exhibits any defects which might be related to inadequate training" (p. 19); (3) "the Court finds as a matter of law that Ohio State had a reasonable and effective policy in place when Plaintiff reported Rizzoni's sexually harassing behavior" (p. 20); (4) "only a few days after receiving Plaintiff's complaint, OSU removed Rizzoni from campus. Plaintiff offers no evidence that she was subjected to further sexual harassment by Rizzoni during that brief interval or any time thereafter" (p. 21); (5) "Plaintiff has failed to produce evidence upon which a jury could reasonably find that Ohio State did not have a proven, effective mechanism in place for adequately addressing Plaintiff's complaint of Rizzoni's sexually harassing behavior" (p. 21); (6) "Plaintiff knew or should have known that she had valuable resources to protect herself from the kind of abuse she alleges, but she failed to avail herself of those resources" (p. 25); (7) "Ohio State's thirty-seven-page investigation report is on its face a professional and well-reasoned account of the results of a thorough investigation of all of Plaintiff's allegations of sexual harassment and academic retaliation" (p. 41); and (8) "Plaintiff has provided no evidence that their statements were false or that the university knew or should have known they were false. Nor has she produced any evidence that the university negligently or intentionally failed to interview or consider the statements of any other persons who might reasonably be expected to have information favorable to or supportive of her claims" (p. 42).

And yet, as discussed more fully below, Plaintiff sought extensive and overbroad discovery, with extraordinarily broad requests, numerous, time-intensive depositions, and

3

more, leading to extensive attorney fees in defense. Plaintiff's approach to this litigation in view of these facts was unreasonable, frivolous, meritless, and vexatious.

## **PROCEDURAL HISTORY**

Plaintiff filed this case in the United States District Court for the Eastern District of Michigan on August 31, 2018, alleging 18 separate counts against two Defendants – Dr. Giorgio Rizzoni and The Ohio State University. (ECF No. 1) Plaintiff's Complaint contained five (5) counts against Defendant, The Ohio State University as follows:

1. Title IX – Sexual and Racial Harassment;
2. Title IX – Hostile Environment;
3. Title VII – Sexual and Racial Harassment;
4. Title IX – Retaliation; and
5. Title VII – Retaliation.

(ECF No. 1, Page ID 47-52).

On November 15, 2018, Defendants filed a Motion to Dismiss or, in the Alternative, Motion to Transfer Case to United States District Court for the Southern District of Ohio (ECF No. 12). Plaintiff opposed both motions (ECF No. 19), necessitating a Response and a Reply by Defendants (ECF No. 21).

On May 14, 2019, the Michigan Court entered an order granting the transfer of venue of this case and transferring venue to the Southern District of Ohio (ECF No. 26).

On February 3, 2020, this Court entered an Opinion and Order granting in part and denying in part Defendants' Motion to Dismiss (ECF No. 38). In its Opinion and Order, the Court noted that the claims against the University were: Title IX hostile environment; Title VII sexual and racial harassment; Title IX retaliation; and Title VII retaliation (ECF No. 38,

4

Page ID No. 477). Of these claims, this Court granted the University's Motion to Dismiss on the Title IX deliberate indifference claim (*Id*., Page ID No. 486) but denied dismissal of the remaining claims against the University.

After a protracted discovery process, Defendant filed a Motion for Summary Judgment on April 30, 2021 (ECF No. 105). The Motion for Summary Judgment was fully briefed by the parties as of August 3, 2021.

In February 2022, Plaintiff's former counsel filed a motion to withdraw. Following the appearance of new counsel, on May 11, 2022, Plaintiff filed a Motion for Reconsideration of the Court's February 3, 2020 Opinion and Order granting dismissal of Plaintiff's Title IX deliberate indifference claim against the University. (ECF No. 131). On July 26, 2022, the Court entered an Opinion and Order denying Plaintiff's Motion. (ECF No. 139).

On November 4, 2022, the Court entered an Opinion and Order granting summary judgment to the University on all counts remaining against it: Title VII quid pro quo, hostile work environment, and retaliation claims, and Title IX retaliation claim. (ECF No. 143) As a result of the Court's Opinion and Order, the University has been dismissed from this action.

**UNDISPUTED FACTS ESTABLISHING UNREASONABLE AND VEXATIOUS CONDUCT**

Plaintiff improperly filed this action in the United States District Court for the Eastern District of Michigan (ECF No. 26), which required Defendants to file a Motion to Transfer to this Court, the appropriate venue. But that was only the beginning of Plaintiff's vexatious conduct.

In prosecuting her case, Plaintiff served three (3) sets of discovery requests on the University. Plaintiff's First Interrogatories and Requests for Production of Documents, served on April 7, 2020, contained eleven (11) interrogatories and twenty-two (22) requests

5

for production of documents. **Ex. 1**.  On April 29, 2020, Plaintiff served her Second Requests for Production of Documents seeking, *inter alia,* electronically stored information (ESI) responsive to numerous prompts.  **Ex. 2**.  On June 16, 2020, Plaintiff served a Third Requests for Production of Documents on the University.  **Ex. 3.**

In response to the scope of potentially responsive information requested in the various Requests for Production of Documents to this Defendant, Defendants' counsel was required to review close to 200,000 potentially responsive documents.  A significant portion, if not the lion's share, of the efforts in responding to Plaintiff's discovery requests to the University were related to Plaintiff's Request for Production of Documents No. 24, which sought "the contents of all OSU-owned electronic accounts and devices … assigned to nine (9) different custodians." **Ex. 2,** pp. 7-9.  The parameters of each search were outlined with their associated custodian(s).  In other words, almost all of the discovery in this case was directed to the University and for records maintained by the University, not to Dr. Rizzoni.

As a result of Plaintiff's extensive discovery requests, Defendants enlisted the assistance of thirteen (13) attorneys who spent 9 weeks reviewing and preparing documents to produce to Plaintiff, at a cost to the University of more than $300,000.00.

Additionally, Plaintiff took twelve (12) depositions in this matter, some of which were significantly long, as follows: Kristie Hoge (7 hours); Dr. Giorgio Rizzoni (three days, 12 hours);  Jonathan Parry (8 hours); Kellie Brennan (4.5 hours); Maryn Weimer (4 hours); Dyche Anderson (3 hours); Thomas Brant (1 hour); Jim Giuliani (0.5 hour); Matt Page (1 hour); Megan Lawther (0.5 hour); Adithya Jayakumar (3 hours); and Vishwanath Subramaniam (2 hours).  It is beyond dispute that the lion's share of the depositions Plaintiff's counsel took concerned her claims against the University.  The University incurred

6

significant fees in preparing for and defending those witnesses at depositions, as well as compensating the court reporters for their time and copies of the deposition transcripts.

Plaintiff attempted to take the deposition of the University's President, Michael V. Drake, which necessitated Defendant's objection to the same and request for protective order. On May 27, 2020, the parties attended a telephonic discovery conference with Magistrate Judge Chelsey M. Vascura, and on the same day the Court entered an Order denying Plaintiff's demand for the deposition of Michael V. Drake. (ECF No. 49).

Additionally, given Plaintiff's scorched-earth litigation tactics, Defendants requested a conference with Magistrate Judge Vascura to resolve a number of additional discovery disputes. A second telephonic discovery conference occurred on August 24, 2020. On August 25, 2020, the Court entered an Order requiring Plaintiff to answer all outstanding interrogatories, with the exception of one, and finding that the University was not required to respond to the Plaintiff's requests, with few exceptions. (ECF No. 56).

On November 19, 2020, the parties appeared before Magistrate Judge Vascura for yet another telephonic discovery conference regarding additional discovery disputes. Magistrate Judge Vascura resolved the disputes almost entirely in favor of Defendants, including denying Plaintiff's request for a 30(b)(6) deposition on certain topics; requiring Plaintiff to pay Defendants' attorney fees for the ninth hour of Dr. Rizzoni's deposition; requiring Plaintiff to supplement her discovery answers; and ordering Plaintiff to supplement her damages calculations. (ECF No. 68).

7

As of October 14, 2022, the total fees and costs incurred and spent by the Defendants in defending this case is $555,205.34. **Ex. 4, Billing Summary** [1]

## LAW AND ARGUMENT

### A. Defendant Is Entitled To Its Fees and Costs Under Fed. R. Civ P. 54(d).

Under Fed. R. Civ. P. 54(d), the trial court, in the sound exercise of its discretion, may tax the costs of litigation against a losing party. "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A).

A motion under Fed. R. Civ. P. 54(d) must: (i) be filed no later than 14 days after the entry of judgment; (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; (iii) state the amount sought or provide a fair estimate of it; and (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made. Fed. R. Civ. P. 54(d)(2)(B)(i)-(iv).

The Supreme Court has recognized that the rule, which provides that costs "*shall* be allowed as of course to the prevailing party unless the court otherwise directs," signals the general proposition that "liability for costs is a normal incident of defeat." *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 352, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981) (emphasis added).

Here, Defendant relies upon the Court's summary judgment in its favor on November 4, 2022, and the attorney fees' provisions of 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988.

---

[1] Because the case against Dr. Rizzoni remains pending and the contents of the billing entries might reveal confidential and/or privileged information, Defendants have not attached detailed billing documents hereto. However, Defendants will provide the Court with all billing statements, which contain detailed billing entries, for *in camera* review if the Court wishes to review the same.

Defendant requests this Court enter an order awarding Defendant $410,199.30 in attorney fees and costs, which amounts to 75% of the attorney fees incurred and paid to date, plus all costs associated with depositions except for the deposition of Dr. Rizzoni.

### B. As The Prevailing Party on Plaintiff's Title VII and Title IX Claims, Defendant Is Entitled to an Award of Reasonable Attorneys' Fees.

Under Title VII, the court in its discretion may award the prevailing party "a reasonable attorneys' fee (including expert fees)." 42 U.S.C. § 2000e-5(k); *CRST Van Expedited, Inc. v. EEOC,* ---- U.S. ------, 136 S. Ct. 1642, 1645, 194 L.Ed.2d 707 (2016).

Additionally, the Civil Rights Attorney's Fees Awards of 1976 authorizes an award of fees to prevailing parties in actions to enforce Title IX. 42 U.S.C. § 1988. The statute provides, in relevant part:

> In any action or proceeding to enforce … title IX [of the Education Amendments of 1972] … the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988(b).

The language of the statute does not distinguish between plaintiffs and defendants, stating only that "prevailing parties" may receive a reasonable attorney's fee. *See Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed. 2d 163 (1980).

To be a prevailing party under §1988, a party "need not prevail on all issues if a significant one is resolved" in its favor. *See Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980). However, the standard for deciding a defendant's motion for attorney's fees is different from that used when a plaintiff has made the motion.

In *Christiansburg Garment Co. v. EEOC,* the Supreme Court explained that a court may award a prevailing defendant attorney's fees if the court finds that a plaintiff's claims were "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it

9

clearly became so." 434 U.S. 412, 422, 98 S.Ct. 694 (1978). Awards to prevailing defendants will depend on the factual circumstances of each case." *Smith v. Smythe-Cramer Co.,* 754 F.2d 180, 183 (6th Cir. 1985). In *Lowery v. Jefferson County Board of Education,* 586 F.3d 427 (6th Cir. 2009), a First Amendment case, the Sixth Circuit denied an award of attorney's fees and costs to a prevailing defendant where the plaintiffs first survived a motion for summary judgment and then a motion for judgment as a matter of law, having presented sufficient evidence at trial to send the case to the jury. The Court noted, "[w]here, after discovery and trial, a material question of fact exists … it is hard to maintain that the act of filing the complaint itself was frivolous." *Id.* When determining if a prevailing defendant should be entitled to attorney's fees, the Sixth Circuit considers whether (1) the plaintiff successfully alleged a prima facie case of discrimination; (2) the defendant offered to settle the case; and (3) the trial court dismissed the case before trial. *See EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 591 (6th Cir. 2013).

     Here, it is undisputed that Plaintiff's claims did not survive a motion to dismiss or summary judgment. First, on February 3, 2020, the trial court granted Defendant's Motion to Dismiss as to Plaintiff's Title IX deliberate indifference claim. (ECF No. 38). Then, following both lengthy and costly discovery, the Court granted dismissal of the remainder of Plaintiff's claims against the University finding no factual disputes as to any of Plaintiff's claims. (ECF No. 143). Of the 18 claims originally plead by Plaintiff, only one survives to proceed to trial – a single claim for sexual harassment against Dr. Rizzoni. Accordingly, the University is the prevailing party on *all of Plaintiff's claims* asserted in this case against it. "Congress intended to permit the … award of counsel fees only when a party has prevailed on the merits." *Farrar v. Hobby,* 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494

10

(1992)(quoting *Hanrahan v Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)(per curiam)). Defendant obtained dismissal on the merits of each of Plaintiff's claims.

Regarding the second factor, the parties attended a mediation on June 25, 2020. Because Plaintiff refused to even consider reducing her settlement demand from $4 million, the University did not make a settlement offer and the mediation did not last very long.

Finally, regarding the merits of Plaintiff's claims, Plaintiff did not successfully allege a prima facie case of deliberate indifference under Title IX. (ECF No. 38). In its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, the Court held, as follows:

> Ms. Huang has failed to adequately plead a deliberate indifferent claim under Title IX, as she does not allege that she was subjected to further sexual harassment after notifying Ohio State of her complaint. Any alleged "severe, pervasive, and objectively offense" sexual harassment she experienced all occurred before she filed her complaint. The Sixth Circuit requires that at least one additional incident "of [sexual] harassment after the school has actual knowledge and implements a response, is necessary to state a claim." *Kollaritsch,* 944 F.3d at 621. Without this essential piece, Ms. Huang's claim falls short and is subject to dismissal. As Ms. Huang does not plead the causation necessary to state a viable deliberate indifference claim under Title IX and as set forth in *Davis,* Defendant's motion is granted as to Ms. Huang's deliberate indifference claim against Ohio State. (ECF No. 38, Page ID No. 486).

In the Opinion and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, the Court dismissed Plaintiff's Quid Pro Quo Harassment Claim, reasoning:

> Plaintiff counters that her refusal to submit to Rizzoni's unwelcome demands resulted in the loss of her supplemental stipend, removal from the Ford URP, and termination of her position as a Graduate Research Associate. ... If any of these were components of her student relationship, they are not cognizable under Title VII. ...
>
> [The stipend] portion of Plaintiff's claim therefore fails as a matter of law because it is not employment related. ...

11

> [The Ford URP] portion of Plaintiff's claim also fails as a matter of law because it is not employment related. ...
>
> The undisputed record evidence shows that Plaintiff continued working as a Graduate Research Associate until she granted from Ohio State in December 2019. The Court therefore finds as a matter of law that Plaintiff's Graduate Research Associate position was never actually terminated, and she did not suffer an adverse employment action as a result of Rizzoni's actions. ...
>
> Because Plaintiff has failed to provide sufficient evidence to establish the fourth element of her claim that she suffered an adverse employment action, the Court grants summary judgment to Ohio State on Plaintiff's Title VII qui pro quo claim.

(ECF No. 143, Page ID Nos. 6672-6675.)

Granting summary judgment to The University on Plaintiff's Title VII Hostile Work Environment Claim, the Court found Plaintiff:

> Has failed to produce evidence which would support a jury finding that Ohio State has failed to show by a preponderance of the evidence that Plaintiff's failure to take advantage of its protective and corrective measures was unreasonable. Ohio State has therefore satisfied both prongs of the *Faragher/Ellerth* affirmative defense to employer liability on Plaintiff's hostile work environment claim as a matter of law.

(ECF No. 143, Page ID Nos. 6688-6689).

Regarding Plaintiff's Title VII Retaliation claim, the Court noted that the claim rested on whether Plaintiff could establish that she was subjected to materially adverse action, and if so, whether a causal link existed between her protected activity and the adverse action. While Plaintiff alleged that the adverse actions she experienced were loss of her stipend compensation until additional funding and support were secured and removal from the Ford URP, the Court held:

> [t]he undisputed record evidence shows that Plaintiff did not engage in protected activity under December 12, 2017, the day after Rizzoni made the December 11, 2017 decision to not allow her to retake the Ph.D. candidacy exam, which resulted in Plaintiff's removal from the graduate program and the Ford URP. Plaintiff admits that "Professor Rizzoni made the decision to remove

12

> me from the URP prior to the date I officially filed the complaint." (ECF No. 105-1 at 5615). To meet her prima facie burden, Plaintiff must establish that an adverse action was taken against her "subject to engaging in protected activity," and she failed to do so here, as the alleged adverse action was taken before she complained about Rizzoni's conduct and not afterwards. *Fuhr*, 710 F.3d at 676.
>
> Moreover, Plaintiff fails to point to any record evidence establishing that her stipend compensation was delayed in any manner following her complaint about Rizzoni. Plaintiff's Title VII retaliation claim therefore fails as a matter of law, and the Court grants summary judgment to Ohio State on this claim.

(ECF No. 143, Page ID No. 6691).

Finally, as to Plaintiff's Title IX Retaliation claim, the Court found as a matter of law that Plaintiff failed to show that genuine disputes of material fact exist with respect to her claim that OSU took any school-related actions against her, and she therefore has not shown that genuine disputes of material fact exist concerning the third element of her Title IX retaliation claim against the University. (ECF No. 143, Page ID No. 6702).

Based on the Court's Opinion and Order, there was no material fact in dispute regarding any of the claims Plaintiff pursued against the University for more than four (4) years. What is more, the Court's reasoning was based on facts that were known to the Plaintiff and her counsel before she commenced this litigation. For example, Plaintiff did not allege any further sexual harassment after notifying the University of her complaint; she did not suffer an adverse employment action as a result of Dr. Rizzoni's actions; she unreasonably failed to take advantage of the University's protective measures by failing to report the alleged harassment before December 2017; she did not suffer any adverse action after complaining of Dr. Rizzoni's alleged conduct; and the University did not take any school-related actions against her.

Material fact disputes generally will preclude an award of attorney fee sanctions under § 1988 – at least where the plaintiff has not misrepresented the state of the evidence. *Lowery v Jefferson County Bd. of Educ.*, 586 F.3d 427, 438 (6th Cir. 2009). Here, Plaintiff and her counsel knew the material facts at issue before pursuing this litigation, in particular the timing of Plaintiff's complaint, the timing of the alleged sexual harassment, and the timing of the alleged adverse actions, and yet consciously decided to proceed full-bore against this Defendant for more than four (4) years, including causing the University to incur hundreds of thousands of dollars in attorneys' fees in defending these meritless claims, OSU submits that an award of attorney fees and costs is proper and necessary.

### C. The Factual Circumstances of This Case Warrant an Award of Attorneys' Fees.

To be sure, "[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction and must be limited to truly egregious cases of misconduct." *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986).

In this case, Plaintiff's actions, including her vexatious, scorched-earth litigation tactics, did nothing but waste the Court's and Defendant's time and drive up the attorneys' fees incurred by the University. A prime example of this egregious misconduct of Plaintiff is the fact that she pursued a claim that she knew to be untrue, specifically: She maintained and refused to withdraw her claim that OSU prevented her from getting a job offer from Ford, *when she had, in fact, received a job offer from Ford which she turned down for a higher paying job in California*. This is just one of many examples of Plaintiff actively pursuing claims in bad faith. Further, because of Plaintiff's outrageous discovery conduct, the University was required to enlist the assistance of thirteen (13) attorneys to conduct extensive document review of nearly 200,000 documents and communications over a nine (9) week period of

14

time, at a cost of nearly $300,000.00.  There is no question that the fees and costs incurred in this litigation are substantially greater than necessary because Plaintiff and her counsel pursued unreasonable and vexatious claims in the discovery process.

Indeed, as reflected in the attached chart of discovery issues (**Exhibit 5**), the parties appeared before the Court on three occasions to address eighteen (18) separate discovery issues between Plaintiff and the University.  The Court issued rulings on all of the discovery motions/disputes, of which thirteen (13) were resolved in the University's favor and one (1) was deferred by agreement of the parties.

District courts in this Circuit have awarded attorney's fees to defendants forced to litigate unfounded actions. *See, e.g., Steele v. City of Cleveland,* No. 1:08CV1131, 2010 WL 2760396, at *1-2 (N.D. Ohio July 12, 2010) (awarding defendant attorney's fees and costs pursuant to § 1988 because "no facts existed which supported the claim advanced by the plaintiff" in her § 1983 action.").

As indicated above, there were no material facts in dispute, and Plaintiff's claims against the University were entirely without merit for the inception of this case.  While the University recognizes that an award of attorney's fees against a losing plaintiff is not commonplace, OSU submits that this type of case, and particularly this type of misconduct by Plaintiff and Plaintiff's counsel in proceeding without regard to the evidence against their position, is precisely the set of factual circumstances under which the Court should award attorneys' fees to the prevailing defendant.

   **D.**  **Defendant's Attorneys' Fees Are Reasonable and Necessary.**

     **1.**  **Reasonable Hourly Rates.**

Once the court determines that an attorneys' fee award is warranted, the court must determine a reasonable fee. The lodestar method – multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate – is the preferred method, and because of its objectivity, "there is a strong presumption that [it] is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The reasonable number of hours will not include "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983). The reasonable hourly rate should be calculated according to "the 'prevailing market rate[s] in the relevant community.'" *Adcock-Ladd v. Sec'y of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000)(quoting *Blum Stenson*, 465 U.S. 886, 895 (1984)).

Here, Defendant's primary counsel was Christina Corl, managing partner of Plunkett Cooney's Columbus, Ohio office and an attorney with 27 years of legal experience. She billed at an hourly rate of $200. In fact, all attorneys who assisted on this file billed at an hourly rate of $200. The attorneys and their level of experience are summarized in the chart attached hereto as **Exhibit 6, Billing Attorneys with Years of Practice.**

In *Hines v. DeWitt,* 2016 WL 2342014 (S.D. Ohio May 4, 2016), this district court evaluated the petitions for attorney fees in a § 1983 action. The court noted that reasonable hourly rates are those which competent counsel command in the court's local market, but neither party had submitted evidence of what the local market rates were in Ohio. Therefore, the court took judicial notice of the most recent Ohio State Bar Association Report as evidence of the prevailing local market rates. *Id.* at *3.

The court awarded rates to attorneys from Fieger, Fieger, Kenney, Giroux & Harrington, P.C., and David A. Goldstein Co., L.P.A. of $200 per hour and above for any

16

attorney with a minimum of 5 years' experience. The only rate below $200 per hour was awarded to an attorney with 2 years' experience and another attorney with an unknown number of years' experience. The lead attorneys, James Harrington, IV and David Goldstein, with 12 and 21 years' experience, respectively, were awarded $350 per hour.

If those rates were reasonable in 2016, then there is no legitimate dispute that Defendant's billed rates of $200 per hour are presumptively reasonable as well in 2022.

### 2. Reasonable Hours Billed.

As indicated above, the extensive attorneys' fees incurred in this matter were the result of Plaintiff's litigation approach and scorched-earth discovery tactics, including Plaintiff doggedly pursuing claims she knew to be untrue. The University was required to enlist the assistance of the attorneys above to review nearly 200,000 documents for relevance, responsiveness, and privilege. Specifically, in response to Plaintiff's Second Requests for Production of Documents, which included Request for Production No. 24 seeking "the contents of all OSU-owned electronic accounts and devices ... assigned to nine (9) different custodians," the above-named attorneys began preparing for, reviewing, and categorizing documents for production. The sheer magnitude of this task, necessitated by Plaintiff's discovery overbroad requests, was reflected in the month-over-month billing for the months of April 2020 and May 2020.

In April 2020, three attorneys billed 88.80 hours for $17,760.00, much of which was attributed to drafting pleadings, a Rule 26 Report, developing strategy, researching issues, drafting discovery requests to Plaintiff, and preparing to answer Plaintiff's first discovery requests to Defendants. The total bill of $17,948.04 was the highest monthly invoice on the case, to date. **Ex. 4, Billing Summary.**

17

However, in May 2020, when the document review began, thirteen attorneys billed 416.55 hours for $83,310.00. **Ex. 4, Billing Summary.** The document review continued in June 2020, during which thirteen (13) attorneys billed 900.10 hours for $180,020.00 in fees. Defendants' compliance with Plaintiff's discovery requests also required the assistance of eight (8) skilled paralegals to process, code, organize, export, redact, and finalize documents for production. The paralegals billed 38.50 hours for $2,887.50 in June 2020. Finally, in July 2020, the attorneys completed their document review, with ten (10) attorneys billing 256.70 hours for $51,340.00. Five (5) paralegals billed 15.90 hours for $1,192.50.

The total fees incurred by Defendants for this three-month period was $319,530.00. This figure represents 57.55% of the total fees billed in this litigation dating back to 2018. Of course, in August 2020, the first month after Defendants' counsel had responded to Plaintiff's discovery responses, the invoice for billed services was only $7,970.00, representing 39.70 attorney hours and 0.4 paralegal hours. *Simply put, were it not for Plaintiff's harassing discovery requests, the majority of the fees would have been avoided*.

The same is true for all of the time and expense associated with addressing and responding to the numerous discovery disputes. **See Exhibit 5**. As outlined above and as reflected in this attached chart of discovery issues, these issues were almost exclusively limited to overly broad, irrelevant, and improper discovery requests directed toward The University by Plaintiff, the overwhelming majority of which were resolved in The University's favor. Specifically, as reflected on Exhibit 5, of the eighteen (18) distinct, discovery issues raised by Plaintiff and briefed by the parties, the University prevailed on fourteen (14) and one (1) was deferred.

Finally, Plaintiff took the depositions of twelve (12) deponents in this matter. The undisputed focus of Plaintiff for the depositions of these individuals was on the claims against the University. The University's attorneys spent 166.8 hours preparing for and defending these depositions. The University's fees and costs incurred in defending these depositions addressing claims against the University were entirely driven by Plaintiff.

Additionally, the University was required to defend the claims against it by preparing for and taking the depositions of Plaintiff and Plaintiff's expert witness. Plaintiff's expert presented opinions related *only to the University.* The expert had no opinions related to Dr. Rizzoni. The additional billable hours related to the preparation and taking of these depositions totaled 97 hours. All told, the University incurred 263.8 hours in attorney fees preparing for, defending, and taking depositions in the defense of the claims asserted by Plaintiff. Additionally, the costs associated with these depositions, i.e. court reporter and transcripts, totaled $15,901.77. **Ex. 7, Chart of Deposition Fees and Costs. Ex. 8, Records of Payments of Costs.**

Conservatively, when considering the time and expense associated with answering Defendant's discovery requests, defending and prevailing on the numerous discovery disputes related to the University, preparing for, defending, and taking more than a dozen depositions, and preparing its Motion for Summary Judgment, the University submits that an award of $410,199.30, representing 75% of the total attorney fees incurred, plus associated costs, is appropriate and warranted under the unique facts and circumstances of this case. **Ex. 9, Affidavit of Christina Corl.**

## CONCLUSION

WHEREFORE, for the reasons outlined above, Defendant respectfully requests this Court award its attorney fees and costs incurred in defending this action.

Respectfully submitted,

PLUNKETT COONEY

By: /s/ Christina L. Corl
Christina L. Corl (0067869)
*Attorney for Defendants*
716 Mt. Airyshire Blvd.
Suite 150
Columbus, OH 43235
(614) 629.3018
ccorl@plunkettcooney.com

## CERTIFICATE OF SERVICE

I hereby certify that on this **18th day of November 2022**, I filed the foregoing document with the Clerk of Court via the Court's electronic filing system.  A copy has also been served, by this office, on **November 18, 2022** upon all counsel of record.

/s/ Christina L. Corl
Christina L. Corl  (0067869)

Open.25577.83339.29981456-1