**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MENG HUANG,<br><br>        Plaintiff,<br><br>vs.<br><br>THE OHIO STATE UNIVERSITY and GEORGIO RIZZONI,<br><br>        Defendants. | Case No. 1:20-cv-1976<br><br>Hon. Judge James L. Graham<br>Mag. Judge Chelsey M. Vascura<br><br>**Response in Opposition to Defendant Ohio State University's Motion for an Award of Attorney's Fees and Costs** |

### I. Introduction

Defendant Ohio State University's ("OSU's") Motion for an Award of Attorney's Fees and Costs against Plaintiff ("Motion," Doc # 144) asks this Court to subvert a fundamental and long-established tenet of federal civil-rights law and requests relief that is wholly unprecedented in at least two substantial aspects: (1) First, OSU's lengthy brief does not point this Court to a single case where a civil-rights *defendant* was properly awarded fees as a "prevailing party" where, as here, a final judgment in the case had not yet been entered; (2) Secondly, and more pertinent to the ultimate meritlessness of its Motion, OSU does not point this Court to a single case where a corporate defendant that was ultimately excused from liability in a civil-rights suit was properly awarded fees as a "prevailing party" even where, as here, there was found to be a triable issue of fact against an employee of that corporate defendant who was named as a co-defendant on claims that arose from the same set of facts.

Even if OSU's Motion were not afflicted by these two fundamental flaws, it would still fail for several other independent reasons, including (1) its failure to establish that OSU could possibly be awarded fees against Plaintiff here, who, pursuant to controlling standards must be considered

the "prevailing party" herself at this stage of the litigation, as such status is triggered by "success on a single claim – even if not the 'main' claim" asserted in a civil-rights case (*Monce v. Cty. Bd. of Education*, No. 1:16-cv-0007, 2019 U.S. Dist. LEXIS 89061, *7-8 (6th Cir. 2019); (2) its failure to set forth facts that would begin to warrant the "extreme sanction" of a fee award to a defendant against a civil-rights plaintiff, which is "limited to truly egregious cases of misconduct." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986); (3) and its failure to establish that fees for any actually frivolous claims were incurred wholly separately from work performed in defending against non-frivolous claims (*Fox v. Vice,* 563 U.S. 826, 827, 131 S.Ct. 2205, 180 L.Ed.2d 45 (2011)) ("Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claims."). Finally, even if OSU were able to meet any of these hurdles to the relief it requests, its motion would still have to fail for yet another reason, which is (4) its failure to establish (for the relief it (4) OSU's motion fails for yet a sixth independent reason, which is its inability to establish that any such "truly egregious misconduct" could be attributable to Plaintiff rather than her former counsel who have since withdrawn from this case. *Garner v. Cuyahoga Cty. Juv. Court*, 554 F.3d 624, 635-36 (6th Cir. 2009), citing *In re Ruben*, 825 F.2d 977, 985 (6th Cir. 1987) ("Courts must be particularly careful in conducting hearings to determine whether sanctions should be imposed against both plaintiffs and their attorneys for bringing frivolous claims. These situations are especially prone to raise conflicts of interest because each has an incentive to blame the other for bringing the frivolous claims at issue.").

For all of these reasons, set forth more fully below, OSU's Motion should be swiftly denied.

## II. Facts

The facts of this matter are set forth fully in the briefing of Defendant's Motion for Summary Judgment. (See e.g., Doc # 114-1, Plaintiff's Counter-Statement of Material Facts in

Opposition to Motion for Summary Judgment). For the purposes of the instant motion, Plaintiff notes the following:

Plaintiff filed this lawsuit on August 31, 2018, alleging that Giorgio Rizzoni, employee of OSU, had sexually harassed and assaulted her over a period of years during which she was a Ph.D. candidate at OSU's Center for Automotive Research, which Rizzoni directed. (Complaint, Doc # 1). Plaintiff came to the United States from China after being recruited by Rizzoni to pursue her Ph.D. under his guidance.

More specifically, the complaint alleges that Plaintiff worked as a Ph.D. student for Rizzoni performing research and coursework at OSU. She worked closely with Ford and specifically its battery division, a plum partnership Rizzoni had developed, access to which he controlled. Subsequent to her increasingly vocal refusal to acquiesce to Rizzoni's advances, and, most pertinently, to a prominent company-side member of the Ford team, Dyche Anderson, sending Rizzoni an email suggesting his awareness of the issues between he and Plaintiff, Plaintiff found herself shut out of work with Ford, defamed by Rizzoni, and, for retaliatory and otherwise unsupportable and unprecedented reasons, ultimately not permitted to pass her Ph.D. candidacy evaluationPlaintiff then reported Rizzoni's harassment and retaliatory conduct to OSU, at which point the University conducted an investigation that was apparently designed to exonerate Rizzoni while managing Plaintiff and her concerns. OSU intervened to permit a re-sitting for the Ph.D. candidacy, secured funding and program access for Plaintiff to permit her to remain in the United States and pursue her Ph.D., and found no wrongdoing by Rizzoni.

In summary as to the allegations against OSU, the Complaint alleged that the University ratified or participated in Rizzoni's wrongdoing (including the retaliation), and by failing to appropriately intervene, and thus was liable under Title VII and Title IX for failing in its obligations to its employees under these statutes. *See Bryson v. Middlefield Volunteer Fire Dep't, Inc.*, 656 F.3d 348,

355 (6th Cir. 2011)) (recognizing that graduate students can be considered employees of the University depending on the individual facts of a case).

It is also notable that during the discovery process, OSU made clear that it was indemnifying Rizzoni in the case, on at least one occasion excusing his appearance at a mediation on that basis. *See also* R.C. 2744.07. This Court eventually dismissed the claims against OSU by two separate orders, first of February 2, 2020 (Doc # 38) on OSU's motion to dismiss, and secondly on November 4, 2022 (Doc # 143) on OSU's motion for summary judgment, including the Title VII and Title IX claims. The Court did not dismiss all of the claims against Rizzoni, ordering that "[s]ummary judgment is denied as to Plaintiff's due process claim against Rizzoni in his individual capacity." Doc # 143, p. 43. The due process claims hinge upon evidence creating a triable issue as to the alleged continuous, years-long campaign of sexual harassment and assault by Rizzoni against Plaintiff, during which Rizzoni, at all times, was not just employed by the University but was one of its most prominent professors and researchers.

OSU's Motion details what it claims as evidence that Plaintiff's claims were "unreasonable and vexatious" including service of "three (3) sets of discovery requests" on OSU. Motion, p. 5. Additionally vexatious, according to OSU, was that Plaintiff took depositions, totaling 12, identifying deponents upon both her own knowledge and the information revealed in discovery. OSU claims that the discovery process was lengthened by the quantity of material requested and reviewed, and that "almost all of the discovery in this case was directed to the University and for records maintained by the University, not Dr. Rizzoni." Motion, p. 6. OSU also alleges that Plaintiff's "scorched-earth litigation tactics" necessitated further discussion before the Magistrate and caused OSU's counsel to have to respond to discovery disputes. Motion, p. 7.

As discussed in the introduction above and set forth more fully below, the Motion is utterly meritless.

### III. Law and Argument

For a *defendant* to establish that the "extreme sanction" of a fee award against a civil-rights *plaintiff* is warranted under 42 U.S.C. 2000e-5(k) or 42 U.S.C. § 1988 that defendant must show *first* that it is the prevailing party, and *also* that the plaintiff's claims were "frivolous, unreasonable, or groundless," or that the "plaintiff continued to litigate after it clearly became so," such that plaintiff engaged in "truly egregious" misconduct. *Jones,* 1232; *Christiansburg,* 422. Here, OSU cannot establish either prong, and its motion fails for the additional reasons that it does not establish that any fees were incurred only "but for the [allegedly] frivolous claims," nor that any such "truly egregious misconduct" could be attributable to Plaintiff rather than her former counsel who have since withdrawn from this case.

**A.     OSU is not a "prevailing party" under the statute.**

As a preliminary matter, OSU is not, contrary to its assertion, the "prevailing party" in this matter. Under 42 U.S.C. 2000e-5(k) and 42 U.S.C. § 1988, OSU argues, it is entitled to fees as the prevailing party. Motion, p. 9. However, as even OSU admits, the standards for awarding fees to defendants as "prevailing party" are substantially higher than for awarding them to plaintiffs. *CRST Van Expedited, Inc. v. EEOC,* 136 S. Ct. 1642, 1646, 578 U.S. 419 (2016). Additionally, OSU's Motion is unprecedentedly premature; it offers no case law—because there is no case law—to support its claim that it could be entitled to fees against a civil-rights plaintiff who has established triable issues on a claim against one of its employees on claims arising from the same set of facts.

Even setting aside the high bar it must reach to establish that Plaintiff's claims were "frivolous, unreasonable, or groundless" (discussed further below), OSU has not prevailed for purposes of the award. As discussed at further length below, claims by Plaintiff have survived both a motion to dismiss (requiring the Court to find that a *prima facie* case was presented (*See Alabsi v. City of Cleveland,* No. 1:20-cv-01933-CEH, 2021 U.S. Dist. LEXIS 201566, * 4 (N.D. Ohio)), and

Page 5 of 16

summary judgment. Plaintiff has prevailed at the current stage of litigation and trial approaches on its remaining claim; OSU is indemnifying Rizzoli, and thus remains obligated to continue to defend him – using, e.g., the discovery materials complained of as unreasonable. Because Plaintiff has survived summary judgment, if anyone is the prevailing party at this stage of the litigation, it is her.

In evaluating "prevailing party" status, the Sixth Circuit has repeatedly emphasized that "[s]uccess on a single claim is sufficient to become a prevailing party" even where the limited success does not result in the "primary relief" sought. *Mcqueary* at 603 (internal quotation marks and citations omitted); *Conway,* 614 F.3d 591, 603 (6th Cir. 2010). The determination of "prevailing party" status is made "not [by looking at] the number of claims on which the Plaintiff succeeded, the magnitude of the relief obtained, or whether the plaintiff obtained the primary relief sought; the question is simply whether the plaintiff has won on at least one claim." *Woods v. Willis,* 631 Fed. Appx 359, 364 (6th Cir. 2015). For example, even where a plaintiff lost on twelve of fourteen claims, or won only nominal damages, such a plaintiff has still been found to be the "prevailing party." *Monce* at *7-8 (internal quotations and citations omitted). *See also Green Party of Tennessee v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014).

As noted previously, the Motion is premature at best because the litigation in this matter is unconcluded. While OSU has secured dismissal of the claims that specifically name it, its conduct is still closely connected with the surviving claim against Rizzoni, and, more to the point, with OSU indemnifying Rizzoni, it is defending against the same core allegations of conduct as it was when it was also a named party, albeit focused solely on Rizzoni's conduct while an employee. Prevailing parties are those who have definitively changed their legal relationship as a result of a court order. *Woods* at *363-64 (noting that to be a prevailing party, a plaintiff must "have been awarded some relief by the court, resulting in the plaintiff receiving a judicially sanctioned change in the relationship of the parties.")(internal quotation marks and citations omitted). Here, OSU remains

bound to the litigation by Rizzoni, who remains its employee and whose conduct while an employee remains a claim to be tried in this matter. Additionally, as noted above, OSU has represented to this Court that it is indemnifying Rizzoni and therefore that he did not need to attend the mediation, further undermining its claim that it could be considered a "prevailing party" here. *See Hunter v. City of Copperhill*, No. 1:09-cv-238, 2013 U.S. Dist. LEXIS 136842, *24-26 (E.D. Tenn. 2013) (Where the defense parties are represented by the same attorneys, and the employee of the employer is liable, the fees for defense will overlap and the award to one party will be denied as benefitting the other party); *Boane v. Boane*, No. 11-cv-2565, 2022 U.S. Dist. LEXIS 19650, * 14 (W.D. Tenn. Feb. 3, 2022) (fees must be examined in light of the work engendered, and "whether a reasonable attorney would believe the work to be reasonably expended in pursuit of success at the time when the work was performed").

**B.      Even if OSU were a "prevailing party" it cannot establish that plaintiff's claims were frivolously brought or maintained.**

The bar for awarding fees to defendants in civil rights litigation on the basis that they were frivolous or unreasonable is extremely high, requiring extraordinary circumstances to merit the award, which is well-recognized as "an extreme sanction . . . limited to truly egregious cases of misconduct." *Jones* at 1232. Accordingly, courts have been strenuously cautioned to "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment* at 421; *see also Cheolas v. City of Harper Woods*, 467 Fed. Appx. 374, 382 (6th Cir. 2012). Thus, "frivolous, unreasonable, or groundless" claims are not merely unsuccessful, long-shot, or risky ones. They are egregiously overreaching, knowingly tendentious and unsupported; they are compromised. Despite OSU's arguments, the claims in this matter do not come close to meeting this high bar. Sixth Circuit courts must consider, for instance, "whether plaintiff presented sufficient evidence to establish a *prima facie* case; (2) whether defendant offered to settle the case; and (3)

Page 7 of 16

whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Alabsi* at * 4. These are only factors to consider, however, and courts also must find that the litigation engaged in by the Plaintiff was more than merely unsuccessful, and even more than merely unsupported; the litigation must have been egregiously deficient in any basis whatsoever. Although bad faith is not a requirement for an award of fees, it is certainly a significant component if the litigation is otherwise frivolous, groundless, and/or unreasonable. *Christiansburg* at 423.

Meeting that standard would require an altogether different case. "To determine whether a suit is frivolous," courts must inquire into the facts and circumstances of the claim, considering "whether the issue is one of first impression requiring judicial resolution, whether the controversy is sufficiently based upon a real threat of injury to the plaintiff, whether the trial court has made a finding that the suit was frivolous under the *Christiansburg* guidelines, and whether the record would support such a finding." *Tarter v. Raybuck,* 742 F.2d 977, 986 (6th Cir.1984) (internal quotation marks and citations removed). "Without a finding that plaintiff's allegations lacked even a scintilla of evidence, an award of attorney fees would be inappropriate." *Dawson* at 926. Awarding fees to defendants for any less than egregiously frivolous or groundless conduct subverts the purpose and intent of the fees provisions under the law:

> This standard for awarding attorney's fees to prevailing defendants in a civil rights action is **difficult to meet, and rightly so**. Congress granted parties the prospect of a reasonable attorney's fee. . .to encourage the prosecution of legitimate civil rights claims; to award fees to prevailing defendants when the history of a case does not justify it undercuts that goal and chills civil rights litigation.

*Lamboy-Ortiz v. Ortiz-Velez,* 630 F.3d 228, 236 (1st Cir. 2010) (citations omitted) (emphasis added). For OSU to receive any award of attorney's fees in this action would require it to create facts that do not currently exist, as well for the law regarding the claims Plaintiff raised to be entirely different.

To be truly "frivolous, unreasonable, or groundless," Plaintiff's claims would have had to lack "even a scintilla of evidence" to support them and their pursuit. *Dawson* at 926. Specifically,

OSU would have to show that all claims—and the supposed "scorched-earth" litigation practices (that included twelve depositions) —were so baseless and empty of content that they could have been dismissed at the beginning of this litigation. *See Farmer v. Upchurch,* No. 1:21-cv-00153-TAV-SKL, 2022 U.S. Dist. LEXIS 61689, *16 (E.D. Tenn. Mar. 4 2022) (recommending award of fees to defendant where claims were dismissed under Rule 12(b)(6), but fees were appropriate specifically "because of Plaintiff's repeated failure to respond to outstanding motions, his failure to follow understandable applicable rules and procedures, his recurring discovery abuses, the obviously frivolous nature of his filings, and his continuance of the litigation after its frivolous nature was pointed out to him **by the Court**.") (emphasis added). Here, not only are all counts not dismissed, but most were only rejected at summary judgment, after extensive discovery to develop a record. OSU may dislike having had to endure the discovery process, and its attorneys may disagree that the entirety of it was necessary, but those hurt feelings are not meaningful as analysis of law regarding the claims in this matter. Moreover, the exact kind of disputes complained of here as requiring fees have been routinely held to merit no fees by the Sixth Circuit:

> The district court identified the 'egregious and unreasonable conduct' to include: (1) the EEOC filing over a dozen losing motions; (2) the EEOC's failure to respond properly to Cintas's discovery request; (3) the EEOC's 'refus[al] to produce information regarding the identities of each individual' plaintiff after dismissal of the EEOC's pattern-or-practice claim; and (4) the EEOC's pursuit of claims on behalf of approximately forty individuals, despite its ultimate withdrawal of those claims because they lacked merit. Standing alone, these actions do not seem so 'unreasonable' so as to warrant the district court's ruling. Moreover, none of the legal issues raised by the EEOC appear to have been 'frivolous' or 'groundless,' nor has the EEOC engaged in 'unreasonable litigation strategies' in pursuit of its claim. The EEOC pursued its claim within the bounds of professional conduct and in the good-faith belief that it had done what was necessary to satisfy its administrative prerequisites to suit.

*Serrano v. Cintas Corp.*, 699 F.3d 884, 905 (6th Cir. 2012 (internal citations omitted).

If Plaintiff's discovery conduct in this matter was somehow inappropriate or improper then

it is nonetheless far short of the court's description of the EEOC's conduct in *Serrano*. In fact, of course, Plaintiff's discovery (and other conduct) was nothing like inappropriate, and Plaintiff has pursued litigation as she was entitled to – seeking out all relevant evidence to support her claims and allegations, and doing so thoroughly and conscientiously. And, since the claims she brought were not frivolous or groundless, they were not dismissed out of hand and cannot now serve as evidence that OSU is the "prevailing party" in a "frivolous, egregious, or groundless" litigation.

This Court did *not* dismiss all of the Title VII and Title IX claims, much less the claims against Rizzoni, despite the request of Defendants. Instead, the Court found that Plaintiff had made a *prima facie* case for her claims and should be allowed to pursue them in discovery. That discovery was extensive seems to be the gravamen of OSU's real complaint. OOSU claims that the discovery was oppressive because "Defendants' counsel was *required* to review close to 200,000 potentially responsive documents." Motion p. 6, emphasis added. In particular, OSU believes it is due attorney's fees because "almost all of the discovery in this case was directed to the University and for records maintained by the University, not to Dr. Rizzoni." *Id.* Considering that Rizzoni is an employee of OSU, and therefore uses its email, electronic storage systems, buildings, facilities, and materials, and has maintained an extensive relationship with Ford and other outside entities under the auspices of OSU and its programs, it is in no way surprising or unusual that a great deal of the relevant material requested would be in the possession or control of OSU. Similarly, in a case regarding events spanning years, and addressing the response of a massive institution to serious charges against it and its employee, it is hardly surprising that more depositions than a car accident or slip and fall tort case might be necessary. This Court is well aware of the discovery disputes and requests, and the fact that OSU made no effort to discuss limiting search terms or otherwise to limit the electronic discovery is no one's fault but its own. OSU's claim that it was "forced" to review voluminous documents in discovery is particularly strange in this light, as OSU also notes ample

instances of an opportunity and a willingness to dispute about discovery and its parameters in this matter.  OSU's claims that it was necessary to engage additional attorneys on the discovery, in order to review "nearly 200,000 documents" may accurately reflect the volume of documents reviewed, but whether that number was actually "required" based on "Plaintiff's discovery overbroad requests [sic]" is an issue that could have been addressed and resolved before the Court at the time if OSU was truly concerned about the number of documents requested. That it was not resolved prior to OSU's expenditure of funds and time is not the fault of Plaintiff or her counsel[1].

As far back as *Christiansburg* courts have been explicitly cautioned against "post hoc reasoning" that converts a loss by a plaintiff to an inherently unreasonable claim. 434 U.S. at 421. Courts should examine the claims closely with an eye to their novelty to the court, the extent to which a real threat of harm existed as to the plaintiff, and whether the record would support a finding of frivolous or groundless litigation. *Tarter*, 742 F. at 986. Where Plaintiff brought a claim against Rizzoni, it necessarily implicated his employer, OSU, as inherent to his conduct was the ability to get away with that conduct with regard to his employer. It was thus impossible not to investigate OSU's complicity or responsibility for the conduct suffered by Plaintiff, and given the scale of the events, as well as the size of OSU as an institution, it was perfectly reasonable for Plaintiff to investigate those claims against OSU. That they did not survive summary judgment does not make them retroactively unreasonable or frivolous. Surviving both a motion to dismiss and discovery in fact indicate precisely the opposite of the claims for which OSU demands payment.

---

[1] For a *genuine* abuse of discovery procedures that found sanction justified, see *Beard v. City of Southfield*, No. 14-13465, 2016 U.S. Dist. LEXIS 152484, *2 (E.D. Mich. 2016) (accepting that attorney had violated certification requirements of R. 26(g); had raised a frivolous privilege objection; filed misleading response to a motion to compel; failed to present material at a deposition; failed to reveal withholding of documents from production until pressed by the court; and noting the plaintiff's personal misconduct which included lying during deposition; testifying while intoxicated due to medication; altering and destroying documents; and withholding documents from her attorney and the court).

"Rule 56 is a tool to narrow the factual and legal issues to be brought to trial but does not necessarily mean that a finding not in favor of a plaintiff means that the plaintiff has no basis for filing a complaint." *Riddle v. Egensberger,* 266 F.3d 542, 551 (6th Cir. 2001). OSU claims that the facts of the case were known to Plaintiff and her counsel, and that therefore they were aware that no material fact was at issue that could or would substantiate their claims against OSU. Motion p. 13. This is simply false, as the determination of facts which OSU cites from this Court's order (Doc # 143), e.g. on Motion p. 6, explicitly relies upon record evidence developed by the discovery process with which OSU so strenuously takes issue. Plaintiff sought to develop her claim in order to pursue it; that the Court ruled against her is not evidence that the claim was unreasonable or frivolous, as every court from *Christiansburg* on agrees.

**C.    Even if OSU could establish that any claims were frivolously brought or maintained, it could not establish that it incurred fees solely attributable to the frivolous claims.**

As noted above, even if OSU were able to meet the two primary elements of its claim for fees (it plainly cannot), it would face additional hurdles in its quest to justify payment of its fees and costs. For example, it would still have to show that the fees it is requesting, $410,199.30 (a wholly arbitrary 75% of what OSU claims are its total fees), were incurred solely as to frivolous, unreasonable, or groundless claims. The problem for OSU is that all the claims in this matter "involve a common core of facts [and are] based on related legal theories" and thus "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim by claim basis." *Kidis v. Reid,* No. 19-1673, 2020 U.S. App LEXIS 263, *6 (6th Cir. 2020) (internal quotation marks and citations omitted). A prevailing party is "entitled to recover attorneys' fees for 'all time reasonably spent on a matter.'" *Farrar v. Hobby*, 506 U.S. 103, 115, 113 S. Ct. 566 (1992)(quoting *Northcross v. Bd. of Educ. Of Memphis City Sch.*, 611 F. 2d 624, 636 (6th Cir. 1979). Yet a court does not merely accept the claimed hours or total award sought by the

moving party. *Id.* Even more pertinently, even "in a case" much unlike this one, "involving 'both frivolous and non-frivolous claims, a defendant may [only] recover the reasonable attorney's fees he expended *solely* because of the frivolous allegations.'" *Sagan v. Sumner Cty. Bd. of Educ.,* No. 3:09-cv-1003, 2013 U.S. Dist. LEXIS 50866, *6-7(M.D. Tenn. 2013), quoting *Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011) (italics in original). This is a but-for test, not an optional analysis: "Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid *but for* the frivolous claims." *Fox* at 2215 (emphasis added). Moreover, courts may not reduce fees by an arbitrary proportion or percentage based upon successful versus unsuccessful claims. Instead, claims arising from a common core of facts or related legal theories must not be treated as distinct claims for the purpose of reducing fee amounts. *Hescott v. City of Saginaw,* No. 10-cv-13713, 2015 U.S. Dist. LEXIS196687 (E.D. Mich. 2015)(internal citations and quotations omitted). Fees must be awarded "because of, but only because of, the frivolous claims," such that the overlap of claims requires reduction in fees awarded. *Ash v. City of Livingston,* No. 10-11875, 2013 U.S. Dist. LEXIS 126861, *11 (E.D. Mich. 2013)(quoting *Fox,* 131 S.Ct. at 2215-16.

      OSU has claimed that it is entitled to 75% of the fees incurred in defending all of the claims in this matter, but not only is this an arbitrary figure, it fails to distinguish between the defense of Rizzoni and OSU—which, as controlling and voluminous caselaw establishes, is effectively impossible due to the common core of operative facts to all the claims. Similarly, OSU argues that it should receive fees for its defense of depositions, discovery disputes, and discovery compliance, *even though* all material gathering from these sources related to the claims against Rizzoni as well as OSU. In such circumstances, with time "devoted generally to the litigation as a whole" and without the ability to meaningfully distinguish between the various claims and their relative cost, an award is not permissible since granting it would also be payment for non-frivolous claims, to which a prevailing defendant would not be entitled.

D. **Even if OSU could establish that any claims were frivolously brought or maintained, it could not establish that any such conduct is attributable to Plaintiff rather than her former counsel.**

Finally, even if OSU were able to establish entitlement to a fee award, it still could not overcome a final hurdle to its hope for fees. OSU admits that Plaintiff's former counsel withdrew in February 2022. Motion p. 5. Almost all of the litigation OSU complains of took place under former counsel's representation. OSU attempts to gloss over this fact, but there is a clear problem in determining who, exactly, is to pay any fee awarded.

"Courts must be particularly careful in conducting hearings to determine whether sanctions should be imposed against both plaintiffs and their attorneys for bringing frivolous claims. These situations are especially prone to raise conflicts of interest because each has an incentive to blame the other for bringing the frivolous claims at issue." *Garner v. Cuyahoga Cty. Juv. Court*, 554 F.3d 624, 635-36 (6th Cir. 2009) (citing *In re Ruben*, 825 F.2d 977, 985 (6th Cir. 1987)). OSU has made no effort to distinguish whose conduct it finds sanction-worthy in this matter, leading to the reasonable conclusion that it does not care so long as it gets paid. However, to respond properly to such a motion, even if the previously mentioned three high hurdles to relief could be met (again they plainly cannot), the Court would still need to determine whether her interests and those of her former counsel are opposed in this dispute. As the Court is well aware, this litigation was initiated by and maintained from 2018 to February, 2022 by counsel from the law firm of Obermayer Rebmann Maxwell & Hippel LLP. It was Plaintiff's former counsel from Obermayer who made the supposedly outrageous discovery requests, who "required" OSU to review 200,000-odd documents, and who allegedly caused mediation to fail. OSU's Motion focuses on the "scorched-earth" litigation to which it so strenuously objects. Plaintiff, who is not a lawyer, and is now represented by different counsel, has believed her counsel competent to determine details of litigation strategy. As such, Plaintiff cannot reasonably be forced to answer for conduct over which she exercised no control nor

was qualified to correct. OSU has failed to articulate a basis for distinguishing whose conduct it actually objects to and believes caused the "frivolous, groundless, and unreasonable" claims to persist, and therefore has failed to make clear how this Court would address that distinction in any hypothetical award. *See Beard*, 2016 U.S. Dist. LEXIS 152484 at fn 1 (noting the bifurcation of sanctions hearings due to the need to avoid conflicts of interest). OSU's Motion is primarily sour grapes and perhaps evinces a concern by its counsel about how to justify its extraordinary billing, but it is not Plaintiff's responsibility, or her counsel's, to make OSU whole as to its attorneys.

## IV. Conclusion

Indeed, the undersigned—while admittedly new to this case and relatively unfamiliar with the proceedings in comparison to defense counsel—is unable to identify any act taken by Plaintiff or her prior attorneys in this case that is both as factually and legally groundless as this instant Motion for fees filed by OSU. This is perhaps especially unfortunate given (1) that Plaintiffs' new attorneys have advised defense counsel (who of course represents both OSU and Rizzoni) of Plaintiffs' willingness to substantially depart from the settlement demands and strategy conveyed by Plaintiffs' prior attorneys, and (2) that the funds expended in briefing OSU's lengthy and utterly meritless motion could have been put toward an amicable resolution of this dispute. In any event, the Court should deny the Motion and allow the parties to get on with focusing on what is actually at issue in this case.

Respectfully submitted,

*/s/ Peter Pattakos*
Peter Pattakos (0082884)
THE PATTAKOS LAW FIRM LLC
101 Ghent Rd., Fairlawn, Ohio 44333
P: 330.836.8533/F: 330.836.8536
peter@pattakoslaw.com

*Attorney for Plaintiff Meng Huang*

**Certificate of Service**

The foregoing document was filed on December 30, 2022, using the Court's e-filing system, which will serve copies on all necessary parties.

*/s/ Peter Pattakos*
*Attorney for Plaintiff Meng Huang*
