IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MENG HUANG, | Case No: 2:19-CV-1976 |
| Plaintiff, | Hon. Judge James L. Graham<br>Mag. Judge Chelsey M. Vascura |
| v. | JURY TRIAL DEMANDED |
| THE OHIO STATE UNIVERSITY and GIORGIO RIZZONI, | |
| Defendants. | |

**RESPONSE OF PLAINTIFF'S FORMER COUNSEL OBERMAYER REBMANN MAXWELL & HIPPEL LLP TO DEFENDANT OSU'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS AGAINST PLAINTIFF**

**I.      INTRODUCTION**

This Response is filed in response to the Court's Order of January 9, 2023 (Dkt. 151), on behalf of Plaintiff's former counsel Obermayer Rebmann Maxwell & Hippel LLP ("Obermayer").[1] In the interest of brevity, Obermayer incorporates the arguments of Huang's Opposition (Dkt. 148). The purpose of this responses is to respond to some of OSU's factual allegations and provide historical context regarding four years of litigation.

**II.     ARGUMENT**

**a.      The law does not authorize a fee award against a party's lawyers**

While Plaintiff's brief does not explicitly argue that Obermayer should be responsible for any fee award issued to OSU against Plaintiff, it bears mention that 42 U.S.C. § 1988 does not

---

[1] This Memorandum is filed on behalf of Obermayer and all current and former Obermayer attorneys who worked on this case. This includes two former associates, Allison Genard and Qiwei Chen, who exited the firm on July 7, 2021 and December 31, 2021, respectively.

1

authorize an award of attorneys' fees against a party's lawyers." *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013), citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 761 (1980).[2]

   b.   **OSU is not a prevailing party**

Defendants argued that they participated in the June 20, 2022 mediation in good faith despite not initially bringing Rizzoni to the mediation because OSU was obligated to defend and indemnify Rizzoni. (**Exhibit A** – Declaration of Andrew J. Horowitz, Esq. at ¶ 2; **Exhbit B**). Essentially, OSU argued that it (and not Rizzoni) was the party in interest as to Plaintiff's due process claim against Rizzoni. *Id.* Since the Court agreed with Defendants that they acted in good faith when Plaintiff raised the issue, OSU is judicially estopped from now claiming that it does not have some interest in Plaintiff's remaining claim.[3] *Id.*

Defendants argument also rests on a false premise that the majority of the case has been dismissed because all but one of Plaintiff's original eighteen causes of action have been dismissed. This ignores that Plaintiff pled numerous alternative legal theories to seek a recovery on one set of facts. This case has always been fundamentally a claim for sexual harassment by Rizzoni and retaliation by the University. While the Court has dismissed the latter claim, Plaintiff's core sexual harassment claim remains in the form of her due process claim.[4] In effect, the Court's ruling holds

---

[2] Defendant's Motion cites Fed. R. Civ. P. 54. Rule 54 does not authorize an award of attorney's fees. If an award of fees is authorized by statute, a party claiming entitlement to attorneys' fees and related expenses must generally move for those fees under Rule 54. Under this rule, the movant must specify the grounds on which the award is sought. Fed. R. Civ. P. 54(d)(2)(B). Defendant has identified only 42 U.S.C. § 1988. Defendant has not cited any other statutes or rules that may be applied to counsel, such as Rule 11 or 28 U.S.C. § 1927.

[3] OSU previously objected that Plaintiff violated Local Civil Rule 16.3(c) by bringing confidential mediation communications to the Court. (Ex. B). Nonetheless, OSU's Motion discusses Plaintiff's mediation settlement position in detail in violation of the same rule. It is also unreasonable for OSU to claim that Plaintiff's settlement position unnecessarily prolonged proceedings where Defendants never offered a single dollar to settle the case, at mediation or otherwise. (Ex. A, at ¶ 3).

[4] See the Court's order on Defendants' Motion to Dismiss, broadly construing Plaintiff due process cause of action as including violation of her "liberty interest in bodily integrity" as a result of "Dr. Rizzoni's repeated instances of unwelcome advances, touching, and harassment." (Dkt. 38, at p. 20). OSU is further implicated because an essential element of Plaintiff's due process claim is that Rizzoni acted under color of state law by using "his position as a tenured professor at OSU to violate her right to bodily integrity. *Id.*

not that Plaintiff's other claims arising from Rizzoni's conduct were meritless, but that the proper vehicle for her to pursue a claim based on his conduct is a due process claim rather than a claim under Title VII or Tile IX.

### c. Plaintiff sought a reasonable volume of discovery

Both parties sought significant volumes of discovery. Defendants collectively served Plaintiff with thirty-nine interrogatories, forty-eight document requests, and thirty-five requests for admission. (Ex. A, at ¶ 4). By serving an interrogatory directing Plaintiff to provide a detailed explanation for each denial of a request for admission, Defendants attempted to force Plaintiff to respond to what amounted to thirty-five additional Interrogatories. (Dkt. 56). The Court agreed that this was improper and declined to order Plaintiff to respond. *Id.*

While Defendants sought only one fact witness deposition (that of Plaintiff), it is typical in civil rights litigation that most depositions are taken by the plaintiff. Five of the twelve witnesses deposed by Plaintiff were OSU's Fed. R. Civ. P. 30(b)(6) designees.[5] It is not unusual for a civil rights plaintiff to take seven fact witness depositions plus a 30(b)(6) deposition. All but three of these depositions were half a day or less.[6]

With respect to OSU's fees and costs incurred gathering, reviewing, and producing electronically stored information ("ESI"), this cost was largely brought about OSU's failure to meaningfully confer with Plaintiff on these issues. Prior to the parties' initial Rule 26(f) conferral, Plaintiff's counsel emailed Defendants' counsel a list of questions regarding OSU's storage and preservation of ESI as well as how OSU intended to collect and produce the ESI for litigation. (**Exhibit C**). Defendants were unprepared to have this discussion, and no such discussion ever

---

[5] Hoge, Brant, Giuliani, Page, and Lawther. (Ex. A, ¶5).
[6] Based on the times cited in OSU's motion, Dkt. 144, at p. 6.

occurred. (*Id.*; Ex. A, at ¶6). In response to Plaintiff's initial discovery requests, OSU proceeded to engage in the review of ESI described in OSU's motion without first conferring with Plaintiff on the search terms, custodians, or necessity of manual review of any particular volume of ESI. (**Exhibit D**). OSU informed Plaintiff of this activity only after Plaintiff served Defendants with her own proposed ESI search parameters, which coincidentally yielded less than half the number of potentially responsive documents captured by OSU's unilateral search. *Id.* Had OSU engaged in the ESI discovery process in a sophisticated manner and included Plaintiff from the outset, the volume of ESI that it had to manually review would have likely been far lower.[7]

### d. The discovery sought by Plaintiff was largely relevant to her civil rights claim against Rizzoni

OSU's claim that the vast majority of its expenditures on written and ESI discovery relate only to Plaintiff's claims again rest on the fallacy that OSU and Rizzoni are separate and unrelated parties. OSU owns the email and computer systems that Rizzoni and Plaintiff used to communicate with each other and with other individuals regarding each other. A large portion of the ESI that OSU reviewed is therefore relevant to Plaintiff's due process claim against Rizzoni. Plaintiff spent twenty-two hours deposing four fact witnesses who are directly connected to the facts giving rise to Plaintiff's due process claim (Rizzoni, Weimer, Anderson, and Jayakumar). Multiple of OSU's Rule 30(b)(6) witnesses also gave testimony relevant to the due process claim.

---

[7] Plaintiff's proposed search parameters were provided as a starting point for meet and confer discussions. Counsel's typical practice is to serve proposed search parameters and ask defense counsel for a "hit report," a spreadsheet prepared by the defendant's ESI vendor that shows the number of potentially responsive documents captured by each search term for each custodian. The parties then typically use the information provided by the hit report to negotiate over the search parameters to reduce the number of potentially responsive documents for manual review by, for example, eliminating search terms that may be causing a large number of false hits, or adjusting date ranges. (Ex. A, at ¶7).

e.  **Both sides won and lost discovery disputes**

Contrary to representations in OSU's motion, Plaintiff did not cause all of the discovery disputes, nor did Defendants always prevail. The chart attached as Exhibit 5 to OSU's Motion distorts this by making all discovery matters that were brought to the Court appear to be of equal weight and importance. For example, OSU treats a group of related issues involving the discoverability of other sexual harassment claims against OSU as individual victories. The reality, however, is that the Parties' multiple discovery conferences with the Court involved issues raised by both sides with each prevailing on some key issues.

For example, on August 24, 2020, the Court ruled that Plaintiff did not have to answer thirty-one interrogatories improperly clothed as requests for admission (described in more detail above). (Dkt. 56). The Court also ordered OSU to produce its investigation report with version control metadata intact, and ordered Rizzoni to search his cell phone text messages for responsive materials. *Id.* Similarly, at the November 19, 2020 conference, the Court declined OSU's request to strike witness affidavits concerning sexual harassment of other Chinese female graduate students by Rizzoni and declined to compel Plaintiff to produce a large volume of ESI that was wholly irrelevant to the claims and defenses in the case. (Dkt. 68).

f.  **Defendants multiplied proceedings by unreasonably refusing to engage in oral meet and confer discussion with Plaintiff and on one occasion failing to meet and confer in any manner**

When the parties held their Rule 26(f) telephone conferral, Defendants' counsel stated that "it is known" to the Court that "it takes a long time" for OSU to respond to discovery requests, and that the Court accommodates OSU in this regard. (**Exhibit E**). Plaintiff responded to OSU's naked suggestion that the Court was used to giving it preferential treatment by including this in an email to the Court introducing the parties' dispute over the timeline for discovery. *Id.* Instead of acknowledging the inappropriateness of its counsel's statement, Defendants insisted on holding all

5

further conferrals via email, even when Plaintiff suggested that discovery issues could be much more easily resolved via phone. (**Exhibit F**). This resulted in both sides spending unnecessary time drafting correspondence instead of having short phone calls. Because this email correspondence was ineffective at resolving disputes, the parties spent further unnecessary time bringing discovery disputes before the Court.

On January 29, 2021, Defendants unnecessarily involved the Court in a discovery dispute without first conferring with Plaintiff. (**Exhibit G**).

g. **Plaintiff's claims did not rest on misrepresentations of fact**

OSU argues that some of Plaintiff's claims were not dismissed on its initial motion to dismiss and instead were litigated through discovery and summary judgment due only to factual misrepresentations by the Plaintiff (and by implication, Obermayer). This is simply inaccurate.

First, OSU suggests that Plaintiff lied about her employment relationship with OSU. Rather, Plaintiff engaged in discovery regarding the facts surrounding the employment relationship and presented a good-faith colorable legal argument for why an employment relationship exists. The fact that the Court ruled against Plaintiff on this issue does not result in a prima facie conclusion that Plaintiff lied or otherwise asserted claims in bad faith.

OSU further argues that Plaintiff's purported admission that Rizzoni made the decision to remove her from the Ford URP program prior to her reporting his harassment to OSU means that she never had a good faith basis to assert that Rizzoni removed her from this program in retaliation for protected activity. This, however, ignores that Huang engaged in protected activity prior to this decision by Rizzoni by refusing his advances and refusing to attend private weekend meetings with him where he would likely to harass her.

Finally, OSU ignores the chronology with respect to Plaintiff's job offer from Ford. The offer came in the end of 2019, over a year after the commencement of the Action. Plaintiff

6

reasonably believed that Professor Rizzoni had fatally interfered in her relationship with Ford at the time she filed her Complaint in this Action. The Complaint even quoted a lengthy defamatory email sent by Rizzoni to a Ford recruiter. Moreover, the fact that Ford eventually made an offer speaks only to her relationship with certain people at that company, most importantly Dyche Anderson. This does not negate Rizzoni's defamatory interference, or the fact that his interference was in retaliation for her refusal to submit to his advances. Indeed, this evidence is relevant to the Section 1983 claim.

### III.    CONCLUSION

In representing Plaintiff, Obermayer acted reasonably and ethically to zealously advocate for Plaintiff. Obermayer's efforts were proportionate to the issues in the litigation and were at times multiplied unnecessarily by Defendants' litigation conduct. The only "unreasonable, frivolous, meritless, and vexatious" litigation conduct at issue is *OSU's* filing of a lengthy motion for fees and costs against its former graduate student without factual or legal support and while she has a <u>pending</u> claim that a tenured member of OSU's faculty engaged in a deplorable pattern of pervasive sexual harassment against her and retaliated against her for refusing his advances, all knowing that she was in a vulnerable position because she depended on him for her academic and future career, and because her entire support network was on the other side of the globe.

Respectfully submitted,

Dated: January 25, 2023

*/s/Andrew J. Horowitz, Esq.*
Bruce C. Fox, Esq. (pro hac vice)
bruce.fox@obermayer.com
Andrew J. Horowitz, Esq. (101753)
andrew.horowitz@obermayer.com
OBERMAYER REBMANN
MAXWELL & HIPPEL, LLP

7

8

525 William Penn Place, Ste. 1710
Pittsburgh, PA 15219
412-566-1500
412-281-1530 (f)