IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| MENG HUANG, <br><br> Plaintiff, <br><br> v. <br><br> THE OHIO STATE UNIVERSITY and GIORGIO RIZZONI, <br><br> Defendants. | Case No: 2:19-cv-1976 <br><br> Judge James L. Graham <br><br> Magistrate Judge: Chelsey M. Vascura |

**DEFENDANT'S REPLY TO RESPONSES TO MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS AGAINST PLAINTIFF**

**INTRODUCTION**

Defendant OSU submits this Reply in opposition to the Responses filed by Plaintiff's former counsel (ECF Nos. 153 and 154). For the reasons outlined below, the Court should grant OSU's Motion for an Award of Attorney Fees and Costs against Plaintiff.

**LAW AND ARGUMENT**

**A.    This Is An Exceptional Case Where Attorneys' Fees Should Be Awarded.**

The manner in which Plaintiff and her former counsel litigated this case, without any other analysis, justifies an award of attorneys' fees in this case. For purposes of determining the propriety of an award of attorney fees to a prevailing defendant, The Supreme Court has defined what constitutes an "exceptional case," holding that "an exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) **or the unreasonable manner in which the case was litigated.**" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014)(interpreting an analogous fee-shifting provision in the Patent

1

Act). District courts may determine whether a case is an exception in the case-by-case exercise of their discretion, considering the totality of the circumstances. *Id.* Attorney's fees should be assessed to the defendant only when the court finds that the plaintiff's "claim was groundless at the outset or that the plaintiff continued to litigate after it clearly became so." *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985) (citing *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)).

Under the totality of the circumstances, Plaintiff's dogged pursuit of factually and legally baseless claims against OSU, despite knowing the facts did not support those claims prior to filing suit, warrants an award of attorney fees to OSU. See *Bowman v. City of Olmsted Falls,* 802 Fed.Appx. 971, 975 (6th Cir. 2020) (noting that neither of plaintiff's claims were supported by foundation, and even though his "ultimate failure [was] clearly apparent from the beginning," he continued to litigate them). The focus of the inquiry is not the theory of the case, but rather, whether the claim was frivolous, unreasonable, or groundless, or whether Plaintiff continued to litigate after it clearly became so. *E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 592 (6th Cir. 2013).

Here, Plaintiff filed the following claims against OSU: (1) Title IX Sexual and Racial Harassment; (2) Title IX Hostile Environment; (3) Title VII Sexual and Racial Harassment; (4) Title IX Retaliation; (5) Title VII Retaliation. ECF No. 1. This Court found that Plaintiff's deliberate indifference claim under Title IX was legally without merit because she could not allege further sexual harassment after notifying OSU of her complaint. (ECF No. 38, PageID 486)(The Court also denied Plaintiff's Motion for Reconsideration on this claim following a change in the law at the Sixth Circuit. (ECF No. 139)). Regarding Plaintiff's Title VII quid pro quo harassment claim, Plaintiff knew she could not identify any adverse employment action

2

to establish the fourth element of her claim, yet she pursued the claim regardless. (ECF No. 143, PageID 6672-6675). On Plaintiff's Title VII hostile work environment claim, Plaintiff knew she had unreasonably failed to take advantage of OSU's protective and corrective measures when she failed to report the alleged harassment for nearly 4 years, which entitled OSU to judgment as a matter of law under well-settled precedent. (ECF No. 143, PageID 6688-6689). Likewise, the Court found that Plaintiff's Title VII retaliation claim failed because, *as she admitted in her deposition*, the alleged retaliatory actions taken against her by OSU occurred prior to the date she filed her complaint with the University, meaning she could not establish any adverse action was taken against her subject to engaging in protected activity. (ECF No. 143, PageID 6691). Finally, regarding her Title IX retaliation claim, Plaintiff failed to show any material fact in dispute regarding alleged school-related action, and therefore her retaliation claim failed as a matter of law. (ECF No. 143, PageID 6702).

Notably, Plaintiff and Plaintiff's former counsel do not substantively reject the contention that Plaintiff knew these facts prior to initiating a lawsuit enduring nearly half a decade. Plaintiff argues that because the Court's Order granting summary judgment references a factual record developed by the discovery process, her claims were not unreasonable or frivolous. However, Plaintiff completely ignores the fact that the bases for the Court's summary judgment in favor of OSU came from Plaintiff's own testimony – certainly, nothing that needed to be developed factually over four years. Plaintiff knew before she filed suit that: (1) she was not employed by the university until she was appointed as a graduate research associate in August 2017; (2) she suffered no adverse employment action; (3) OSU had a robust sexual misconduct policy which she did not utilize for over three years until finally reporting Dr. Rizzoni on December 12, 2017; (4) she suffered no adverse

action in retaliation for engaging in protected activity on December 12, 2017; (5) and OSU did not take any materially adverse school-related actions against her after she first complained about Rizzoni. (ECF No. 143).  That OSU had to endure years of litigation costs and expenses defending this lawsuit before ultimately prevailing on every claim by pointing out the lack of material facts in dispute, facts which were in Plaintiff's knowledge, underscores the frivolity and unreasonable nature of Plaintiff's case against OSU.

Further, the argument by Plaintiff's former counsel that OSU ignores the job offer chronology with Ford does nothing but shine light on the fact that Plaintiff continued to litigate the claim **despite knowledge** that it was frivolous, unreasonable, or groundless. Plaintiff did not ever withdraw her claim regarding the Ford job offer and OSU was forced to address the issue in its motion for summary judgment.  (ECF No. 105, PAGEID 5427). Thus, the Court was then forced to include the Ford job offer in its summary judgment analysis, wasting both OSU and the Court's time to address a claim that Plaintiff knew was frivolous. (Court Opinion, ECF No. 143, PageID 6666, 6693).

Finally, the argument of Plaintiff's former counsel that the discovery costs in this case were largely caused by Defendant is without merit. (ECF No. 154, PageID 6808-6809). Plaintiff's former counsel criticizes the manner in which defense counsel gathered, reviewed, and produced responsive electronically stored information ("ESI").  This claim all but completely ignores Plaintiff's role in propounding such broad, all-encompassing discovery requests directed at OSU and regarding the claims asserted against OSU.  Plaintiff's former counsel instead accuses defense counsel of failing to meaningfully confer on those issues and not utilizing Plaintiff's ESI search parameters.  What is more, Plaintiff's former counsel accuses defense counsel of multiplying the proceedings by failing to engage in oral meet and

4

confer discussions. In reality, defense counsel engaged in phone discussions with Plaintiff's former counsel *for years* until the mid-2020 when Plaintiff's former counsel started misrepresenting what defense counsel said on the "meet and confer" phone calls. (Ex. 1, Emails). On June 18, 2020, defense counsel notified Plaintiff's former counsel that communications on discovery disputes would be conducted henceforth in writing only. Id.

### B. Defendant Was The Prevailing Party on Plaintiff's Claims.

"Before deciding whether an award of attorney's fees is appropriate in a given case, … a court must determine whether the party seeking fees has prevailed in the litigation." *CRST Van Expedited, Inc. v. E.E.O.C. (CRST III),* 578 U.S. 419, 422 (2016). Plaintiff and Plaintiff's former counsel argue that OSU is not a prevailing party because, even though OSU defeated Plaintiff on the merits of every claim Plaintiff asserted against OSU, one of Plaintiff's claims survived against a separate Defendant, Dr. Rizzoni. In support of this argument, Plaintiff and her former counsel both argue that Plaintiff must be considered the prevailing party because she survived summary judgment. This argument, however, ignores significant precedent, including the Supreme Court's opinion in *Hensley v. Eckerhart,* 461 U.S. 424 (1983). In *Hensley,* the Supreme Court noted the possibility that a plaintiff might prevail on one contention in a suit while also asserting an unrelated frivolous claim. The Supreme Court explained, in that situation, a court could properly award fees to both parties – to the plaintiff, to reflect the fees he incurred in bringing the meritorious claim, and to the defendant, to compensate for the fees he paid in defending against the frivolous one. *Hensley,* 462 U.S. at 435, n. 10. Further:

> [A] court may reimburse a defendant for costs . . . even if a plaintiff's suit is not wholly frivolous. Fee-shifting to recompense a defendant (as to recompense a plaintiff) is not all-or-nothing: A defendant need not show that every claim in a complaint is frivolous to qualify for fees.

5

*Fox v. Vice,* 563 U.S. 826, 835 (2011).

Indeed, building on this rationale, the Supreme Court expounded on what constitutes a "prevailing party" for purposes of the attorney fee-shifting provision. *CRST III*, supra, 578 U.S. at 431-32.

> This Court … now holds that a defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party.' Common sense undermines the notion that a defendant cannot 'prevail' unless the relevant disposition is on the merits. Plaintiffs and defendants come to court with different objectives. A plaintiff seeks a material alteration in the legal relationship between the parties. A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor. The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations. The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision. The defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason.

Thus, to determine whether a party prevailed, courts consider the litigation as a whole to determine which party "fulfilled its primary objective." *Id.*

Here, Plaintiff brought five claims against OSU. Unquestionably, Plaintiff's primary objective in bringing claims against OSU was to obtain redress for alleged legal wrongs sustained by her at the hands of OSU. Regardless of the mental gymnastics Plaintiff and her former counsel attempt to execute by ignoring the outcome of Plaintiff's claims against OSU, there is no reasonable dispute that *OSU prevailed on all claims against it*. Despite the Court's summary judgment on all of Plaintiff's claims against OSU, which is a decision "on the merits," Plaintiff's former counsel tries to spin the adjudication, as follows:

> In effect, the Court's ruling holds not that Plaintiff's other claims arising from Rizzoni's conduct were meritless, but that the proper vehicle for her to pursue a claim based on his conduct is a due process claim rather than a claim under Title VII or Title IX. (ECF No. 154, PageID 6807-6808).

6

Contrary to this reframing, by dismissing all of Plaintiff's claims against OSU, the Court did, in fact, find that Plaintiff's claims against OSU were meritless.

Plaintiff's next argument is equally unavailing – that she "has prevailed at the current stage of litigation and trial approaches on its remaining claim." (ECF No. 148, PageID 6787). Plaintiff cites to *McQueary v. Conway,* 614 F.3d 591 (6th Cir. 2010) which involved a preliminary injunction against *a single party*, the Attorney General of the Commonwealth of Kentucky. The *Woods v. Willis*, 631 Fed. Appx. 359, 364 (6th Cir. 2015) case cited by Plaintiff involved three plaintiffs, each with eight claims, against three defendants. All claims were dismissed, except for two of eight claims for one of the plaintiffs, Fuller, against one of the defendants, Willis. Contrary to Plaintiff's claims, there is no support in *Woods* for the proposition that the plaintiff was a prevailing party against the dismissed co-defendants. Instead, the opinion exclusively references the arguments of Fuller and Willis. In *Monce v. Cty. Bd. of Education,* No. 1:16-cv-00007, 2019 U.S. Dist. LEXIS 89061, *7-8 (6th Cir. 2019), the court affirmed an award of attorney's fees for the plaintiff after the case was litigated through trial and the plaintiff prevailed on two claims against both defendants. *Id.* at *8. The fact that Plaintiff's case survived the summary judgment phase as to one of two parties has absolutely nothing to do with the fact that her case against OSU is concluded.

If Plaintiff proceeds to trial against Dr. Rizzoni only and prevails, Plaintiff cannot recover her attorney fees *from OSU.* See, *Dean v. Gladney,* 621 F.2d 1331, 1337-38 (5th Cir. 1980) (Attorneys' fees could not be awarded under 42 U.S.C.A. § 1988 against parties properly dismissed from civil rights action merely because plaintiffs prevailed with respect to other parties in the suit). The University is completely out of the case as a party. Plaintiff cannot be the prevailing party against OSU because, "at a minimum, to be considered a

7

prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Hewitt v. Helms,* 482 U.S. 755, 760-761 (1987).  Plaintiff's dispute with OSU was resolved totally in OSU's favor.  OSU is the prevailing party.

Last, Plaintiff argues that OSU is not the prevailing party because it may have to indemnify Dr. Rizzoni under Ohio law if Plaintiff prevails against him at trial.  (ECF No. 148, PageID.6787).  Plaintiff cites no law to support this proposition.  OSU is still the prevailing party on all of Plaintiff's claims against it, no matter what happens with Dr. Rizzoni.

> **C.    The Attorney Fees Requested Are Properly Associated with Plaintiff's Frivolous, Unreasonable, Groundless Claims Against OSU.**

Plaintiff and her former counsel attempt to distance themselves from the way they litigated the case and go as far as to attempt to deflect blame to OSU for responding to the discovery requests Plaintiff's counsel drafted and served to OSU.  Plaintiff's former counsel asserts that the discovery was largely relevant to her civil rights claim against Rizzoni, i.e. her due process claim against Rizzoni in his individual capacity. (ECF No. 154, PageID.6809).  This is nothing more than revisionist history.

Following Defendants' Motion to Dismiss, the only claims remaining for discovery were four claims against OSU (Title VII quid pro quo, hostile work environment, and retaliation; and Title IX retaliation), and one claim against Rizzoni (due process).  Common sense dictates that a single claim, for which Plaintiff is the primary witness to the allegations, could not possibly require a fraction of the discovery necessary to support four claims against a public university.  It is obvious from the discovery propounded by Plaintiff that the lion's share of the requests to OSU were targeted toward information and documentation to support the claims against OSU, not Plaintiff's allegations against Dr. Rizzoni. (Ex. 2,

8

Discovery Requests to OSU). Contrary to the arguments of Plaintiff and Plaintiff's former counsel, OSU does not contend that Rizzoni and OSU are separate and unrelated – instead, OSU contends that the primary driver of the discovery process was Plaintiff's attempt to connect Plaintiff's allegations of Rizzoni's conduct to OSU for purposes of establishing respondeat superior liability on 80% (four out of five) of Plaintiff's surviving claims in the lawsuit. Of course, it is no surprise that Plaintiff focused her case on OSU, as Plaintiff knew that the potential for substantial damages in this case was greater if she could survive summary judgment against OSU.

Moreover, as the Court noted in its summary judgment order, Plaintiff's allegations of Dr. Rizzoni's inappropriate touching turn on issues of credibility. To support her Section 1983 substantive due process claim, Plaintiff had to demonstrate that she was deprived of a right secured by the laws of the Constitution and laws of the United States, and that the deprivation of the right was caused by a person acting under the color of law. *Wittsock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). The Court denied Defendant Rizzoni's motion for summary judgment, noting that, "[t]hough Rizzoni adamantly denies ever touching Plaintiff inappropriately during any of the alleged incidents, the Court is bound at summary judgment to credit Plaintiff's testimony that he did." (ECF No. 143, PageID 6702-6703). Plaintiff's testimony was all that was required to defeat summary judgment on her sole claim against Dr. Rizzoni. It is disingenuous for Plaintiff and her former attorneys to argue that the discovery in this case was equally, and necessarily, targeted toward the credibility of Plaintiff's allegations that Dr. Rizzoni inappropriately touched her.

Plaintiff and Plaintiff's former counsel take issue with the more-than-reasonable approximation of 75% of the incurred attorney fees and costs which Defendants have

9

incurred in this case. As noted above, however, discovery in this case was taken on five claims, four of which were against OSU and were the focus of the bulk of discovery. Indeed, as apparent from the Court's summary judgment order, dozens of pages were allocated to the claims against OSU, whereas less than one page was needed to address the single claim against Dr. Rizzoni. Moreover, as the Supreme Court has emphasized, "the determination of fees 'should not result in a second major litigation.'" *Fox* at 838 (citing *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933). "[T]rial courts need not, and indeed should not, become green-eyeshade accountants." *Id.* Instead, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." Id. This Court may take into account its overall sense of the suit and use estimates in calculating and allocating an attorney's time. Id.

Taking into account the complexity of the issues, the length of this litigation, the volume of materials submitted for consideration at the summary judgment phase, and the Court's analysis of the issues as reflected in its summary judgment order, the Court should apply its overall sense of this lawsuit and award fees and costs to OSU as requested.

    **D.    Defendant's Attorneys' Fees Are Reasonable and Necessary.**

        **1.    Reasonable Hourly Rates.**

Plaintiff and Plaintiff's former counsel do not object to the hourly rates requested. Therefore, for the reasons outlined in Defendant's Motion (ECF No. 144), the Court should approve $200 per hour as a reasonable fee.

        **2.    Hours Billed.**

Plaintiff's former counsel does not dispute that Defendant should be entitled to a significant portion of the hours billed, if the Court grants this Motion. Rather, Plaintiff's former counsel takes issue with the amount of time dedicated to conducting e-discovery in

response to the discovery requests Plaintiff served to OSU: "[h]ad OSU engaged in the ESI discovery process in a sophisticated manner and included Plaintiff from the outset, the volume of ESI that it had to manually review would have likely been far lower." (ECF No. 154, PageID 6809). Respectfully, Plaintiff's former counsel knew precisely how much work it was causing OSU's counsel when it propounded discovery and scheduled depositions. To suggest that OSU's counsel should have objected more or attempted to negotiate further on search terms ignores the fact that the time spent in responding to and defending discovery efforts was exclusively driven by Plaintiff's discovery efforts. Plaintiff and Plaintiff's former counsel did not raise these concerns when they were causing such time and expense to be incurred by OSU – instead, they only raised these concerns after realizing that Plaintiff might be responsible for attorney fees wrongfully incurred from her case.

## **CONCLUSION**

WHEREFORE, for the reasons outlined above, Defendant respectfully requests this Court award its attorney fees and costs incurred in defending this action.

Respectfully submitted,

PLUNKETT COONEY

By: /s/ Christina L. Corl
Christina L. Corl (0067869)
716 Mt. Airyshire Blvd, Suite 150
Columbus, OH 43235
Telephone: (614) 629.3018
Email: ccorl@plunkettcooney.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this **9th day of February 2023**, I filed the foregoing document with the Clerk of Court via the Court's electronic filing system.  A copy has also been served, by this office, on **February 9, 2023** upon all counsel and former counsel of record.

/s/ Christina L. Corl
Christina L. Corl (0067869)

Open.25577.83339.30509555-1