IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| MENG HUANG, | Case No: 2:19-cv-1976 |
| Plaintiff, | Judge James L. Graham |
| v. | Magistrate Judge: Chelsey M. Vascura |
| THE OHIO STATE UNIVERSITY and GIORGIO RIZZONI, | |
| Defendants. | |

**DEFENDANT'S MOTION TO BIFURCATE TRIAL ON PUNITIVE DAMAGES AND TO BAR EVIDENCE AS TO PERSONAL NET WORTH AT THE LIABILITY STAGE OF ALL EVIDENTIARY PROCEEDINGS**

Defendant Dr. Giorgio Rizzoni, by and through counsel, Plunkett & Cooney, hereby moves this Court to bifurcate any potential future trial on the quantification of punitive damages and to bar any evidence pertaining to the personal net worth, asset base, remuneration, or wealth of Dr. Rizzoni prior to a time in the proceedings, if any, in which his personal liability for punitive damages is already first established.

**Introduction**

This case involves multiple employment discrimination and Title IX claims brought by Plaintiff, a former student of the University, against OSU and Dr. Giorgio Rizzoni, Plaintiff's former PhD advisor.  One cause of action survived this Court's ruling on summary judgment. Remaining for trial is only Plaintiff's claim alleging a violation of her constitutional right to "bodily integrity" brought pursuant to 42 U.S.C. Section 1983 against Dr. Rizzoni.  (Opinion on Summary Judgment, ECF #143, PAGEID # 6703).  All claims against the University have been dismissed.  Id.  For purposes of any further proceedings in this case, evidence

1

concerning the personal wealth or net worth of Dr. Rizzoni is irrelevant to any question of law or fact pertaining to whether threshold personal liability exists for Dr. Rizzoni. In addition, any premature introduction or attempted introduction of financial evidence pertaining to Dr. Rizzoni's personal wealth would be prejudicial to Dr. Rizzoni and distracting to a jury. Premature release of such financial evidence to a jury would effectively deprive Dr. Rizzoni of due process under Supreme Court case law such as *Mathews v. Eldridge* and *Connnecticut v. Doehr* (full citations below).

For these reasons, Defendant requests that this Court (1) bar any evidence concerning the personal net worth, asset base, salary, remuneration, or wealth of Dr. Rizzoni at least until such point in time, if any, as a jury first finds him liable for punitive damages, and (2) bifurcate all future trials or evidentiary proceedings pursuant to Federal Rule of Civil Procedure (FRCP) 42(b).

## **Law**

**A)** **As to FRCP 42 and bifurcation.** A district court can bifurcate a trial "in furtherance of convenience or to avoid prejudice or when separate trials will be conducive to expedition and economy." *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 556 (6th Cir. 1996). Only one of these criteria need be met to justify bifurcation. *MCI Communications Corp., v. American Telephone & Telegraph Co.,* 708 F.2d 1081, 1177 (7th Cir. 1983). The first sentence of FRCP 42(b) reads in its entirety as follows: "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order separate trail of more or more issues, claims, crossclaims, counterclaims, or third-party claims." This language has been found to create full discretion for the court to decide if and when to bifurcate a trial. *See, e.g., Davis v. Freels*, 583 F.2d 337, 343 (7th Cir. 1978).

Case law from Sixth Circuit district courts from as recently as 2021 states that "[c]ourts often bifurcate the amount for punitive damages where the plaintiff seeks to introduce evidence of a defendant's financial condition to support a punitive damage award. *Gokor v. Schlievert,* 2021 WL 1061918, * 3 (N.D. Ohio March 19, 2021)(citing as an example *Hughs v. Goodrich Corp.*, 2010 WL 3746579, at *4, n.5 (S.D. Ohio Sept. 27, 2010).

**B)** **As to punitive damages.** Plaintiff's Complaint contains a request for punitive damages. (Compl., Section VI (e)). "Punitive Damages are appropriate in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015)(*quoting Smith v. Wade,* 461 U.S. 30, 56 (1983)). Defendants proven to have engaged in violence, the threat of violence, duplicity or trickery have committed especially "reprehensible" acts that make them apt targets for punitive damages. *See, BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 576 (1996). Because the purpose of punitive damages is partially to punish a wrongdoer, the personal wealth of a defendant becomes relevant to the question of how large a punitive damages award should be, but only after liability is first established. *Gillispie v. City of Miami Township*, 2022 WL 10188950, at *3 (S.D. Ohio May 2, 2022)("but if unrelated to [determining a level of punitive damages], such evidence would be irrelevant and should be excluded")(*citing Echavarria v. Roach*, 2022 WL 606076, at *2 (D. Mass. March 1, 2022)). There are, moreover, procedural and constitutional limitations on punitive damages, and excessive damages can violate the fourteenth amendment. *Gore*, 517 U.S. at 562.

**C)** **As to due process in the context of punitive damages.** The Supreme Court has warned that "[p]unitive damages pose an acute danger of arbitrary deprivation of

3

property." *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 432 (1994). For this reason, the Supreme Court in *Gore* set out a number of "guideposts" to determine whether punitive damages might be "grossly excessive" or arbitrary. *Gore*, 517 U.S. at 575. In addition to being protected by due process against excessive or arbitrary awards, defendants facing the threat of punitive damages also have a due process right to fairly structured judicial procedures *that do not lead to an "erroneous" finding of liability in the first place*. The Supreme Court has created a three-part test for the courts to consider in determining whether any given proposed protective procedure – in this case Rule 42(b) bifurcation – should be adopted by a court in order to protect a defendant's due process rights. *See Connecticut v. Doehr*, 501 U.S. 1, 10-11 (1991)(citing to *Mathews v. Eldridge,* 424 U.S. 319, 343-44 (1976)). As it pertains to Rule 42(b) bifurcation (or to any other procedure that is proposed in order to protect due process) a court is directed to weigh three factors: (1) the private interest that will be affected or harmed if the proposed protective procedure is not followed, (2) the amount of risk of an erroneous deprivation if the proposed protective procedure is not followed, and (3) the extra burden to other parties or to the court or to the government if the proposed protective procedure is adopted. *Id.*

## Analysis and Argument

Given the above law, this Court should bifurcate any future trial so that any evidence concerning the personal wealth, remuneration, asset base, or net worth of Dr. Rizzoni (collectively, "Wealth Evidence") can only be introduced into evidence, or attempted to be introduced, after the point in time in these proceedings in which his personal liability for punitive damages is already established. All evidentiary or other judicial proceedings with respect to the quantification of punitive damages should be kept separate and bifurcated

from proceedings establishing Dr. Rizzoni's threshold liability and quantifying compensatory damages, in part because punitive damages can only be responsibly awarded by taking into consideration what amount of compensatory damages have already been awarded. *See Gore*, 517 U.S. at 575.

> **A)** **There is a substantial risk of unfair prejudice if irrelevant evidence concerning Dr. Rizzoni's personal wealth is published to a jury before a threshold finding of his personal liability for punitive damages has been made.**

Federal Rule of Evidence 403 allows for evidence to be excluded if it would be unfairly prejudicial *even when it has some probative value*. Here, however, the above-defined "Wealth Evidence" has no probative value whatsoever as to any of the above-described elements that Plaintiff must demonstrate to show that Dr. Rizzoni has threshold liability under Section 1983 for first amendment retaliation. And the Supreme Court has made clear that "the presentation of evidence of a defendant's financial worth creates the potential that juries will use their verdicts to express biases…". *Honda Motor Co. v. Oberg*, 512 U.S. at 432 (discussing prejudice against big businesses and not wealthy individuals).

Wealth and wealth disparity are highly divisive political and social issues that have a good chance of enflaming personal prejudices and biases. Any evidence concerning Dr. Rizzoni's personal finances could cause an incorrect threshold finding of liability that is erroneous merely because jurors may passively or subconsciously decide — if the decision they face is a close one — that Dr. Rizzoni can afford to pay regardless of his legal and moral culpability. Or a juror might decide this is an opportunity to punish Dr. Rizzoni via a punitive damages award as a symbol of frustration against wealth disparity. There is simply no good reason to run this substantial risk of unfair prejudice when the Wealth Evidence in question is worthless to the questions before a jury on threshold liability.

As shown above, courts throughout this country routinely bifurcate trials to avoid the above risks and this Court should do so as well.

**B) The tests under both FRCP 42(b) and under *Mathews* for bifurcation of these proceedings are satisfied.**

As set forth above, this Court need only find that one of the multiple justifications for bifurcating a case is satisfied in order to bifurcate a case under FRCP Rule 42(b). *MCI Communications Corp.*, 708 F.2d at 1177. Those justifications range from "convenience," to avoiding "prejudice" to expediting or economizing the legal proceedings. FRCP 42(b). Here all of these justifications are satisfied. As already described above, bifurcation of these proceedings such that the quantification of punitive damages is adjudicated after the threshold finding of liability is vital to avoid unfair prejudice.

By avoiding a trial in which all evidence applicable to all potential issues must be considered, the Court will spare itself and the parties the need to consider evidence concerning punitive damages, including the Wealth Evidence, that will become moot if threshold liability is not found. The bifurcation of these proceedings will be convenient to the Court and to the parties and should substantially expedite and economize these proceedings, all as Rule 42(b) envisions. No material delay will result if proceedings on the quantification of punitive damages occur minutes, hours or even a few days after threshold liability is first established.

While a separate issue, the above-described three-part test under *Mathews v. Eldridge* for considering a special procedure to protect due process is closely related to Rule 42(b), and is also satisfied. Test number 1 is satisfied because Dr. Rizzoni stands to lose considerable personal wealth if he is not given the protections hereby proposed (i.e., bifurcation). Test number 2 is satisfied because the risk of prejudice and unfairness is

substantial if the proposed protections are not implemented, as many courts around the nation have routinely found.  Test 3 is satisfied, because the proposed protective procedure is not unduly burdensome on the Court or the Plaintiff (and may save time).  *See Connecticut v. Doehr*, 501 U.S. 1, 10-11 (summing up the "Mathews" factors in the context of private civil litigation).

## Conclusion

The "nothing good" test is in full effect here.  Nothing good can possibly come from not bifurcating these proceedings.  Any trial on the quantification of punitive damages should only occur after threshold liability is established, if it ever is.  Nothing good comes from allowing the above-defined "Wealth Evidence" from being published to a jury before the point in time in these proceedings in which such dangerous and bias-activating evidence is actually relevant or helpful.  This Court should enter an order that (1) bifurcates these proceedings as Defendant has requested, and (2) bars any admission or attempted admission of Wealth Evidence prior to a finding by a jury that Dr. Rizzoni is liable for punitive damages.

Respectfully submitted,

*/s/ Christina L. Corl*
Christina L. Corl (0067869)
**PLUNKETT COONEY**
716 Mt. Airyshire, Suite 150
Columbus, Ohio 43235
Tel: (614) 629-3018
Fax: (614) 629-3019
Email: CCorl@plunkettcooney.com
*Counsel for Defendant Dr. Giorgio Rizzoni*

7

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the Clerk's Office using its electronic filing system on this **20th day of March 2023**.  A copy has been served by this office, on **March 20, 2023,** upon the following parties of record via electronic mail:

Peter Pattakos
Peter@pattakoslaw.com
*Attorney for Plaintiff*

              /s/ Christina L. Corl
              **Christina L. Corl**

Open.25577.83339.30767075-1