# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MENG HUANG,<br><br>    Plaintiff,<br><br>vs.<br><br>THE OHIO STATE UNIVERSITY and GIORGIO RIZZONI,<br><br>    Defendants. | Case No. 2:19-cv-01976<br><br>Hon. Judge James L. Graham<br>Mag. Judge Chelsey M. Vascura<br><br>**Plaintiff's Motion for Reconsideration of Order Quashing Plaintiff's Trial Subpoenas** |

Having reviewed the Court's April 21, 2023 order granting Defendant's motion to quash trial subpoenas (ECF No. 183), Plaintiff must respectfully request that the Court reconsider and reverse this ruling and reinstate the subpoenas.

The Court's stated basis for its order is its finding that "the [subpoenaed] witnesses would not be able to provide testimony relevant to the issue of liability." PAGEID #: 7256. Further, the Court referred to its order in limine, ECF No. 176, in which it held that "evidence of Defendant's alleged manipulation, coercion, and influence with respect to Plaintiff's PhD program and candidacy exam would be excluded from the [liability stage] of the trial because the evidence did not tend to prove or disprove that Defendant inappropriately touched Plaintiff." PAGEID #: 7256–57. In denying the motion to quash, the Court held that "Plaintiff has not demonstrated that the subpoenaed witnesses could offer relevant and admissible testimony at the first stage of trial," and "has not asserted that any of these witnesses have personal knowledge concerning whether Defendant inappropriately touched Plaintiff." PAGEID #: 7257.

Plaintiff must respectfully submit that this order constitutes reversible error, and should therefore be reversed, for several reasons:

*First*, it is premature. As set forth in Plaintiff's brief in opposition to a motion to quash, "a ruling on a motion in limine is no more than a preliminary, or advisory, opinion," and "if the evidence is not plainly inadmissible on all potential grounds, the Court's 'evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.'" *United States v. Householder*, S.D.Ohio No. 1:20-cr-77, 2022 U.S. Dist. LEXIS 224905, at *2–3 (Dec. 12, 2022) (quoting *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994); *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). By quashing the subpoenas here, the Court is pre-emptively denying Plaintiff the opportunity to lay the foundation for the relevancy of the testimony of these witnesses, thus pre-emptively denying Plaintiff the chance to not only prove her case, but rebut the Defendant's witnesses, including with impeachment evidence. *See also Householder* at 3 (quoting S*perberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *Brown v. Oakland Cnty.,* No. 14-CV-13159, 2015 U.S. Dist. LEXIS 120940, 2015 WL 5317194, at *2 (E.D. Mich. Sept. 10, 2015) ("'Orders in limine which exclude broad categories of evidence should rarely be employed.' ... Rather, motions in limine are 'generally confined to very specific evidentiary issues of an extremely prejudicial nature.'")).

*Second*, the Court's finding (at PAGEID #: 7256–57) that "evidence of Defendant's alleged manipulation, coercion, and influence with respect to Plaintiff's PhD program and candidacy exam" "[does] not tend to prove or disprove that Defendant inappropriately touched Plaintiff" is not only premature, it is plainly erroneous on its face, and especially so in light of the evidence that has been put before the Court:

Here, Plaintiff has alleged and put forth evidence showing that the "inappropriate touchings" at issue were made pursuant to a persistent years-long pattern of sexual harassment, including repeated unwelcome sexual advances by Defendant. *See*, *e.g.,* ECF No. 174, PAGEID #: 7060–7065 (citing and summarizing record evidence) By definition, an alleged sexual abuser's power and influence over an alleged victim is relevant to whether the alleged abuse (or "touchings")

Page 2 of 11

occurred, particularly where the abuser, contemporaneously with the alleged abuse, exercises his power over the victim in a way that brings adverse consequences upon her. Accordingly, the Sixth Circuit has long recognized the prevalent form of sexual harassment "which compels [the victim] to elect between acceding to sexual demands and forfeiting job benefits, continued employment or promotion, or otherwise suffering tangible ... detriments." *Wolfe v. Carter's, Inc.*, S.D.Ohio No. 1:19-cv-560, 2021 U.S. Dist. LEXIS 150672, at *26 (Aug. 11, 2021), citing, *inter alia*, *Highlander v. K.F.C. Natl. Mgt. Co.*, 805 F.2d 644, 648 (6th Cir.1986). Indeed, Defendant Rizzoni himself acknowledged at his deposition the "general" "appl[ication]" of the dynamic by which "one person is in a position of power [over another] and could say if you will do this for me, I'll do that for you," "[s]o in the context of the Ph.D students you could imagine a number of things that could fall under the quid pro quo sexual harassment." ECF No. 98-1, Rizzoni Dep. Vol. 1, 134:1–7. Further, Rizzoni went on to acknowledge, in his own words, that **"power differential is the essence to ... sexual harassment," not only "an important element," but "the *key* element."** *Id.* p. 134:10–12 (emphasis added).

Plaintiff here has not only introduced evidence that the alleged "inappropriate touchings" occurred precisely in the well-recognized "quid pro quo" context that Rizzoni's power over her allowed, she has also introduced evidence showing that Rizzoni did in fact exercise that power over her as she refused to "accede to [his] sexual demands," and did so in a manner that was calculated to cause and did cause her to suffer severe "tangible detriments." *Wolfe, Highlander, supra.* See also ECF No. 174, PAGEID #: 7060–7065 (citing and summarizing record evidence). This includes Rizzoni's actions in sending absurdly defamatory emails about Plaintiff to representatives of Ford in his spectacularly failed effort to keep her from getting an internship there in the summer of 2017. *Id*, PAGEID #: 7061 (citing and quoting Rizzoni emails to Ford representative Lori Herman ("Please stop paying attention to [Plaintiff]. It is not clear to me what she is doing with her life, but she is the worst PhD student I have ever had. ... She has no business applying for jobs. ... She is a self-centered

and stubborn person who does not know how to listen to advice. …. my other 11 [students] think I am next to God, and act accordingly … [but Plaintiff] does not even begin to understand what a special opportunity it is to be my PhD student."). It also includes his escalating actions against her— including his actions in orchestrating her wholly unwarranted "failure" of the PhD candidacy exam, and his "most unusual" step of refusing to allow her a second chance at the exam—after she had excelled at the Ford internship, continued resisting his unwelcome touching and advances, *and* after high-level Ford employees began to notice the escalating enmity between Plaintiff and Rizzoni, causing one of them to email Rizzoni to suggest that Plaintiff "might not want … to be alone in [his] office [with him] with no one else in the building." *Id.*, PAGEID #: 7062–65.

Even apart from the well-recognized and undeniable relevance of power dynamics to allegations of sexual assault, both generally, and especially regarding the allegations and evidence at issue in this case, there is also the general relevance of the actions taken between the parties that were contemporaneous to the alleged inappropriate touchings. For example, Rizzoni's actions in denying Plaintiff the opportunity to re-take the PhD candidacy exam were recognized by his colleagues and supervisors at Ohio State as "most unusual." ECF No. 174, PAGEID #: 7064, quoting ECF No. 100-2, Rizzoni Dep., Ex. 204. Rizzoni himself acknowledged that this was the first time in his lengthy career that a student under his supervision had failed such a candidacy exam. *Id.*, citing ECF No. 98-1, Rizzoni Dep. Vol. 1, p. 106. The reasons behind this "most unusual" and highly consequential measure taken by Rizzoni against Plaintiff are undoubtedly relevant to whether the alleged "inappropriate touchings" occurred. <u>Most plainly, if Rizzoni's stated reasons for these "most unusual" and highly adversely consequential actions he took against one of his PhD students—a Chinese immigrant whom he personally recruited from China, whose immigration status in the U.S. depended largely on his approval—are found by the jury to be illegitimate and pretextual, then it is substantially more likely that the alleged sexual touchings occurred</u>. Not only may the jury infer that Rizzoni took this action to retaliate against Plaintiff for her refusal to consent

to his touching, but also in an effort to marginalize and delegitimize Plaintiff to keep her impending accusations against him from sticking. Evidence of a cover-up is undoubtedly relevant to whether alleged misconduct occurred, even apart from the "extremely liberal standard for relevancy" that "applies" within the Sixth Circuit. *United States v. Pritchard*, 964 F.3d 513, 525 (6th Cir.2020) (Evidence relevant where it "make[s] it more likely that [defendant] committed the crime because [it] corroborate[s defendant's] coverup efforts"). *People v. Yachik*, 2020 COA 100, 469 P.3d 582, ¶ 14 ("The family dynamics and interactions between the Defendant and alleged victim are relevant to give context to the jury. They are relatively contemporaneous in time and involve the same actors."); *Mann v. Cook*, E.D.Tenn. No. 3:15-CV-570-PLR-HBG, 2019 U.S. Dist. LEXIS 156429, at *18-19 (Sep. 13, 2019) ("Steps taken to cover up [misconduct] may also be relevant to the defendant's state of mind, as well as to the issue of premeditation."). Rizzoni's power over Plaintiff, and his exertion of that power over her in trying to deny her employment at Ford, and his actions in manipulating the PhD exam that jeopardized Plaintiff's student visa, are also highly and inextricably relevant to explain why Plaintiff waited as long as she did—for years—to report the alleged touchings. *Litteral v. Palmer*, E.D.Mich. No. 08-CV-11172, 2010 U.S. Dist. LEXIS 64094, at *32 (June 29, 2010) (evidence is relevant when it "explain[s] the victim's delay in reporting the abuse").

  For this Court to not only rule that "evidence of Defendant's alleged manipulation, coercion, and influence" over Plaintiff, including "with respect to Plaintiff's PhD program and candidacy exam," is per se irrelevant, but also to quash witness subpoenas based on such a ruling, effectively constitutes a ruling by the Court that Rizzoni's "most unusual" actions against Plaintiff had nothing to do with the inappropriate touchings at issue. Such a ruling also wholly deprives Plaintiff of the opportunity to explain why she waited as long as she did to report the inappropriate touchings. This would be contrary to evidence, well established precedent, and common sense, and would usurp the essential function of the jury. *Jackson v. City of Cleveland*, 925 F.3d 793, 814, 2019 (6th Cir. 2019) ("[A] jury is permitted to make reasonable inferences from facts proven in evidence having a reasonable

tendency to sustain them."); *Beck v. Haik*, 377 F.3d 624, 636 (6th Cir.2004) (A district court abuses its discretion if it excludes evidence based on "an erroneous view of the law or a clearly erroneous assessment of the evidence"). In short, this evidence is simply basic and essential to Plaintiff's claims, and to exclude it would flout the "extremely liberal standard for relevancy" that "applies" within the Sixth Circuit. *Pritchard* at 525.

*Finally*, the Court's finding that "Plaintiff has not demonstrated that the subpoenaed witnesses could offer relevant and admissible testimony at the first stage of trial" inverts the burden on Defendant's motion to quash, and the order in whole disregards the fact that Rizzoni didn't have standing to file the motion in the first place. "Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena." *Hendricks v. Total Quality Logistics*, LLC, 275 F.R.D. 251, 253 (S.D.Ohio 2011). Moreover, "the party seeking to quash a subpoena bears the ultimate burden of proof." *Buckosh v. Bonded Filter Co.*, N.D.Ohio No. 1:21-cv-00975, 2021 U.S. Dist. LEXIS 223374, at *4 (Nov. 18, 2021). And not only has the movant's "burden of proof" been recognized as a "heavy" one, it is also the "general rule" that "a party has no standing to seek to quash a subpoena directed to a non-party." *City of Ecorse v. U.S. Steel*, E.D.Mich. No. 07-cv-12131, 2007 U.S. Dist. LEXIS 88343, at *4 (Dec. 3, 2007). *See also Pogue v. Northwestern Mut. Life Ins. Co.*, W.D.Ky. No. 3:14-CV-598-CRS-CHL, 2016 U.S. Dist. LEXIS 70987, at *7-8 (May 31, 2016) ("[D]istrict courts within the Sixth Circuit routinely hold that parties to a lawsuit lack standing to challenge a subpoena served on a nonparty."), quoting *Donahoo v. Ohio Department of Youth Services*, 211 F.R.D. 303, 306 (N.D. Ohio 2002) ("The law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty.").

Leaving aside that it is not an issuing party's burden to establish the relevance of the testimony of subpoenaed witnesses as a condition of issuing the subpoenas, the relevance of the testimony of the witnesses here—including to the issue of liability—is plain:

Vishwanath Subramaniam is a professor who was the chair of OSU's Department of Mechanical and Aerospace Engineering and played a leading role in the University's decision to reverse Rizzoni's effective expulsion of Plaintiff from the PhD program. Dr. Subramaniam confirmed that the process Rizzoni employed with respect to Plaintiff's PhD candidacy exam was "not typical" and created an "urgent" matter for the University to address. ECF No. 95, p. 21–22. Subramaniam explained that the decision that Plaintiff "not be allowed to take the candidacy exam a second time" would have put an "end" to "her status as a legal student of the United States," and that he "felt like [the University] needed to intervene and ask the graduate school for permission to hold a second candidacy exam." *Id.*, p. 22. Subramaniam further explained that "it's very rare" and "unusual" for a PhD student "to not be allowed to take [the candidacy exam] the second time" and that students are "generally" offered this opportunity "as a matter of due course." *Id.* p. 23. Dr. Subramaniam also confirmed the importance of "supporting" and "protecting" Plaintiff so that "she would remain in good status with the immigration authorities" because, as a result of the failed exam and Rizzoni's "very unusual" decision to deny her the usual opportunity for a second chance at the exam, "she was a vulnerable student in jeopardy of being, you know, deported." *Id.* p. 24–25. Additionally, Subramaniam testified about his role, on behalf of the University, in "getting a new dissertation committee for [Plaintiff], and a new [faculty] advisor" to replace Rizzoni, so that her PhD could be completed under the supervision of a professor who was not bent on sexual harassment and retaliation as Rizzoni was. Dr. Subramaniam's testimony, in whole, goes directly and profoundly to the illegitimate and retaliatory nature of Rizzoni's actions toward Plaintiff with respect to his power over her academic career, including her PhD candidacy exam, as described herein, and thus bear substantially on whether the alleged sexual touchings at issue actually occurred.

Jonathan Parry and Kristi Hoge were employees of OSU's HR Department who played leading roles in OSU's official investigation of Plaintiff's allegations against Rizzoni. Their testimony about their investigation, including about their contemporaneously recorded statements of witnesses

that are documented in official University records, are highly relevant to corroborate Plaintiff's account of events, and to impeach Defendant.

Meghan Lawther was OSU's "program manager for global engagement," who was identified by OSU pursuant to Fed. R. Civ. P. 30(b)(6) as authorized to testify about the University's policies relating to integration of international students into the University's community. Ms. Lawther, whose deposition transcript is attached hereto as **Exhibit 1**, specifically testified about the provision of OSU's policy against sexual misconduct specifically relating to international students that reads as follows:

> Many international students, faculty and staff come from cultures in which deference to any authority figure is important, and sexual harassment laws do not exist. Some individuals may be especially vulnerable to exploitive relationships given cultural language and immigration/Visa issues. Faculty, staff and students should be very careful to avoid relationships that may be exploitive in nature.

**Ex. 1**, Lawther Dep. p. 16–17, Ex. 1 (emphasis added). Lawther also explained that "in different cultures around the world, there is an expectation that the faculty member would be the all-knowing, where you wouldn't necessarily question their authority or their content area." *Id.* p. 20. Lawther emphasized the importance of explaining to international students that this "is not the case in the United States," and that, unlike in other cultures, disagreements with professors "should be spoken up regardless of whether you are a student or a faculty member." *Id.* The very existence of this official policy speaks to exactly the dynamic that Rizzoni allegedly sought to exploit by his illegal touching of Plaintiff, as does Lawther's testimony about why the University adopted this policy.

Similarly, subpoenaed witness Matt Page was designated by OSU to testify "about University policies and procedures regarding graduate education," "and specifically regarding obtaining a PhD within the mechanical and engineering department of OSU." ECF No. 86, p. 9. Page testified at his deposition about "the foundational requirements" for a student at the University to receive a PhD degree. *Id.* p. 12. Page's testimony about these requirements directly contradicts Rizzoni's stated

Page 8 of 11

reasons for failing Plaintiff on her PhD candidacy exam, and will be offered to impeach Rizzoni's testimony about same. *Id.* p. 15–37. Page's testimony also confirms the unusual nature of Rizzoni's decision to deny Plaintiff the opportunity for a second chance at the candidacy exam, and the important reasons why students are generally offered that second chance. *Id.* This testimony, as with Dr. Subramaniam's, will speak directly and profoundly to the illegitimate and retaliatory nature of Rizzoni's actions toward Plaintiff with respect to his power over her academic career, including her PhD candidacy exam, as described herein, and thus bear substantially on whether the alleged sexual touchings at issue actually occurred.

      Finally, Sheila Westendorf MD, Sarah Philip CPN, and Chiaothong Yong, PSYD are all licensed health care providers, employed by Ohio State University, who provided medical care to Plaintiff shortly after the alleged illegal touchings at issue. These professionals diagnosed Plaintiff with Post Traumatic Stress Disorder (PTSD), anxiety, depression, and their treatment notes reflect Plaintiffs' statements to them about the alleged inappropriate touchings at issue, as well as their findings that Plaintiff was suffering severe mental and emotional trauma, that was also impacting her physical health. For example, one note from Philip's treatment records, dated January 9, 2018, states that "it was extremely apparent that [Plaintiff] is not at a stable place both emotionally or physically," and that "it [became] evident that she is in need of constant psychological support." It is well established that "a description of an abusive encounter has consistently been determined to be within the scope of statements offered for medical treatment or diagnosis." *State v. Warman*, 12th Dist. Butler No. CA2016-02-029, 2017-Ohio-244, ¶ 72-73, citing *State v. Diaz*, 8th Dist. Cuyahoga, 2016-Ohio-5523, ¶ 33-34, 69 N.E.3d 1182. It is similarly well-established that "facts associated with the [alleged abuse] are relevant for medical diagnosis and treatment," and, accordingly, "a patient's statements concerning how the alleged rape occurred can be relevant to show the 'general cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." *Id.* In addition to proving her damages, Plaintiffs' contemporaneous statements reflected in these records further

bolster the credibility of her account against Defendant, and excluding this evidence from the jury's consideration in assessing Defendant's liability is prejudicial to Plaintiff.

*In conclusion*, the Court's order quashing the subpoenas puts Plaintiff in a position where they cannot call witnesses whose testimony is essential to prove Defendant's liability at trial, even if and when the foundation for relevance of this testimony is established. As things currently stand, Plaintiff is in a Catch-22 with no reasonable choice but to re-issue the subpoenas immediately if only to preserve the appellate record by keeping these witnesses on notice as to Plaintiff's need for their testimony. Otherwise, if the Court rules at trial, based on the evidence that comes in, that the testimony of these witnesses is relevant after all, Plaintiff will have no lawful means by which to compel their appearance. Thus, to mitigate these circumstances, and to "correct [the] clear error and prevent [the] manifest injustice" in preventing Plaintiffs the opportunity to subpoena witnesses based on a premature, pre-emptive, and unwarranted finding that the testimony of these witnesses could not possibly be relevant to establishing Defendant's liability, the Court should reconsider and vacate the order pursuant to Fed.R.Civ.P. 54(b). *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F.App'x 949, 959 (6th Cir.2004) (motions for reconsideration of interlocutory orders are properly considered "when there is ... a need to correct a clear error or prevent manifest injustice").

Respectfully submitted,

/s/ *Peter Pattakos*
Peter Pattakos (0082884)
Gregory Gipson (0089340)
THE PATTAKOS LAW FIRM LLC
101 Ghent Rd., Fairlawn, OH 44333
P: 330.836.8533/F: 330.836.8536
peter@pattakoslaw.com
ggipson@pattakoslaw.com

*Attorneys for Plaintiff Meng Huang*

**Certificate of Service**

The foregoing document was filed on April 24, 2023, using the Court's e-filing system, which will serve copies on all necessary parties.

/s/ Peter Pattakos
*Attorney for Plaintiff*
