# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| MENG HUANG, | Case No: 2:19-cv-1976 |
| Plaintiff, | |
| v. | Judge Sarah D. Morrison |
| THE OHIO STATE UNIVERSITY and GIORGIO RIZZONI, | Magistrate Judge: Chelsey M. Vascura |
| Defendants. | |

## **DEFENDANTS' BRIEF IN SUPPORT OF TRIFURCATION OF TRIAL**

Now come Defendants The Ohio State University and Dr. Giorgio Rizzoni, by and through counsel, and, pursuant to this Court's order of November 27, 2024 (ECF# 238), submit the following arguments in support of trifurcation of the trial in this case, with phase one being a determination of the threshold issue of whether Plaintiff may pursue employment claims against the university under Title VII, phase two being a determination of liability and compensatory damages for the claims against defendant(s) and phase three being a determination of a potential award of punitive damages.

## **Introduction**

This case involves multiple employment discrimination and Title IX claims brought by Plaintiff, a former student, against OSU and Dr. Giorgio Rizzoni, Plaintiff's former PhD advisor.  This matter was tried to conclusion to a jury in 2023, and the jury returned a verdict in favor of Defendants.  Plaintiff appealed to the Sixth Circuit the jury trial loss and the matter has been remanded for retrial on several claims.

1

As ordered by the Sixth Circuit on remand, the granting of summary judgment in favor of the university on Plaintiff's Title VII claims was reversed and the appellate court specifically described the trial procedure it requires to determine the threshold issue of whether Plaintiff may be considered an "employee" of the university, as opposed to being solely a student. As stated by the Sixth Circuit, the jury is to be presented with evidence related to Plaintiff's alleged "employee" status with the university. Then, "the jury should make factual findings regarding Dr. Rizzoni's disputed control over where and when Huang worked." (App. Op. ECF# 46-2, pg. 21). And, finally, "the district court should decide as a matter of law whether Huang was an OSU employee . . .," (Id.) which decision would form the basis for Plaintiff to proceed with employment-related claims under Title VII during the next phase of trial. Clearly contemplated in the appellate court's instructions is the notion that, if OSU is not found to be Plaintiff's employer on this threshold issue, the Title VII claims cannot proceed against the university and, in fact, the university would no longer be a defendant in the case.

In an attempt to circumvent the appellate court's instructions, however, Plaintiff now advocates for no bifurcation or trifurcation of trial. For the reasons set forth below, Defendants request this Court trifurcate the issues at trial and try the matter to the jury in three phases: 1.) the threshold issue of whether Plaintiff was an employee of the university, 2.) the determination of liability and compensatory damages on any remaining claims of Plaintiff and 3.) the determination of punitive damages, if any.

## Law

**A)** **As to FRCP 42 and bifurcation/trifurcation.** A district court may bifurcate/trifurcate a trial "in furtherance of convenience or to avoid prejudice or when

2

separate trials will be conducive to expedition and economy." *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 556 (6th Cir. 1996). Only one of these criteria need be met to justify bifurcation. *MCI Communications Corp., v. American Telephone & Telegraph Co.,* 708 F.2d 1081, 1177 (7th Cir. 1983). The first sentence of FRCP 42(b) reads in its entirety as follows: "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Bifurcation can be appropriate when, for example, litigation of one issue may eliminate the need for litigation of further issues or where one party will be prejudiced by the introduction of evidence against another party. *See, e.g., Vichare v. AMBAC Inc.,* 106 F.3d 457, 466 (2d Cir. 1996).

The ultimate decision to grant or deny bifurcation is left to the sound discretion of the trial court and a decision ordering bifurcation should be grounded in the facts and circumstances of each case. *Saxion v. Titan–C–Mfg, Inc.*, 86 F.3d 553, 556 (6th Cir. 1996). "In determining whether separate trials are appropriate, the court should consider several facts, including 'the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy.'" *Wilson v. Morgan,* 477 F.3d 326, 339 (6th Cir. 2007) (quoting *Martin v. Heideman,* 106 F.3d 1308, 1311 (6th Cir. 1997) ).

In addition to bifurcation of threshold issues regarding Plaintiff's status with the university, Plaintiff's Complaint contains a request for punitive damages. (Compl., Section VI (e)). "Punitive Damages are appropriate in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015)(*quoting Smith v. Wade,* 461 U.S. 30, 56 (1983)). Defendants proven to have

3

engaged in violence, the threat of violence, duplicity or trickery have committed especially "reprehensible" acts that make them apt targets for punitive damages. *See, BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 576 (1996). Case law from as recently as 2021 states that "[c]ourts often bifurcate the amount for punitive damages where the plaintiff seeks to introduce evidence of a defendant's financial condition to support a punitive damage award." *Gokor v. Schlievert,* 2021 WL 1061918, * 3 (N.D. Ohio March 19, 2021)(citing as an example *Hughs v. Goodrich Corp.*, 2010 WL 3746579, at *4, n. 5 (S.D. Ohio Sept. 27, 2010).

Because the purpose of punitive damages is partially to punish a wrongdoer, the personal wealth of a defendant becomes relevant to the question of how large a punitive damages award should be, but only after liability is first established. *Gillispie v. City of Miami Township*, 2022 WL 10188950, at *3 (S.D. Ohio May 2, 2022)("but if unrelated to [determining a level of punitive damages], such evidence would be irrelevant and should be excluded")(*citing Echavarria v. Roach*, 2022 WL 606076, at *2 (D. Mass. March 1, 2022)). There are, moreover, procedural and constitutional limitations on punitive damages, and excessive damages can violate the fourteenth amendment. *Gore*, 517 U.S. at 562.

## **Analysis and Argument**

Given the above law, this Court should trifurcate this matter into multiple stages, including the threshold issue of whether OSU is even a proper defendant, the issue of liability and compensatory damages and, last, punitive damages. Any evidence concerning the personal wealth, remuneration, asset base, or net worth of Dr. Rizzoni (collectively, "Wealth Evidence") can only be introduced into evidence, or attempted to be introduced, after the point in time in these proceedings in which his personal liability for punitive damages is already established.

4

First, cases discussing bifurcation and trifurcation hold that bifurcation can be appropriate when, for example, litigation of one issue may eliminate the need for litigation of further issues or where one party will be prejudiced by the introduction of evidence against another party. *See, e.g., Vichare v. AMBAC Inc.,* 106 F.3d 457, 466 (2d Cir. 1996). Here, the Sixth Circuit has already prescribed the method by which the trial court is to address the threshold issue of whether OSU is even a proper party defendant. In its opinion, the appellate court specifically directed that this threshold issue be decided by the jury weighing the facts and the trial court making a ruling about whether Plaintiff was an employee of OSU. If the court ultimately finds that Plaintiff was NOT an employee of OSU, there is no need to proceed with the presentation of evidence for Plaintiff's claims against OSU under Title VII. It would certainly be a waste of judicial resources to put in ALL evidence relating to OSU before it has been determined whether OSU is a proper defendant in the first place. It could also cause significant confusion for the jury to be asked to adjudicate the underlying claims against OSU before it has been determined as a matter of law whether OSU was Plaintiff's employer. For these reasons, the threshold issue of Plaintiff's employment status should be decided before presentation of evidence on the merits of Plaintiff's claims.

Second, all evidentiary or other judicial proceedings with respect to the quantification of punitive damages should be kept separate and bifurcated from proceedings establishing Dr. Rizzoni's threshold liability and quantifying compensatory damages, in part because punitive damages can only be responsibly awarded by taking into consideration what amount of compensatory damages have already been awarded. *See Gore*, 517 U.S. at 575. Federal Rule of Evidence 403 allows for evidence to be excluded if it would be unfairly prejudicial *even when it has some probative value.* Here, however, the above-defined "Wealth

5

Evidence" has no probative value whatsoever as to any of the above-described elements that Plaintiff must demonstrate to show that Dr. Rizzoni has threshold liability under Section 1983 for first amendment retaliation. And the Supreme Court has made clear that "the presentation of evidence of a defendant's financial worth creates the potential that juries will use their verdicts to express biases . . . ." *Honda Motor Co. v. Oberg*, 512 U.S. at 432 (discussing prejudice against big businesses and not wealthy individuals).

Wealth and wealth disparity are highly divisive political and social issues that have a good chance of enflaming personal prejudices and biases. Any evidence concerning Dr. Rizzoni's personal finances could cause an incorrect threshold finding of liability that is erroneous merely because jurors may passively or subconsciously decide — if the decision they face is a close one — that Dr. Rizzoni can afford to pay regardless of his legal and moral culpability. Or a juror might decide this is an opportunity to punish Dr. Rizzoni via a punitive damages award as a symbol of frustration against wealth disparity. There is simply no good reason to run this substantial risk of unfair prejudice when the Wealth Evidence in question is worthless to the questions before a jury on threshold liability.

As shown above, courts throughout this country routinely bifurcate trials to avoid the above risks and this Court should do so as well.

## **Conclusion**

Any trial on the merits of Plaintiff's claims or quantification of punitive damages should only occur after the threshold issue of OSU being subject to suit is established, if it ever is. This Court should enter an order that (1) trifurcates these proceedings as discussed in this Court's order of November 27, and (2) bars any admission or attempted admission of Wealth Evidence prior to a finding by a jury that Dr. Rizzoni is liable for punitive damages.

Respectfully submitted,

*/s/ Christina L. Corl*
Christina L. Corl (0067869)
**PLUNKETT COONEY**
716 Mt. Airyshire, Suite 150
Columbus, Ohio 43235
Tel: (614) 629-3018
Fax: (614) 629-3019
Email: CCorl@plunkettcooney.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the Clerk's Office using its electronic filing system on this **13th day December 2024**. A copy has been served by this office, on **December 13, 2024,** upon the following parties of record via electronic mail:

Bruce Fox
Andrew Horowitz
Bruce.Fox@Obermayer.com
Andrew.Horowitz@Obermayer.com
*Counsel for Plaintiff*

*/s/ Christina L. Corl*
**Christina L. Corl**

Open.25577.83339.30767075-1