IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MENG HUANG,<br><br>Plaintiff,<br><br>v.<br><br>THE OHIO STATE UNIVERSITY and GIORGIO RIZZONI,<br><br>Defendants. | Case No: 2:19-CV-1976<br><br>Hon. Chief Judge Sarah D. Morrison<br>Hon. Mag. Judge Chelsey M. Vascura<br><br>JURY TRIAL DEMANDED |

**BRIEF IN OPPOSITION TO PROPOSED TRIFURCATION**

The Court's consideration of further trifurcation in this case is based on the following passage of the Sixth Circuit's Opinion:

> At trial, the jury should make factual findings regarding Rizzoni's disputed control over where and when Huang worked. Once any genuine dispute is settled by the jury, the district court should decide as a matter of law whether Huang was an OSU employee, consistent with this opinion's reasoning.

(Dkt. 228, at p. 23). This does not prescribe trifurcation—rather the sequence described by the Sixth Circuit would be satisfied by asking the jury to render a verdict including interrogatories regarding Rizzoni's control over where and when Ms. Huang worked followed by the Court's consideration of a Rule 59(e) motion to alter or amend the judgment on whether Ms. Huang was an OSU employee.

This would be the most expeditious means to resolve any dispute over the legal effect of Rizzoni's control over where and when Ms. Huang worked, as it would not create a need for the jury to render successive verdicts or open a proverbial pandora's box similar to the one opened by Judge Graham in attempting to fashion a scheme to determine which evidence should be introduced in each phase of the case. As with the situation that was created during the first trial of

1

this case, the inquiry as to the extent to which Rizzoni controlled where and when Ms. Huang conducted her research will be inextricably intertwined with other issues in the case. The question is not as simple as determining whether there were any formal policies dictating where and when Ms. Huang worked; rather, Ms. Huang intends to prove that Rizzoni created an atmosphere of complete control of her on a *quid pro quo* basis through overt actions, such as requiring her to maintain close physical proximity to him whenever possible. The Sixth Circuit provided an extensive recitation of how Rizzoni systematically exercised this control:

> Recall that shortly after Huang matriculated to OSU, Rizzoni assigned Huang to work on the URP and for it to be her dissertation topic—as she and Rizzoni describe, this wasn't her choice, it was driven by CAR's needs. Then, Rizzoni largely controlled when and where she worked. Cf. id. at 356 (citation omitted) (emphasizing the importance of an "employer's ability to control job performance"). While Huang did not have a traditional nine-to-five schedule, she did have regular bi-weekly meetings with Ford, and frequent one-on-one meetings with Rizzoni. He dictated those meetings, including making her meet with him on weekends and chastising her if she did not meet him as often as he wanted. Based on Huang's testimony, a jury could also find that Rizzoni controlled her vacation schedule, even when her vacation coincided with university holidays. He admonished Huang when she left the country to visit her family during OSU's winter break without getting his permission (apparently forgetting that she had). According to Huang, he also dictated where they met—mainly at CAR, but also at his home, and sometimes they traveled to Dearborn for meetings. The degree of control he wielded over the location of her work is reflected in his infuriation for her intransigence when she did not participate in the meetings at CAR with him but did so virtually. He also offered (repeatedly) to drive Huang to the CAR facility to ensure that she did her work there. Because Rizzoni dictated Huang's research topic based on the university's needs and set the times and location of her work, a jury could conclude that Rizzoni exercised the type of control over Huang that made her an OSU employee.

(Dkt. 228, at p. 22).

To the extent that trifurcation is used to suppress or limit Ms. Huang's presentation of evidence of such conduct by Rizzoni to the jury, she will be deprived of her "legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action." *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 217 (6th Cir. 1982). Federal courts have long-held that evidence

of discrimination must be considered in light of the totality of the circumstances, and not examined in isolation. *Bray v. Marriott Hotels*, 110 F.3d 986 (3d Cir. 1997), citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990) (noting that "a play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario").

It must also be noted that there is relatively little chance that the presentation at trial of evidence about Rizzoni's control over where and when Ms. Huang worked would result in a ruling that Ms. Huang was not an employee as a matter of law. The Sixth Circuit conducted this analysis under the thirteen nonexclusive factors set forth in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323-324 (1992), with no one factor being dispositive. *Marie v. Am. Red Cross*, 771 F.3d 344, 352-354 (6th Cir. 2014). The Sixth Circuit proceeded under the *Darden* analysis to find that the most relevant factors to this case are: 1) the nature of Ms. Huang's work; 2) the degree of control that OSU exerted over her endeavors; and 3) her compensation. (Dkt. 228, at p. 21). The Sixth Circuit then ruled as a matter of law on the first and third factors—holding that Ms. Huang's research was in the nature of employment and that she was compensated as an employee. (Dkt. 228, at p. 21-23).

The only remaining factor in dispute is the extent to which OSU (and Rizzoni) controlled Ms. Huang's research, particularly regarding where and when she performed her work.  The Sixth Circuit explained that the extent of control is "not dispositive" as to whether she was an employee, but "can be an important factor indicating an agency relationship." (Dkt. 228, at p. 21) (quoting *Marie*, 771 F.3d at 356). Therefore, the Court may find that Ms. Huang is an employee under Title VII even if the jury were to find that Rizzoni exercised little control over when and where she conducted her research.

3

While the Sixth Circuit found that there remained a genuine dispute of fact on this one remaining issue, it is difficult to see how Rizzoni's bald denials that he exercised control over Ms. Huang's time and place of work could lead to the Court to grant judgment to OSU as a matter of law. It is therefore most expedient to allow the parties to try this case in front of the jury as a unified whole (with bifurcation only as to evidence of the net worth of Defendants for purposes of punitive damages), rather than in a disjointed fashion in the form of trifurcation.

Respectfully Submitted,

Dated: December 13, 2024

*/s/Andrew J. Horowitz, Esq.*
Bruce C. Fox, Esq. (*pro hac vice*)
Andrew J. Horowitz, Esq. (OH ID No. 0101753)
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
Phone: (412) 566-1500
Fax: (412) 281-1530
bruce.fox@obermayer.com
andrew.horowitz@obermayer.com

*Counsel for Plaintiff Meng Huang*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that all counsel of record are served with a true and correct copy of this document via the Court's CM/ECF system, pursuant to the Federal Rules of Civil Procedure.

*/s/ Andrew J. Horowitz, Esq.*
