UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MENG HUANG,

   Plaintiff,     :

              Case No. 2:19-cv-1976
  v.         Chief Judge Sarah D. Morrison
              Magistrate Judge Chelsey M.
THE OHIO STATE       Vascura
UNIVERSITY, *et al.*,
            :
   Defendants.

## OPINION AND ORDER

 Meng Huang filed this action against The Ohio State University and her

former Ph.D. advisor, Giorgio Rizzoni, alleging (among other things) sexual

harassment and retaliation in violation of Title VII of the Civil Rights Act and 42

U.S.C. § 1983. (Compl., ECF No. 1.) This matter is before the Court on the issue of

procedure for the new trial, and Dr. Huang's motion related to her expert witnesses.

(ECF Nos. 238–241.)

## I. FACTUAL ALLEGATIONS

 The events giving rise to this case began over a decade ago. In March 2014,

Dr. Rizzoni recruited Dr. Huang, a Chinese citizen, to enroll in OSU's College of

Engineering and work under him in the Center for Automotive Research ("CAR")

program, tailoring her Ph.D. research to support CAR and projects funded by the

Ford Motor Company. (*Id.*, at ¶¶ 1–10.) According to Dr. Huang, Dr. Rizzoni

subjected her to sexual harassment "that escalated during the three years that she

reported to him." (*Id.*, at ¶ 2.) In December 2017, Dr. Huang reported Dr. Rizzoni's alleged sexual harassment to OSU after he allegedly sabotaged her Ph.D. candidacy exam. (*Id.*, at ¶¶ 5–6.) In her view, OSU "facilitated and condoned Dr. Rizzoni's misconduct," and retained him as a tenured professor and Director of the CAR program despite her allegations. (*Id.*, at ¶¶ 7–8.)

## II.  PROCEDURAL HISTORY

In August 2018, Dr. Huang filed this suit against OSU and Dr. Rizzoni in the Eastern District Court of Michigan, alleging violations of federal and state laws. The case was transferred to this Court eight months later. This Court's February 2020 Opinion and Order granted in part Defendants' motion to dismiss, leaving Dr. Huang's claims for Title VII harassment and retaliation and Title IX retaliation against OSU, and under § 1983 against Dr. Rizzoni.

From August 2014 to 2017, Dr. Huang held a Graduate Research Fellow position that reported to Dr. Rizzoni. The parties disputed whether she was an OSU employee during that time.[1] Following discovery and extensive briefing, the Court concluded that Dr. Huang was not an employee during that time so it granted summary judgment to OSU on Dr. Huang's Title VII claim. The Court also granted summary judgment to OSU on Dr. Huang's Title IX claim.

Dr. Huang's § 1983 claim went to trial in May 2023. (*Id.*) The Court

---

[1], Dr. Huang had a Graduate Research Associate position from August 2017 to December 2017. (ECF No. 143, PAGEID # 6670.) The parties agree that she was an OSU employee in that role. (*Id.*)

trifurcated that trial into three phases: 1) liability; 2) compensatory damages; and 3) punitive damages. At the end of phase one, the jury rendered a verdict in favor of Dr. Rizzoni. (ECF No. 206.)

On appeal, the Sixth Circuit found that the Court should not have granted summary judgment to OSU on Dr. Huang's Title VII claims because there were genuine issues of material fact regarding her employment status as a Graduate Research Fellow. The Sixth Circuit also held that the 2023 trial's trifurcation and certain evidentiary rulings prejudiced Dr. Huang, so it vacated the verdict. The Court's grant of summary judgment to OSU on the Title IX claim was not challenged on appeal.

As a result, after remand, the remaining issues are: 1) whether Dr. Huang was an OSU employee as a Graduate Research Fellow; 2) if she was an employee, whether OSU is liable to her under Title VII for quid pro quo sexual harassment and/or retaliation (Counts III and V); and 3) whether Dr. Rizzoni is liable to her under § 1983 (Count VIII). (*Id.*)

## III.    TRIAL PROCEDURE

### A.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). "[T]he decision whether to try issues separately is

3

within the sound discretion of the court." *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 747 (6th Cir. 1996).

Even so, trifurcation of trial is not the norm. *Gillispie v. City of Miami Twp.*, No. 3:13-CV-416, 2022 WL 16541259, at *2 (S.D. Ohio Oct. 28, 2022) (Sargus, J.) "The piecemeal trial of separate issues in a single suit is not to be the usual course" and "should be resorted to only in the exercise of informed discretion when the court believes that separation will achieve the purposes of the rule." *In re Bendectin Litigation*, 857 F.2d 290, 307 (6th Cir. 1988) (citation omitted).

In deciding whether to trifurcate, a court considers whether one trial or separate trials further convenience, avoid prejudice, or are conducive to judicial expediency and economy. *Gillispie v. City of Miami Twp.*, 2022 WL 16541259, at *2. But only one of the three criteria set forth in Rule 42(b) must be met to justify separation of issues at trial. *Id*. A separate trial on an individual issue may be appropriate when a finding results in disposition of the litigation, but the paramount consideration is a trial that is fair and impartial to the parties. *In re Bendectin Litigation*, 857 F.2d at 307–08. "The relevant standard in that regard is whether an issue 'is so distinct and separable from the others that a trial of it alone may be had without injustice.'" *Williams v. City of Columbus*, No. 2:10-CV-1155, 2012 U.S. Dist. LEXIS 197648, at *3 (S.D. Ohio Oct. 30, 2012) (Marbley, J.) (citing *Id*.)

4

## B.    ANALYSIS

Following remand, the Court questioned how the next trial should proceed and ordered the parties to brief the issue, considering whether trifurcation is appropriate. (ECF No. 238.) In response, Defendants argue that the trial should be trifurcated into three phases: 1) whether Dr. Huang was an employee; 2) liability and compensatory damages for the remaining claims; and 3) punitive damages. (ECF No. 239.) Dr. Huang proposes two phases, combining Defendants' phases one and two and reserving evidence of Dr. Rizzoni's wealth for punitive damages after a finding of liability. (ECF No. 240, PAGEID # 8585.) After consideration of the parties' arguments, the Court determines that the trial will be bifurcated.

### 1.    Phase One – Dr. Huang's employment status, liability, and compensatory damages.

Defendants raise four reasons why the issue of whether Dr. Huang was an employee should be separated from the issues of liability and compensatory damages: 1) the Sixth Circuit contemplated a separate trial on the employment issue; 2) the employment issue could dispose of all the claims against OSU; 3) the potential waste of judicial resources; and 4) the risk of juror confusion.

#### a)    The Sixth Circuit's Opinion does not require trifurcation.

The Sixth Circuit's Opinion states:

Considering the totality of these circumstances, Huang has amply met her burden to create a genuine dispute of material fact as to whether she was an OSU "employee" under Title VII when she suffered Rizzoni's purported harassment, from August 2014 to December 2017. At trial, the jury should

5

make factual findings regarding Rizzoni's disputed control over where and when Huang worked. Once any genuine dispute is settled by the jury, the district court should decide as a matter of law whether Huang was an OSU employee, consistent with this opinion's reasoning.

Sixth Circuit's Opinion, PAGEID # 8479.

Consistent with the Sixth Circuit's instructions, at the end of phase one of trial, the Court will allow the parties an opportunity to make brief closing arguments on the topic of Dr. Rizzoni's control over where and when Dr. Huang worked before instructing the jury to complete a special verdict form on those issues. After the jury returns its special verdict, the Court will rule as a matter of law on whether Dr. Huang was an OSU employee. The parties will then make their closing arguments on liability and damages, before the Court instructs the jury and sends it back for a second deliberation on the § 1983 claim and, if Dr. Huang is determined to be an employee, on the Title VII claims. Finally, if necessary, the trial will address punitive damages.

Trifurcation of the evidence poses risks of prejudice and inefficiency. Separate trials on Dr. Rizzoni's control and on liability would unnecessarily frustrate Dr. Huang's ability to put before the jury the full atmosphere of her time at OSU. The Court would be troubled, again, by having to draw narrow lines on evidence relevant to "control" and the intertwined nature of Dr. Rizzoni's alleged harassment and retaliation. Separate phases also risk having to re-call witnesses and duplicating evidence, prolonging trial.

6

**b)** **Deciding the employment issue first will not dispose of the litigation.**

Defendants argue that deciding Dr. Huang's employee status first could dispose of the remaining claims against OSU. A finding that Dr. Rizzoni did not control where and when Dr. Huang worked is not guaranteed. *Gillispie*, 2022 U.S. Dist. LEXIS 197246, at *12 (denying bifurcation despite the liability issue having the potential to dispose of the action). But, even if it is determined that Dr. Huang was not OSU's employee, the trial must still proceed to liability on her § 1983 claim. Because a separate trial on the employment issue would not dispose of the litigation, trifurcation is not appropriate.

**c)** **Holding one trial will not waste judicial resources.**

Defendants argue that it would waste judicial resources to put in all the evidence of OSU before it has been determined that OSU is a proper defendant. But Dr. Rizzoni's control over Dr. Huang's work is not sufficiently "distinct and separable" from her § 1983 claim to justify trifurcation. *See Williams,* 2012 U.S. Dist. LEXIS 197648, at *3–4 ("[T]he question of joint-employer status is hardly "distinct and separable" from that of whether wrongful conduct took place — let alone whether the City itself engaged in unlawful behavior.") The evidence for Defendants' proposed phase one overlaps with phase two. Indeed, any factual inquiries of Dr. Rizzoni's control over where and when Dr. Huang worked must consider the entire atmosphere of Dr. Huang's work. Evidence of his control is also relevant to whether he subjected her to quid pro quo harassment and whether his

conduct violated § 1983. Given the overlapping evidence, Defendants' proposed phases would result in the same evidence and the same witnesses being presented twice. *Lokai v. Mac Tools Inc.*, No. 2:05-CV-925, 2007 WL 1666025, at *7 (S.D. Ohio June 5, 2007) (Watson, J.) (denying motion to bifurcate where "some witnesses may have to testify at both trials"); *Britt v. Miss. Farm Bureau Cas. Ins. Co.,* No. 1:17-CV-219, 2024 WL 2928638, at *1 (N.D. Miss. May 20, 2024) (denying bifurcation because of the overlapping witnesses on the employment status issue and liability). Trifurcation does not further judicial economy or convenience.

### d) Jury instructions can address the risk of prejudice.

In Defendants' view, a single trial may cause the jury confusion in determining OSU's liability before it has been determined whether OSU was Dr. Huang's employer. Limiting instructions and special verdict forms can address Defendants' concerns. *See e.g., Knight v. State Univ. of N.Y. At Stony Brook*, 880 F.3d 636, 640–641 (2d Cir. 2018) (finding no error when the jury verdict form included liability and a series of questions on whether the plaintiff was an employee); *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987) (stating that it is "almost [an] invariable assumption of law that jurors follow their instructions"); *Lokai*, 2007 WL 1666025, at *6 (anticipated jury instructions address defendant's concerns of jury confusion and prejudice).

### 2. Phase Two – Punitive damages.

The parties agree to separation of the issue of punitive damages and evidence of Dr. Rizzoni's wealth from the liability stage of trial.

8

## IV.    REQUEST FOR LEAVE TO FILE SUR-REPLY

Dr. Huang seeks leave to submit a sur-reply to Defendants' reply in support of their Motion in Limine to Exclude expert witness, Laureen Rikleen. (ECF No. 241.) But the Court denied Defendants' Motion before the 2023 trial and there is currently no pending motion. (ECF Nos. 104, 113, 156.) Dr. Huang's request is **DENIED**.

## V.    MOTION FOR LEAVE TO SUPPLEMENT EXPERT DISCLOSURES

Before the 2023 trial, the Court granted Dr. Rizzoni's Motion to Exclude Dr. Huang's damages expert witness and treating physician, Dr. Roy Lubit, explaining that Dr. Huang missed the deadline to disclose Dr. Lubit and her mistake was neither justified nor harmless pursuant to Federal Rule 37. (ECF No. 176.) On remand, Dr. Huang moves to supplement expert disclosures on Dr. Lubit. (ECF No. 241.)

The Court will not revisit its prior ruling on Dr. Huang's Motion to Supplement Expert Disclosures that came on the eve of the 2023 trial. Rather, the Court interprets Dr. Huang's current Motion to seek to provide updated information regarding her mental health treatment in the two years since the previous trial.

When a party fails to comply with Rule 26(a)'s expert disclosure requirements, Rule 37(c) precludes the noncompliant party from using the "information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P.

37(c)(1). Courts consider the *Howe* factors to determine whether a party's

noncompliant disclosure was harmless or substantially justified:

> (1) Surprise to the party against whom the evidence would be offered; (2) Ability of that party to cure the surprise; (3) Extent to which allowing the evidence would disrupt the trial; (4) Importance of the evidence; and (5) Non-disclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

First, there is no surprise to Defendants because they reasonably should have

known that Dr. Huang continued to treat with a physician for the last two years,

whether it was with Dr. Lubit or someone else. Second, any surprise can be cured by

conducting limited discovery. Third, the trial is almost five months away, so

Defendants have time to conduct that limited discovery and prepare for trial.

Fourth, Dr. Lubit's testimony is important to Dr. Huang's case. Indeed, Dr. Huang

intends to rely on Dr. Lubit's testimony regarding her post-traumatic stress

disorder and emotional distress damages to date. And fifth, because her treatment

has continued since the 2023 trial, Dr. Huang could not have disclosed information

related to Dr. Lubit's treatment since May 2023.

Accordingly, Dr. Huang's Motion to Supplement Expert Disclosures for Dr.

Lubit is **GRANTED in part,** limited to Dr. Huang's treatment since May 2023.

## VI. CONCLUSION

For the reasons above, the trial will be bifurcated.

Dr. Huang's request for leave to file her sur-reply (ECF No. 241) is **DENIED**

and her Motion to Supplement Expert Disclosures (ECF No. 241) is **GRANTED in**

**part**. The parties are **ORDERED** to complete the limited discovery on Dr. Lubit's treatment of Dr. Huang from May 2023 to present by June 13, 2025.

       **IT IS SO ORDERED.**

/s/ Sarah D. Morrison          
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
