# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| MENG HUANG,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE OHIO STATE UNIVERSITY and GIORGIO RIZZONI,<br><br>　　　　Defendants. | Case No: 2:19-cv-1976<br><br>Chief Judge Sarah D. Morrison<br><br>Magistrate Judge: Chelsey M. Vascura |

### DEFENDANTS' MOTION IN LIMINE NO. 1:  TO PRECLUDE TESTIMONY OF PLAINTIFF'S EXPERT LAUREN RIKLEEN

Defendants hereby move to exclude the report and testimony of Plaintiff's proposed expert, Lauren Rikleen, because: (1) Ms. Rikleen is not qualified to give the opinions she purports to provide; (2) Ms. Rikleen's opinions would not aid the jury in any way.

### I.  Introduction.

This is a sexual harassment/retaliation claim in which Plaintiff alleges she was subjected to mistreatment by defendant Giorgio Rizzoni and subjected to gender discrimination/retaliation by Defendant OSU. Plaintiff's proposed expert, Lauren Rikleen, purports to criticize OSU's investigation of the alleged sexual harassment, opines about the "prevalence" of sexual misconduct in higher education and also seeks testify regarding the unequal "power dynamic" between Plaintiff and Dr. Rizzoni.  But Ms. Rikleen is woefully unqualified to provide opinion testimony on any of these topics, as many admissions in her deposition make clear.  In addition, her criticisms of OSU's investigation and her testimony regarding the existence of a power dynamic would not aid the jury, as they are not based in

60894923.1

anything other than observations that the jury itself would be free to make without the opinion of expert testimony.

## II. Relevant facts.

### A. Ms. Rikleen's opinions and background as reflected in her report and deposition.

Plaintiff retained Ms. Rikleen to testify as an expert and she prepared a 31-page report. (Report, **Exhibit A**). In the introduction section, Ms. Rikleen states, "I was asked to analyze the response of The Ohio State University ("OSU") to Ms. Huang's allegations of sexual harassment, Ms. Huang's silence over the years of the sexual harassment, the impact of the power differential that resulted in the retaliation, and the treatment she received once she reported the behavior." (**Exhibit A**, p. 1). Her opinion as set forth in her report focuses on the merits of OSU's investigation. Specifically, the report expresses her opinions that:

> The University's investigation into Ms. Huang's claims discounted or entirely ignored information provide by Ms. Huang and diminished her experiences by only partially addressing claims that they did address; and

> The investigators ignored the considerable available information demonstrating that sexual harassment involves a power dynamic that is perpetuated when those in positions of power and privilege are protected by deeply entrenched institutional dynamics that fail to hold perpetrators accountable, and leave victims too fearful of retribution to report the misconduct—research that is directly applicable to how Ms. Huang described her own experiences. (**Exhibit A**, p. 31).

As detailed in the Qualifications section of her report, Ms. Rikleen's background is not what one would expect for an expert in this area. She is a career lawyer, licensed in Massachusetts. While her report does not reveal the nature of her practice, she admitted in her deposition, discussed in detail below, that her specialty, for 30 years, was environmental

2

law. Even according to her report, it was only in the last ten years or so that she transitioned from practicing attorney to opining about how women are treated in the workplace. (**Exhibit A**, pp. 2-4).

Ms. Rikleen was deposed on March 12, 2021. (Excerpts of Rikleen Dep. Transcript filed as **Exhibit B**). She admitted she has never worked as a testifying expert and has never been deposed. (**Exhibit B,** p. 6). As noted, she was an environmental attorney for 30 years. (*Id.*, pp. 11-12). In fact, she has never handled any sex harassment cases. (*Id.*, p. 12). From that background, Ms. Rikleen decided to write a book on impediments to women succeeding in business. (*Id.*, p. 14).

More to the point relative to her proffered opinion, Ms. Rikleen admitted that she has no training on how to investigate a sexual harassment claim either on a college campus or even in a workplace generally. (*Id.,* p. 17). She has never acted as an investigator of a sexual harassment claim. (*Id.*). She has no training on how to assess the credibility of witnesses being interviewed in connection with a sexual harassment claim. (*Id.*, p. 18). She has no training on how to adjudicate a sexual harassment claim. (*Id.*). Ms. Rikleen has never been asked to provide expert testimony in a higher education case. (*Id.*, p. 91). Ms. Rikleen has no training or experience related her claim of the "prevalence" of sexual misconduct in higher education, other than "read[ing] voraciously on this topic." (*Id.,* pg. 79). Ms. Rikleen has never participated in the adjudication of a claim of sexual misconduct. (*Id.*, p. 19). She has never drafted an investigative report on a sexual harassment case or investigation. (*Id.*, p. 21). Nor has she ever drafted a report following an investigation *of any kind.* (*Id.,* p. 22).

Asked what the United States Supreme Court's definition of sexual harassment under

Title VII is, Ms. Rikleen could not say. (*Id.*, pp. 23-24). She has never drafted any policies or procedures on how a sexual harassment or misconduct claim should be investigated. (*Id.*, p. 24). Ms. Rikleen did not even review OSU's sexual harassment policies or procedures. (*Id.*, pp. 24-25). Thus, she has no opinion on the sufficiency of OSU's policies or procedures. (*Id)*. In fact, she has never spoken with any one at OSU. (*Id.*, p. 93). She has also has no conclusions or opinions on whether Plaintiff's allegations are true. (*Id.*, pp. 93-94). Ironically, given her background as a lawyer (or perhaps not, given her lack of experience), Ms. Rikleen conceded that her expertise is not focused on the law, i.e., on what OSU was required to do in connection with its investigation. Instead, she focused on what she thinks OSU should have done, *regardless of what the law says*. Thus, she testified:

> I don't purport to be providing legal advice to employers about what to do when a claim is made. That is not my expertise. My expertise is on what they should do. What -- how do you create a -- how do you go even beyond what the law requires to ensure you have a workplace where people feel safe and where they feel respected. My job is not – my -- my role is not to give legal advice. I absolutely do not give legal advice in any way on this topic. (*Id.,* pp. 32-33).

Ms. Rikleen's opinions are focused mainly on why she believes Plaintiff stayed silent prior to her filing her sexual misconduct complaint against Dr. Rizzoni and whether OSU's investigation was adequate. (*Id.*, pp. 38-39). As her deposition testimony makes clear, she focused primarily on the reasons why Plaintiff remained silent, rather than to alert OSU about the alleged harassment. (*Id.*, pp. 38-49). She focused on the "power differentials" that impact why victims remain silent, and talked about how if a victim does not know about the support mechanisms they will stay silent. (*Id.*). But she admitted that she has no specialized training or experience regarding "power differentials" but, instead, she claims to be an

4

"expert" in this area because she has "read studies" about it. (*Id.,* pg. 44). Ms. Rikleen, however, could not cite to a single study or any research on which she relied on for her opinions. (*Id.*). Further, she admitted that she did not know what OSU had by way of support because she never read OSU's policies and procedures. (*Id.*, pp. 45-49). For example, Ms. Rikleen testified as follows:

> Q. You're answering what she did, right? She decided not to report for whatever reason, and you can opine about that later. That's not my question. My question is: Do you have some reason to believe she didn't know she could report?
>
> A. I have no opinion about that one way or the other. (*Id.,* p. 51).

Ms. Rikleen assumed that OSU did not consider such things as power differentials—because that was not specifically mentioned in OSU's investigation report. But she again conceded that she has no expertise or opinion on what should be in a report—because, again, she has no experience preparing a report or conducting an investigation. (*Id.*, pp. 71-73).

### III. Argument.

#### A. Applicable standard.

The requirements for submission of expert testimony are set forth in Fed. R. Evid. 702, and are well established and well known. A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 confers upon trial judges the role of "gatekeeper" when considering the use of expert testimony. *Delay v. Rosenthal Collins Group, LLC,* No. 2:07-cv-568, 2012 WL 5878873, at *2-3 (S.D. Ohio, November 21, 2012), citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). A trial court's gatekeeping role requires the court to assess whether the expert is qualified and whether the proffered testimony is both relevant and reliable. *Tharo Systems, Inc. v. Cab Produkttechnik GMBH & Co. KG,* 196 Fed. Appx. 366, 374 (6th Cir. 2006). The Court's gatekeeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on other specialized knowledge. *Id.,* citing *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999); and *First Tennessee Bank National Association v. Barreto,* 268 F.3d 319, 334-35 (6th Cir. 2001).

**B.    Rikleen is not qualified to give opinions she purports to provide in this case.**

Rikleen's opinions are aimed at the adequacy of OSU's investigation including the effect of the alleged "power dynamic" between Plaintiff and Dr. Rizzoni on the investigation and Rikleen's opinions on the "credibility" of Plaintiff's explanation as to why she did not report Dr. Rizzoni's alleged misconduct to the university. By her own repeated admissions, Rikleen is woefully unqualified to provide expert testimony on these topics. A former environmental attorney, Rikleen has no expertise whatsoever with regard to the adequacy of a sexual harassment investigation. She has never conducted one. She has no training on how to conduct one. She has no training or expertise on how to assess credibility of witnesses, how to adjudicate sex harassment claims, or even how to prepare an investigative report. Nor does she have any specialized experience, education or training which would qualify her to opine about the "prevalence of sexual misconduct in higher education," or the

6

effect of any "power imbalance" on sexual misconduct reporting. Her only "experience" in these matters, by her own admission, is that she has read various studies on these topics.

While Rikleen's utter lack of qualifications in this area makes her unfitness obvious, cases involving similar or analogous circumstances are instructive nonetheless. See, *Doe v. Colgate University,* 2017 WL 4990629, *10 (N.D.N.Y. 2017)(expert testimony prohibited because scholarly reading is not a substitute for formal experience and training); *Rogers v. City of Chicago,* 2001 WL 1665157, *5 (N.D. Ill. 2001)(expert excluded because "reviewing reports" not the same as experience and training); G*ell v. Town of Aulander,* 2008 WL 5545036, *4 (E.D.N.C. 2008)(same); P*arton v. United Parcel Serv.,* 2005 WL 5974445, *4 (N.D. Ga., August 2, 2005).

    **C.**    **Rikleen's testimony would not aid the jury.**

Even if Rikleen had some relevant qualifications, though, her report and testimony should be stricken for an independent reason –it simply would not aid the jury in evaluating this case. Plaintiff contends and Rikleen opines that a critical issue in this case is why Plaintiff did not speak up during the sexual harassment and assault and the impact of that silence on her credibility. If it is Plaintiff's position that the reason why she did not complain has some relevance to her claims against OSU, that is incorrect. *Why* Plaintiff did not speak up during the sexual harassment and assault is completely irrelevant to OSU's liability. OSU's liability, other than under a theory of respondeat superior liability (on which Rikleen's purported testimony is completely irrelevant) is based entirely on what OSU did or did not do once Plaintiff advised OSU of the harassment. The reason why Plaintiff did not advise OSU earlier is neither here nor there, especially because Plaintiff's own testimony does not blame

7

anything OSU did or did not do for her failure to report. Even if Plaintiff attempted to blame her failure to report on OSU, the University's immediate response ensuring that Plaintiff never again interacted with Dr. Rizzoni, her alleged harasser, demonstrates that Plaintiff's reticence to report was unreasonable.

If the argument for the relevance of Rikleen's opinion as to why Plaintiff remained silent is that it bears on Plaintiff's *credibility*, that is not a proper subject for expert testimony. It is well settled that "expert witnesses 'may not testify about the credibility of other witnesses' because '[i]t is the province of the jury to assess the credibility of witnesses.'" *Babb v. Maryville Anesthesiologists PC*, 942 F.3d 308, 316 (6th Cir. 2019), citing *Smith v. Jones*, 721 F. App'x 419, 423 (6th Cir. 2018); *Esch v. County of Kent*, 699 F. App'x 509, 517 (6th Cir. 2017); *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999).

From her report and deposition testimony, it is clear that Rikleen's opinion brings no expertise to bear on the issue of the adequacy of OSU's investigation that the jury could not discern on its own. In her own words in her report, Rikleen's two opinions are:

> The University's investigation into Ms. Huang's claims discounted or entirely ignored information provide by Ms. Huang and diminished her experiences by only partially addressing claims that they did address; and
>
> The investigators ignored the considerable available information demonstrating that sexual harassment involves a power dynamic that is perpetuated when those in positions of power and privilege are protected by deeply entrenched institutional dynamics that fail to hold perpetrators accountable, and leave victims too fearful of retribution to report the misconduct—research that is directly applicable to how Ms. Huang described her own experiences.

(**Exhibit A**, p. 31).

Nothing in these opinions requires any expertise, and nothing about them falls

8

60894923.1

outside the bounds of what a lay juror could understand and deduce on his or her own.  The first opinion, that OSU's investigation discounted or ignored information, and "diminished [Plaintiff's] experience by only partially addressing claims" is nothing but a criticism of the investigation as inadequate, and involves no expertise whatever.

The second opinion, despite its inclusion of more high-sounding terms like "power dynamic" and "institutional dynamics," is just another way of saying the same thing.  The opinion is that "investigators ignored . . . information", which is merely decorated with a simple observation about human nature—that "victims" of misconduct may be deterred from complaining when a bad actor is in a position of power.  With due respect to Ms. Rikleen's "expertise," such "power dynamics" are not exactly quantum physics (which likely explains why she has never testified as an expert in this area).  There is simply no role for "expertise" to play in the context of trying to convince a jury that OSU's investigation was inadequate. And there is nothing whatsoever in Rikleen's opinion that would fall outside a lay juror's ability to grasp.

### IV. Conclusion.

For the reasons set forth herein, Defendants request that this Court enter an order precluding the admission of Rikleen's expert report and testimony.  Defendants further request any and all other relief to which they are entitled.

                                                Respectfully submitted,

                                                /s/ Christina L. Corl
                                                Christina L. Corl (0067869)
                                                Plunkett Cooney
                                                300 East Broad St., Suite 590
                                                Columbus, OH 43215
                                                Tel: (614) 629-3018

                                              Fax: (614) 629-3019
                                              Email: CCorl@plunkettcooney.com
                                              *Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 15 day of July, 2025 I filed the foregoing with the Clerk of Court which will send notification of such service and subsequent filing to all counsel via the Court's Electronic Filing System.

                                              /s/ Christina L. Corl
                                            Christina L. Corl  (0067869)

Open.25577.83339.26331069-1

60894923.1