IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MENG HUANG, | Case No: 2:19-CV-1976 |
| Plaintiff, | Hon. Chief Judge Sarah D. Morrison |
| | Hon. Mag. Judge Chelsey M. Vascura |
| v. | |
| | JURY TRIAL DEMANDED |
| THE OHIO STATE UNIVERSITY and GIORGIO RIZZONI, | |
| Defendants. | |

**BRIEF IN OPPOSITION TO FIRST MOTION IN LIMINE**

Contrary to Defendants' Motion in Limine No, 1, Expert Lauren Rikleen's testimony is admissible because: (1) Rikleen is qualified to give the opinions she will testify to; and (2) her opinions will aid the jury in understanding power dynamics, victim silence, and how these how victims of sexual harassment and assault react to their victimization.

Rikleen is an accomplished author, scholar, speaker, and consultant in the areas of power dynamics, workplace dynamics, and victim silence. Her experience qualifies her to opine on and analyze Ms. Huang's silence through years of sexual harassment and the impact of the power differential that results in retaliation. *See* Rikleen Expert Report, pp. 1 (ECF 249-1). Rikleen's opinions will assist the jury to understand these topics. Therefore, Ms. Huang respectfully requests this Honorable Court deny the Defendant's Motion in Limine No. 1.

### I. RELEVANT FACTS

#### a. Ms. Huang's claims and the Defendant's defenses.

In this action, Plaintiff Meng Huang brings claims against OSU for sexual harassment and retaliation under Title VII and against Giorgio Rizzoni under 42 U.S.C. § 1983. The testimony will show that Rizzoni sexually harassed and assaulted Ms. Huang for three years.

Defendants are expected to claim that Ms. Huang invented factual scenarios to support her claims and to argue that her not telling other persons or making a report during the duration of the harassment until she failed her candidacy exam fatally undermines her credibility. Indeed, this will likely be the focus of their defense at trial. This strategy and misguided attempt to destroy Ms. Huang's credibility makes Rikleen's testimony necessary to help the jury understand why victims like Ms. Huang stay silent and how institutions create and foster a culture of victim silence.

#### b. Contents of Rikleen's expert report.

The Defendants' attempt to frame Rikleen's expert opinion as a critique of OSU's investigation into Ms. Huang's complaint. Rather, the report analyzes power dynamics and victim silence. *See* Expert Report of Lauren Stiller Rikleen (ECF 249-1). She opines that Ms. Huang stayed silent because she was aware of the significant power differential that existed between her and Defendant Rizzoni and her fears were confirmed by Defendant Rizzoni's response to her increased resistance, culminating in Defendant Rizzoni's failing of her candidacy exam. *See* Rikleen Expert Report, pp. 1 (ECF 249-1).

Rikleen then describes her qualifications, the summary of her findings, the research presented by the OSU Task Force on Sexual Abuse, power dynamics, the prevalence of sexual harassment in higher education, the impacts on students from harassment and institutional betrayal, the interplay with minority women, and her conclusions. *See* Expert Report of Lauren Stiller

Rikleen (ECF 249-1). Rikleen explains the role of power dynamics in why victims, like Ms. Huang, do not make complaints about sexual harassment and how institutional responses and investigation of complaints of sexual harassment foster victim silence. This opinion is critical to rebutting the Defendants' defenses that Ms. Huang should not be believed because she did not complain until after she failed her candidacy exam. Defendants claim this is testimony on Ms. Huang's credibility, but this misunderstands the testimony and the use of testimony of this sort by a wide variety of courts: it serves to help the jury understand how to determine credibility, not to undermine or supplant the jury's credibility determination.

## II. STANDARD OF REVIEW

District courts have authority to adjudicate motions in limine pursuant to their inherent authority to manage the course of trials. *Luce v. U.S.*, 469 U.S. 38, 41 n. 4 (1984). Courts should exclude evidence in limine "only when evidence is clearly inadmissible on all potential grounds." *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010); *McGuffey*, 2020 U.S. Dist. LEXIS 17974, at *4.

A witness may present expert testimony if he or she can fulfill the following criteria:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact at issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702. The testimony must also be relevant and admissible under Federal Rules of Evidence 402 and 403. *United States v. Geiger*, 303 F. App'x 327, 329 (6th Cir. 2008). The Sixth Circuit applies a four-part test to analyze the admissibility of expert testimony under the rules of evidence. *Geiger*, 303 Fed. Appx. at 329 – 330. Expert testimony must be: (1) by a qualified expert with

3

knowledge, skill, experience, training, or education; (2) testifying on a proper subject that is relevant, meaning it will assist the trier of fact to understand the evidence or to determine a fact in issue; (3) in conformity to a generally accepted explanatory theory; (4) the probative value of which outweighs any unfair prejudicial effect. *Id*. at 330; *McGuffey v. Neil*, 2020 U.S. Dist. LEXIS 17974, at *6, 2020 WL 509416 (S.D. Ohio Jan. 15, 2020).

Last year, the United States Supreme Court addressed expert testimony regarding the usual behavior of drug couriers, offered in a case where the defendant claimed not to know she was moving drugs and found it passed muster to assist the jury in determining the credibility of the defendant's denial. *Diaz v. United States*, 602 U.S. 526, 534 (2024). This testimony was not offered by an academic expert or a person who had conducted studies on the behavior of drug couriers, but a Homeland Security Special Agent. *Id*. at 530. This holding that expert testimony of the usual behavior of people in particular circumstances may be offered to help the jury understand how to judge the credibility of witnesses (even criminal defendants!) should be sufficient to decide the issue here, but courts have addressed testimony as to common behaviors of victims of sexual violence specifically for this purpose also.

Recently the Supreme Court of New Hampshire, applying a state rule of evidence "nearly identical' to Federal Rule of Evidence 702 found that expert testimony on the closely connected issue of "the progression of abusive relationships and the counterintuitive behavior of victims." *State v. Raymond*, 2025 NH 30 at *P11, P13, (2025). That Court relied on, *inter alia*, Federal and other state Supreme Court precedent under *Daubert* allowing expert testimony to show that a victim's actions were "consistent with the behavior of abuse victims generally" and "behaviors commonly exhibited by child sexual abuse victims." *Id*.; *United States v. Alzanki*, 54 F.3d 994, 1006 (1st Cir. 1995); *State v. Salazar-Mercado*, 234 Ariz. 590, 591, 595 (2014). Expertise in this

4

area is commonly developed through interviews with individuals who are in the groups testified about. *United States v. Halamek*, 5 F.4th 1081, 1086-1089 (9th Cir. 2021); *United States v. LaVictor*, 848 F.3d 428, 443-444 (6th Cir. 2017). This principle certainly extends to adult victims of sexual harassment and assault, even when the methodology was not developed for forensic purposes. *United States v. Simmons*, 470 F.3d 1115, 1122-1123 (5th Cir. 2006).

"Rejection of expert testimony is the exception, rather than the rule." *Id*. (citing *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014)). Courts should broadly interpret Rule 702 with whether the testimony will assist the trier of fact. *Id*.

### III. ARGUMENT

#### a. Rikleen is qualified to issue the opinions expressed in her report.

Defendants attempt to paint Rikleen as a dilettante in this field by focusing on her legal practice, but ignoring her nearly two decades of experience in diversity and inclusion for women in the workplace, participation in studies of women in the workplace including sexual harassment and power dynamics, and providing training and consulting on these topics. *See* Appendix C of the Expert Report of Lauren Stiller Rikleen (ECF 249-1, pp. 36 - 44). As described above, Rikleen does not opine on the adequacy of the investigation. Rather, she discusses the power dynamics of sexual harassment and the role of those dynamics in victim silence and institutional responses. Rikleen attaches her lengthy CV and explicitly describes her qualifications on pages 2 through 5 of the expert report.

Rikleen served as the Executive Director of the Bowditch Institute for Women's Success, an Executive-in-Residence and Visiting Scholar at Boston College, and as President of the Rikleen Institute for Strategic Leadership. *Id*. She has written five books on power dynamics in sexual harassment and bullying in the workplace, strategy for lawyers from women who will be hiring,

workplace dynamics with millennial employees, success strategies for women lawyers, and removing barriers to women's success. *Id*. She has also written a substantial number of chapters, articles, and reports on the barriers women face in the workplace, power dynamics in the workplace, systemic protections for abusers, victim silence, and workplace investigations. *Id*. She has been recognized with awards and accolades. *Id*.

Most directly relevant, Rikleen describes the work she has done as the President of the Rikleen Institute for Strategic Leadership, including providing consulting, training and speaking on a variety of workplace culture issues including misconduct and sexual harassment. *Id*. at 2 – 5 (ECF 249-1). She has personally interviewed hundreds of women around the country about their experiences in the workplace and barriers to their success. *Id*. These interviews revealed the extent that power imbalances result in women remaining silent in the face of bias, negative behaviors, and harassment, and fearing retaliation. *Id*. Another important point from these interviews was that women do not trust institutions to conduct a fair inquiry and appropriately support them in the process. *Id*. These statements were consistent with the 2016 Equal Employment Opportunity Commission Select Task Force on the Study of Harassment in the Workplace. *Id*. Many women interviewed also told of retribution and retaliation after reporting harassment and negative behaviors. *Id*. Rikleen interviewed women in both academic and private sector environments. *Id*.

The depth and breadth of Rikleen's experience demonstrates that she is highly qualified to give her opinions in this matter. Not only is Rikleen qualified based upon her experience and expertise, but also her opinions are rooted in her personal knowledge derived from her interviews and consulting work. *See Halamek*, 5 F.4th at 1086-1089; *LaVictor*, 848 F.3d at 443-444; *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007) (holding that for non-scientific experts,

reliability may focus on personal knowledge or experience). Accordingly, Defendants' Motion should be denied and Rikleen should be permitted to testify as an expert.

### b. Rikleen's opinions will aid the jury in understanding Ms. Huang's claims and rebut Defendants' defenses.

This lawsuit is about the extensive and pervasive sexual harassment Ms. Huang suffered at the hands of Rizzoni. *See generally* Complaint (ECF 1). In response, Defendants are expected to attack Plaintiff's credibility by stating she never told anyone of the harassment prior to failing her candidacy exam. Further, they are expected to claim Ms. Huang's allegations are implausible because she did not take contemporaneous notes or journal about the harassment she suffered. As a result, a critical issue in this case is why Plaintiff did contemporaneously report the sexual harassment and assault and the impact of that silence on her credibility. Rikleen's opinions will assist the jury in understanding why a victim of sexual violence like Ms. Huang might remain silent.

Importantly, this testimony is not presented as testimony about Ms. Huang's credibility as such. Instead, this testimony is presented to help the jury to understand the usual behavior of victims of sexual violence, to help the jury in its own weighing of credibility. This is a common purpose for this kind of testimony – not to tell the jury what evidence is credible but to provide it with information that assists in assessing credibility. *Raymond*, 2025 NH 30 at *P11, P13; *Alzanki*, 54 F.3d at 1006; *Salazar-Mercado*, 234 Ariz. at 591, 595.

Expert testimony should be admitted if it is outside a lay juror's experience and will aid the jury in resolving a factual dispute. *United States v. Sheffey*, 57 F. 3d 1419, 1428 (6th Cir. 1995); *U.S. v. Bonds*, 12 F.3d 540, 557 (Dec. 15, 1993). Cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means for attacking admissible expert evidence. *Delay*, 2012 U.S. Dist. LEXIS 166350 at *9.

While sexual harassment is, unfortunately, prevalent in our society, the average lay juror likely has never been sexually harassed and faced with the decision of whether to make a complaint about being sexually harassed. Even less likely is the lay juror that understands the plight of a foreign national Ph.D. student that is sexually harassed and faces possible termination of her academic pursuits and deportation if she is not believed.

Most lay jurors have not extensively interviewed or surveyed large groups of sexual harassment victims to understand the varied and complex reasons why a victim may stay silent and endure ongoing sexual harassment. Indeed, such a juror would almost certainly be challenged at jury selection. While the lay juror may understand the basic concept of power imbalance, it is unlikely they understand how that power imbalance would cause a woman in Ms. Huang's position to fear retaliation and expect not to be believed. These are precisely the areas where Rikleen's opinions are necessary to help the jurors' understanding, as well as the kind of testimony which Supreme Courts (both federal and state) and circuit courts have repeatedly held is admissible.

### c. Defendants fail to cite any case law supporting the preclusion of Rikleen's testimony.

In their motion, Defendants cite several cases to support the propositions that Rikleen is either unqualified to give her opinions or her opinions will not aid the jury, but each case is either not binding upon this court and/or distinguishable from the matter at hand. Further, the reliance upon these cases is premised upon the false premises that Rikleen's testimony is solely to be critical

of Defendant OSU's Title IX investigation of Ms. Huang's complaint of sexual harassment and that the testimony is based solely on "scholarly reading."[1]

Defendants rely centrally on *Doe v. Colgate University*, 2017 U.S. Dist. LEXIS 180267, 2017 WL 4990629 (N.D. NY Oct. 31, 2017). In that case, the defendants moved to preclude plaintiff's expert, Aya Gruber. *Id*. at *19. Doe was a male student the university expelled after three other students made complaints of sexual assault and misconduct. *Id*. at *6 – 9. Gruber was a law professor focused on criminal procedure. *Id.* at *33. The court precluded Gruber's testimony because nothing in her experience or knowledge supported her opinions regarding the Title IX investigation and hearing process, the motivations and assumptions of the investigators and hearing officers, or victim recovery; and Gruber failed to cite or refer to any research, studies, or other information to support her sweeping and conclusory opinions. *Id.* at *22 – 35. Unlike Gruber, Rikleen properly relies on her extensive personal knowledge, studies, surveys and research to support each of her opinions on victim silence and power dynamics and the roles of those factors in institutional responses to complaints of sexual harassment.

Defendants cite three cases for the principle that "'reviewing reports' [is] not the same as experience and training." *Rogers v. City of Chicago*, 2001 U.S. Dist. LEXIS 21461, 2001 WL 1665157 (N.D. Ill. Dec. 26, 2001); *Gell v. Town of Aulander*, 2008 U.S. Dist. LEXIS 107245, *8-9, 2008 WL 5545036 (E.D. N.C. Dec. 1, 2008); *Parton v. UPS*, 2005 U.S. Dist. LEXIS 64014,

---

[1] These issues were previously briefed, although not decided, in July of 2021 (ECF 104, 108, 111, 113). At the time, Defendants, professing the same misunderstanding of the purposes and basis of Rikleen's testimony, accused Plaintiff of a "bait and switch" by not presenting this evidence for the reasons advanced by Defendants (ECF 111). Four years after that briefing, Defendants can no longer credibly claim they do not understand the purposes of this testimony.

2005 WL 5974445 (N.D. Ga. Aug. 2, 2005). This principle is only relevant if, like Defendants, the Court agrees to ignore that Rikleen has done far more than "review reports."

Unlike the experts in each of these cases, Rikleen has extensively participated in interviews of hundreds of women and in academic and workplace surveys, studies, and research as detailed more fully above. Rikleen's opinions are properly based upon her experience, personal knowledge, and other scholarly research, studies, and surveys. Rikleen is qualified to make her proffered opinions, the opinions will assist the jury in understanding victim silence, power dynamics, and the roles these topics place in institutional responses to sexual harassment complaints, and these opinions are relevant to Ms. Huang's claims.

### IV. CONCLUSION

Rikleen's expert opinions are appropriate and admissible under Federal Rule of Evidence 702, and are indeed a type of opinion commonly accepted by courts at all levels. Rikleen is qualified to give her opinions, and the opinions will assist the jury to understand critical issues that are outside the understanding of a lay juror. Accordingly, Ms. Huang respectfully requests this Honorable Court deny Defendants' Motion in Limine No. 1.

Respectfully Submitted,

Dated: July 22, 2025

/s/ *Bruce. C. Fox*
Bruce C. Fox, Esq. (*pro hac vice*)
Andrew J. Horowitz, Esq. (OH ID No. 0101753)
OBERMAYER REBMANN
MAXWELL & HIPPEL LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
Phone: (412) 566-1500
Fax: (412) 281-1530
bruce.fox@obermayer.com
andrew.horowitz@obermayer.com

*Counsel for Plaintiff Meng Huang*

10

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that all counsel of record are served with a true and correct copy of this document via the Court's CM/ECF system, pursuant to the Federal Rules of Civil Procedure.

*/s/ Bruce C. Fox, Esq.*