uIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MENG HUANG, | Case No: 2:19-CV-1976 |
| Plaintiff, | Hon. Chief Judge Sarah D. Morrison |
| | Hon. Mag. Judge Chelsey M. Vascura |
| v. | |
| | JURY TRIAL DEMANDED |
| THE OHIO STATE UNIVERSITY and GIORGIO RIZZONI, | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' OBJECTIONS TO OPENING STATEMENT POWERPOINT**

The overarching strategy of Defendants' objections is to stake out an unreasonably restrictive position on the continuum between permissibly stating the facts that a party intends to prove and impermissible argument. This is how Defendants object to virtually all of Plaintiff's opening PowerPoint slides.

Courts "look favorably upon the use of demonstrative evidence because it helps the jury understand the issues raised at trial." 4 Weinstein's Fed. Evid. § 611.02. In fact, illustrative aids are recognized as a highly effective method of communicating evidence to the jury as they cater to the strong human preference for receiving information visually. William S. Bailey, The Impact of the Digital Revolution on Modern Trials (National Institute for Trial Advocacy 2023). This is especially the case today as our jury boxes are filled with people who heavily rely on digital information and are therefore subject to increase susceptibility to distraction. *Id.* (citing Eyal Ophir, Clifford Nass, Anthony D. Wagner AD. Cognitive control in media multitaskers, PNAS, Sept. 15,

1

4924-6468-6949 v2

2009. Available at https://www.pnas.org/doi/abs/10.1073/pnas.0903620106 (accessed Sept. 3, 2025).

The Sixth Circuit has recognized that opening statements are "designed to allow each party to present an objective overview of the evidence intended to be introduced at trial" and that it is inappropriate to "use the opening statement to poison the jury's mind against the defendant or to recite items of highly questionable evidence." *United States v. Burns,* 298 F.3d 523, 543 (6th Cir. 2002). In *Burns,* the Sixth Circuit, however, affirmed the district court's decision to allow the use of PowerPoint presentation slides during an opening statement. *Id*. at 547. First, the court "presume[d] that the district court's instructions against viewing the opening statements as evidence cured any harm that might have been caused" by the PowerPoint presentation. *Id*. at 543. Second, while acknowledging that "photographs of large amounts of crack cocaine and the fistfuls of money might have confused the jury as to the actual amounts of drugs or money at issue in the case," the court found that "the potential prejudicial effect of the slides was not so great as to overwhelm the jury's ability to follow the court's instructions not to consider the opening statements as evidence." *Id*.

As explained in Thomas A. Mauet & Warren D. Wolfson, Trial Evidence (3d ed. 2005), the permissible scope of an opening statement has been allowed to broaden as courts have found that more comprehensive opening statements are assistive to the jury:

> The traditional view of opening statements is that they should be brief, state only facts, and avoid anything that might be considered an argument. The more modern view, recognizing the psychological significance of opening statements, is somewhat broader and permits stating themes, theories of the case, characterizations, and even conclusions as long as they are not excessively argumentative. The modern view recognizes that the jury is assisted not only by having a preview of the facts, but also hearing the parties' points of view about the upcoming evidence. The trial judge has great latitude in deciding the proper scope of opening statements...

2

4924-6468-6949 v2

*Id.*, at 29.

Plaintiff's opening statement (and its accompanying PowerPoint slides) will tell the jury what Plaintiff intends to prove, preview Plaintiff's case themes and theories of the case. This is well-within the proper scope of an opening as described above by Mauet & Wolfson. In reversing the district court for excluding relevant evidence in this case, the Sixth Circuit also cautioned that circumstantial evidence that provides explanation and context for the alleged behavior is probative and must be admitted. (Dkt. 46-2, at p.28).

## RESPONSES TO DEFENDANTS' SPECIFIC OBJECTIONS

1. Slide 2:

Defendants object to a slide that simply includes the words "Truth and Justice" as argumentative. Defendants, however, fail to explain how this slide is argumentative. This is a reasonable preview of one of Plaintiff's case themes. Moreover, would Defendants seriously argue that the role of the jury is anything other than determining truth and justice?

Regardless, this is not argumentative as suggested by Defendants (nor does it meet Mauet & Wolfson's "excessively argumentative" standard). This does not suggest that any fact is true or untrue, or that any inference should be made. It is not argument.

2. Slide 9:

Defendants object to the words, "timeline of harassment" as argument. Again, Defendants fail to explain how this is argumentative other than to say that it is something other than a bare preview of the evidence. This is no more argumentative than Plaintiff saying "we are going to show that Professor Rizzoni sexually harassed the Plaintiff over a period of time."

3. Slide 10:

4924-6468-6949 v2

Defendants object to this photo of Rizzoni sitting at a restaurant table with Ms. Huang and Phoebe You, a China-based employee of OSU. This photo is relevant to tell the story, as it was taken during the first interaction between Ms. Huang and Professor Rizzoni. It is hard to see how it is inflammatory—it is a picture of three adults sitting at a restaurant table and smiling for the camera. Notably, Ms. Huang will testify that this photo was taken by a member of the waitstaff, whom Rizzoni had handed his mobile phone to and requested that a photo be taken. She will further testify that Rizzoni sent her the photo following the dinner. Defendants' objection should be overruled because this photo is helpful for the Plaintiff to be able to tell her story and preview the evidence, and it is not irrelevant, unfairly prejudicial, or otherwise inflammatory.

4. Slide 11 (and unspecified subsequent slides):

Defendants object that these slides are argumentative because they characterize certain events as being "retaliation" or "harassment."

First, the terms "retaliation" and "harassment" are not merely legal terms that describe Ms. Huang's causes of action, but they are also words in the common English lexicon. Characterizing events in this manner is simply a reasonable means to preview Ms. Huang's case themes and present the facts that she intends to prove in an organized and structured manner.

5. Slide 12 (and unspecified subsequent slides):

Defendants object to the use of documents in this case that were annotated by Ms. Huang (mostly with underlining) to be submitted with her report of Rizzoni to OSU's human resources department. They are therefore original documents relating to the facts of the case—not documents that were altered for the purposes of litigation as suggested by Defendants.

4

4924-6468-6949 v2

Defendants further object to Plaintiff's use of "call-outs" to draw attention to particular passages from documents. This is not argumentative, but merely an attempt to preview the critical facts within a document for the jury.

Finally, Defendants object to the uses of quotation marks in the timeline. OSU argues that these quotation marks are being used to underscore Ms. Huang's bare allegations in a misleading manner. On the contrary, the quotation marks are used in the manner that quotation marks are generally used in the English language. For example, on slide 14, a timeline entry for June 10, 2015 uses quotation marks around a statement to Ms. Huang by Professor Rizzoni, citing Plaintiff's Exhibit 7. A review of the email cited by the timeline entry shows that this is an exact quote from Rizzoni's email to Ms. Huang—an appropriate use of quotation marks.

Some statements that are quoted in the timeline will also come from oral testimony. For example, also on slide 14, a September 28, 2015 entry describes a conversation between Ms. Huang and Professor Rizzoni in a restaurant, where Rizzoni said, "Meng, I pay for your monthly stipend, so you'd better listen to me; otherwise, we may have a problem." Ms. Huang will testify that Rizzoni said this to her; therefore, it is a fair preview of the evidence that she intends to prove.

6. Slide 27:

This slide is a reasonable preview of Plaintiff's evidence and case themes—namely that something changed for Ms. Huang when Rizzoni crossed a line by sexually assaulting her in his home. This will be part of her testimony and will be used to counter Defendants' case theme that Rizzoni sexually harassed Ms. Huang from the moment he met her, and she nonetheless agreed to be his student. This is not unreasonable argument.

7. Slide 51:

5

4924-6468-6949 v2

This slide will be used to preview evidence that Rizzoni manipulated Ms. Huang's Ph.D. candidacy committee to fail her exam and remove her from this program. Characterizing these events as "pulling out the rug" in the context of this fact pattern is not unreasonably argumentative.

8.  Slide 56 (and 57 and 90):

This objection is effectively an untimely motion in limine seeking to exclude evidence regarding OSU's investigation of Ms. Huang's allegations. While Ms. Huang is no longer pursuing a claim that OSU retaliated against her by conducting a "sham" investigation, some evidence regarding the investigation and its outcome and aftermath is relevant to Ms. Huang's claim for emotional distress damages. It is traumatic for any victim of sexual violence not to be believed, and Ms. Huang will testify about this trauma and its causes, as will her treating physicians. Discussion of the facts Ms. Huang intends to present regarding the investigation is therefore relevant. Defendants also argue that Ms. Huang's claim for retaliation against OSU under Title VII is outside the scope of the Sixth Circuit's remand order. This is wrong for the reasons argued in Plaintiff's opposition to Defendants' objections to jury instructions (Dkt. 284). Based on this argument, Defendants argue that Ms. Huang's claims for retaliation are against Rizzoni only (while admitting that OSU is vicariously liable for Rizzoni's actions under Title VII). This fails to include actions by other employees of OSU with whom Rizzoni colluded, such as the members of Ms. Huang's candidacy committee.

Nonetheless, Plaintiff withdraws slides 56 and 57 without prejudice to Plaintiff's position on the issues raised by this objection.

Plaintiff does not, however, withdraw slide 90. It is unclear how anything about slide 90 could be unreasonably argumentative or unfairly prejudicial, as the slide merely states that an

6

4924-6468-6949 v2

investigation was conducted by OSU HR of Rizzoni (showing his headshot) and introduces Kristi Hoge as the person who supervised the investigation (showing her headshot).

9.  Slides 59-72:

This is yet another untimely motion in limine—seeking to exclude all medical evidence of the physical manifestations of Plaintiff's emotional distress. This is inappropriate given the Sixth Circuit's finding that Judge Graham's exclusion of this evidence during the liability phase of trial was prejudicial reversible error. (Dkt. 46-2, at p. 35).

Defendants argue that Plaintiff has no witness to introduce this evidence. This is incorrect. While the Court excluded the testimony of one of Ms. Huang's physicians, Dr. Roy Lubit, it did not exclude the testimony of Ms. Huang's other treating medical providers, some of whom Plaintiff has identified as witnesses. Treating physicians may testify as to the symptoms presented by Ms. Huang, statements made by her, and their diagnoses without testifying as experts. *Fielden v. CSX Transp., Inc*., 482 F.3d 866, 869 (6th Cir. 2007) ("Treating physicians need not file an expert report under Rule 26(a)(2)(B) if their testimony relates to opinions about causation or diagnosis formed when the patient was treated"). In preparation for the first trial in this matter, Judge Graham ruled that the testimony of Ms. Huang's treating medical providers was admissible lay witness testimony on the issue of emotional distress, including their diagnoses of Ms. Huang and the statements that Ms. Huang made to them. (Dkt. 188, at p. 7). Moreover, Ms. Huang is entitled to testify regarding the symptoms that she observed and the correlation between the emergence and/or exacerbation of such symptoms with external stressors.

10. Slide 84:

Defendants object that the term "child prodigy" is beyond the common knowledge of the jury and requires expert testimony to prove. Defendants are mistaken, as this is a common English

7

term. Miriam-Webster defines the term "prodigy" as a "highly talented child or youth"[1] (the addition of the modifier "child" is perhaps redundant but harmless). Ms. Huang is qualified to testify regarding her childhood talents without the aid of an expert, as this is within the scope of her personal knowledge and is not a matter of opinion. Regardless, Defendants do not argue that the description of Ms. Huang as a child prodigy is argumentative or otherwise unfairly prejudicial.

11. <u>Slide 85 (and unspecified subsequent slides)</u>:

Defendants argue here that evidence that Rizzoni is a powerful professor within the OSU community is irrelevant and inflammatory.[2] This contention is plainly erroneous in light of the Sixth Circuit's finding that the Court committed reversible error by excluding evidence of the power dynamic between Ms. Huang and Professor Rizzoni. (Dkt. 462, at pp. 29-30).

While Defendants do not dispute that there was a power imbalance between Professor Rizzoni and Ms. Huang, Plaintiff is still entitled to present this evidence as it is still relevant. As explained by the Supreme Court in *Old Chief v. United States*, 519 U.S. 172, 179 (1997), relevance under Rule 401 is not affected by the availability of alternative proofs, including an admission by the objecting party that the fact in dispute is true. The Supreme Court cited the 1972 Advisory Committee Notes to Rule 401 on this point:

> The fact to which the evidence is directed need not be in dispute. While situations will arise which call for the exclusion of evidence offered to prove a point conceded by the opponent, the ruling should be made on the basis of such considerations as waste of time and undue prejudice (see Rule 403), rather than under any general requirement that evidence is admissible only if directed to matters in dispute.

*Id*. (quoting Advisory Committee's Notes on Fed. Rule Evid. 401). While the Supreme Court went on to explain that the availability of alternative proofs may be a factor in Rule 403 balancing,

---

[1] https://www.merriam-webster.com/dictionary/prodigy (accessed Sept. 2, 2025).
[2] Notably, Defendants do not argue that this is somehow argumentative.

4924-6468-6949 v2

Defendants have not explained why the probative value of evidence of the power imbalance is substantially outweighed by the danger of unfair prejudice—beyond a bald assertion that it is "inflammatory." Moreover, the Sixth Circuit's findings about the central importance of the power differential in this case preclude its exclusion under Rule 403.

Finally, the power imbalance is not merely a fact—it is something that had a profound effect on Ms. Huang and her actions. This is particularly important because one of Defendants' key defenses is that Ms. Huang did not report Rizzoni's harassment until after he failed her on her candidacy exam and that she did it "for revenge." The fact that Ms. Huang was acutely aware that Rizzoni was the Director of the Center for Automotive Research, brought a large amount of funding into the University, and flaunted his connections with powerful people is therefore highly relevant. Ms. Huang should therefore be entitled to preview that evidence to the jury during her opening as long as she does not do so in a manner that is unreasonably argumentative or inflammatory. The slides Defendants object to on this basis are neither.[3]

12. <u>Slide 87-89: Plaintiff withdraws these slides.</u>

13. <u>Slide 90: *See* Paragraph 8. above.</u>

14. <u>Slides 95-100: Plaintiff withdraws these slides.</u>

15. <u>Slides 101-104</u>:

These slides are designed to show the progression of time between the events giving rise to this lawsuit and the trial date. This is relevant to preview to the jury that some memories may

---

[3] Defendants' citation to *Thornton v. Federal Express Corp.*, 530 F.3d 451 (6th Cir. 2008) is inapposite. *Thornton* stands for the proposition that a Plaintiff cannot evade the *Faragher/Ellerth* defense by claiming that she was afraid to report the supervisor because of his power within the organization. Defendants are not using Plaintiff's delay in reporting to prove the *Faragher/Ellerth* defense—rather they are using her delay to undermine the credibility of her allegation that Professor Rizzoni sexually harassed her. *Thornton* does not prevent Ms. Huang from presenting evidence of her perception of the power imbalance under these circumstances.

4924-6468-6949 v2

have faded due to the passage of time. This is not an attempt to argue that Ms. Huang should be entitled to emotional distress damages due to the passage of time in litigation.

16. <u>Slides 105-106</u>:

      Slide 105 introduces facts about Ms. Huang that made her isolated and vulnerable. These facts will be proven by Ms. Huang's own testimony and will not require expert testimony to prove. She is therefore entitled to preview these facts and how they relate to her case themes for the jury.

      Plaintiff withdraws Slide 106.

17. <u>Slides 110, 111, and 119: <i>See</i> Paragraph 5, above.</u>

18. <u>Slides 117 and 118</u>:

      These slides show the IRS Forms W-2 provided to Ms. Huang for her work as an employee of OSU.[4] These documents are admissible as business records under Fed. R. Evid. 803(6). They will be used to show that OSU considered her to be an employee and compensated her as an employee. OSU does not raises any objection to these slides other than as to admissibility.

19. <u>Slides 121 and 122</u>:

      Defendants object to these slides, which show the first page of the lengthy report that Ms. Huang submitted to OSU to report Rizzoni's sexual harassment and retaliation, which she titled "An Influential Professor? A Powerful Director? The Ford Chair at OSU? Another Harvey Weinstein!!!" The slide then shows the first line of the body text of the document, which begins, "My name is Meng Huang." Next to the first page of the report is the same silhouette that is used

---

[4] Defendants mischaracterize this issue as one of late production in discovery. This makes little sense, as these are plainly documents generated by OSU. Rather, Defendants withdrew an objection based on Plaintiff's inadvertent failure to timely list these documents on her trial exhibit list (Plaintiff notified Defendants of this omission one week after the deadline).

4924-6468-6949 v2

throughout the presentation to refer to Ms. Huang. Defendants' purported concern that this is somehow misleading and could be interpreted as being authored by someone other than Ms. Huang is therefore unfounded.

It is also not inadmissible hearsay. The slide will be used to highlight fact that Ms. Huang submitted the report—not the truth of the contents of the report, and it is therefore not hearsay under Fed. R. Evid. 801(c)(2). To address Defendants' concern about whether Slide 122 is exposing the jury to the contents of the report, Plaintiff will agree to have her graphic designer blur all words on the page after "my name is Meng Huang."

20. <u>Slides 84, 91, 92, and 128</u>:

Defendants object to the silhouette that is used in the presentation to represent Professor Rizzoni. This silhouette was created by Plaintiff's graphic designer from stock artwork. The stock silhouette's head was modified by the designer to make it look more like Professor Rizzoni. Oddly, Defendants' objection is to what Defendants creatively describe as a "strange protrusion in the groin area," which in reality is plainly the tail of the silhouette's untucked shirt. It does not suggest anything else. Nonetheless, in order to resolve this dispute, Plaintiff will replace all instances of the silhouette image of Professor Rizzoni with the following edited version that removes the untucked shirt tail:

4924-6468-6949 v2



Respectfully Submitted,

Dated: September 3, 2025

/s/ Andrew J. Horowitz
Bruce C. Fox, Esq. (*pro hac vice*)
Andrew J. Horowitz, Esq. (OH ID No. 0101753)
OBERMAYER REBMANN
MAXWELL & HIPPEL LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
Phone: (412) 566-1500
Fax:    (412) 281-1530
bruce.fox@obermayer.com
andrew.horowitz@obermayer.com

*Counsel for Plaintiff Meng Huang*

12

4924-6468-6949 v2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that all counsel of record are served with a true and correct copy of this document via the Court's CM/ECF system, pursuant to the Federal Rules of Civil Procedure.


*/s/ Andrew J. Horowitz, Esq.*

4924-6468-6949 v2