**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: November 17, 2026

Mr. Daniel McArdle Booker
Obermayer Rebmann Maxwell & Hippel
525 William Penn Place
Suite 1710
Pittsburgh, PA 15219

Mr. Jeffrey Charles Gerish
Plunkett Cooney
38505 Woodward Avenue
Suite 100
Bloomfield Hills, MI 48304

Re: Case No. 25-3903, *Meng Huang v. OSU, et al*
Originating Case No. 2:19-cv-01976

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0462n.06

No. 25-3903

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| MENG HUANG,<br>Plaintiff-Appellant,<br>v.<br>THE OHIO STATE UNIVERSITY; GIORGIO RIZZONI,<br>Defendants-Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO<br><br>OPINION |

Before: KETHLEDGE, Chief Judge; READLER and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. This case is before us for the second time. Meng Huang, a former graduate student, sued both her university and her advisor based on claims of sexual harassment. In the first appeal, we vacated the district court's grant of summary judgment for the university and the jury's verdict for the advisor and remanded for a new trial. At the second trial, the jury again found for the advisor, and its factual findings extinguished the claims against the university. Huang's challenges to the retrial are either forfeited or lack merit, so we affirm.

**BACKGROUND**

Our previous opinion recites more fully the facts and allegations in this case. *See Huang v. Ohio State Univ.*, 116 F.4th 541 (6th Cir. 2024). Here, we set forth the facts relevant to this appeal only briefly.

Dr. Meng Huang enrolled at The Ohio State University to pursue a Ph.D. in engineering. While there, the university also paid her to do research at the Center for Automative Research, an

"interdisciplinary center that conducts research partnerships with automotive manufacturers and other external funders." *Id.* at 547. Professor Giorgio Rizzoni, the director of the Center, was Huang's Ph.D. advisor.

Huang alleges that, while her advisor, Rizzoni touched her in unwelcome and increasingly sexual ways. She also maintains that Rizzoni used his power over her (as her advisor and as the Center's director) and over her visa status (because she was on a student visa), as well as his influence in the field, to coerce her to go along with his harassment. And she says that, because she resisted his advances, Rizzoni retaliated against her by manipulating her candidacy exam to ensure that she would fail and not get the usual chance to retake it.

Rizzoni, for his part, denies Huang's allegations. He asserts that Huang struggled as a student—and ultimately failed the exam—because she did not focus on her research, work hard enough, or follow his advice. He notes that she told nobody about his alleged conduct until after she failed her exam and contends that she fabricated the allegations to save face.

Huang sued Rizzoni and OSU, bringing several claims that are relevant here. *First*, she brought Title VII claims for retaliation and quid pro quo sexual harassment against OSU. *See* 42 U.S.C. §§ 2000e-2, e-3. *Second*, she brought a claim under 42 U.S.C. § 1983 against Rizzoni for violating her Fourteenth Amendment due process right to bodily integrity. The district court granted OSU's motion for summary judgment on Huang's Title VII claims, holding that Huang was not an "employee" of the university for Title VII purposes and thus could not bring those claims against it. *See Huang*, 116 F.4th at 554. It allowed the § 1983 claim to proceed to trial, where a jury found for Rizzoni. *Id.* at 555.

Huang appealed the grant of summary judgment as well as the district court's decisions to trifurcate the trial (into separate phases for liability, compensatory damages, and punitive

damages) and exclude certain evidence. *Id.* at 562–63. And she prevailed, at least in part. *First*, we reversed the grant of summary judgment on the Title VII claims, holding that whether Huang was an employee as defined by Title VII could not be resolved as a matter of law based on the record. *Id.* at 559. In doing so, we explained that, to determine whether Huang was an employee for Title VII purposes, "the jury should make factual findings regarding Rizzoni's disputed control over where and when Huang worked," and that once the factual dispute was "settled by the jury, the district court should decide as a matter of law whether Huang was an OSU employee." *Id.* at 559–60. *Second*, we vacated the judgment for Rizzoni on the § 1983 claim after determining that the district court had abused its discretion in structuring the trial and limiting Huang's evidence. *Id.* at 563, 567, 569. We therefore remanded for a new trial on both the Title VII and § 1983 claims. *Id.* at 569–70.

At the second trial, Huang lost again. The jury returned a special verdict finding that neither OSU nor Rizzoni had the "right to control the manner and means by which Dr. Huang accomplished her work." Special Verdict Form, R. 311, PageID 9565. The district court therefore held that Huang was not an OSU employee at the relevant time and entered judgment for the university on her Title VII claims. The jury also found for Rizzoni on the § 1983 claim. Huang timely appealed.

## ANALYSIS

Huang raises four issues in this appeal. *First*, she argues that the district court erred in how it instructed the jury regarding the relevant facts for determining whether she was an employee under Title VII. *Second*, she contends that the district court abused its discretion in excluding evidence about a survey on sexual assault at OSU. *Third*, she argues that the district court improperly prohibited her from requesting economic damages in her closing argument. *Fourth*,

she says that the second and third errors cumulatively justify a new trial, even if they are insufficient to do so individually. She asks that we vacate the judgment and remand for a new trial. But Huang forfeited her first challenge and her others do not persuade us to disturb the verdict yet again.

**I. Employee Status**

Huang first argues that the district court "erred in its manner of" putting the question of her employee status to the jury. Appellant Br. at 9. To prevail on her Title VII claims against OSU, Huang had to prove that she was not just a student, but an OSU employee within the meaning of the statute—or else Title VII's protections wouldn't apply to her. *See Huang*, 116 F.4th at 555–56. Because whether she counts as a Title VII employee is a legal question, she contends that the district court erred by "submitting the ultimate legal question of [her] employee status to the jury." Appellant Br. at 13. As she explains, the district court instructed the jury to answer a single special interrogatory about Rizzoni's and OSU's "right to control" her work, and based on its answer—"no"—the district court held that Huang was not an employee for Title VII purposes. Huang concedes that she did not object to this interrogatory before it was given to the jury. Nevertheless, she says the district court should have instead had the jury "make discrete historical findings" regarding each of thirteen factors that the Supreme Court has stated are relevant to whether someone is an employee for Title VII purposes. *Id.* at 13, 15–17. And (she argues that) from those factual findings, the district court should have determined her employee status.

We need not resolve this challenge because Huang forfeited it by failing to raise it before the district court. When a party does not object to a jury interrogatory despite having the opportunity to do so, their objection is forfeited and we generally review for plain error. *United States v. Hughes*, 505 F.3d 578, 597 (6th Cir. 2007); *Reynolds v. Green*, 184 F.3d 589, 594 (6th

Cir. 1999). But we also have discretion not to address it on appeal. *See Joseph v. Joseph*, No. 19-3350, 2022 WL 3536273, at *18 (6th Cir. Aug. 18, 2022); *cf. also Libbey-Owens-Ford Co. v. Ins. Co. of N. Am.*, 9 F.3d 422, 427–28 (6th Cir. 1993); *Eid v. Saint-Gobain Abrasives, Inc.*, 377 F. App'x 438, 442 (6th Cir. 2010) (where party fails to object to jury instruction, "this court's review is discretionary").

"Under the circumstances of this case," we think "it is appropriate to decline to review" Huang's challenge. *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 451 (6th Cir. 2011). A key purpose of the rule requiring contemporaneous objections to jury instructions "is to give the district court an opportunity to correct errors" before charging the jury, and thus to "prevent unnecessary new trials" based on "errors in jury instructions that the district court could have corrected if timely brought to its attention." *Reynolds*, 184 F.3d at 595. Here, at the final pretrial conference—over a week before trial began and over two weeks before the special interrogatory went to the jury—the district court noted that it had been thinking hard about "how to handle" our prior guidance on this issue. Pretrial Conference Tr., R. 279, PageID 9331. It therefore expressly invited the parties to propose edits to its draft interrogatory. At the charging conference, the district court again asked the parties whether they had any objections to its proposed instructions. Huang's counsel told the district court they did not. But given its repeated solicitation of input from the parties, the district court may well have changed the interrogatory if she had objected or suggested any changes. It would be unfair to the court and the defendants to give Huang a third trial when she not only had ample opportunity to object to the interrogatory before it was given to the jury, but also was explicitly invited to do so. *See Libbey-Owens-Ford*, 9 F.3d at 427–28.

## II. Campus Climate Survey

Huang also argues that the district court improperly prevented her from introducing into evidence portions of a slideshow showing the results of a campus climate survey about sexual assault at OSU. Huang contended that the survey results would have made her allegations more plausible by highlighting the frequency of sexual assault against OSU graduate students and the frequency with which that assault goes unreported. The defendants objected to the evidence as irrelevant, and the district court sustained the objection.

We review challenges to evidentiary rulings for abuse of discretion. *United States v. Betro*, 115 F.4th 429, 449 (6th Cir. 2024). Here, our review is hampered by the fact that Huang has not made the slides she wished to admit part of the record on appeal. Without the proffered slides, it is difficult for us to "revisit the district court's thinking" on the relevance of the survey evidence or evaluate any prejudice Huang may have suffered due to their exclusion. *Beck v. Haik*, 377 F.3d 624, 638 (6th Cir. 2004).[1] And even if the district court erred in excluding this evidence, we grant a new trial only if the error affected Huang's "substantial rights" by "'potentially chang[ing] the outcome' of the trial." *Huang*, 116 F.4th at 567 (quoting *P.I. & I. Motor Express, Inc. v. RLI Ins. Co.*, 40 F.4th 398, 416 (6th Cir. 2022)). As the appellant, Huang has the burden of demonstrating

---

[1] To be sure, in appeals to us from district courts, litigants are generally not required to file appendices. *See* 6 Cir. R. 30(a). But parties may file appendices that include exhibits that are "not part of the district court's electronic record" but are "necessary for the court to understand the issues and decide the appeal." *Id.* R. 10(b). Moreover, our court's guidance notes that "trial exhibits may present special issues" and that parties may need to submit appendices or digital copies of exhibits that were not electronically filed before the district court. *See* Sixth Circuit Appendix Checklist, https://perma.cc/KN5N-3W9F. It notes further that parties "should not assume that the court of appeals has access to" trial exhibits. *Id.* The fact that we generally do not require appendices, therefore, does not relieve litigants of their responsibility to ensure that we receive the exhibits necessary to evaluate their arguments.

prejudice. *See A.K. ex rel. Kocher v. Durham Sch. Servs., L.P.*, 969 F.3d 625, 629–30 (6th Cir. 2020). She has not met this burden.

*First*, Huang has not shown that the slides she sought to introduce had any meaningful probative value. Given that we do not have the slides before us, we cannot fully ascertain their evidentiary force. Moreover, the trial transcript and the parties' briefs leave many questions about the slides unanswered. For one thing, Huang sought to introduce not the survey itself, but portions of a slideshow recounting portions of the survey, and it's unclear from the record what and how much the slides actually import from the survey—not to mention what the survey itself said or what its methodology or sample size was. For another, the snippets of the survey in the slides Huang sought to introduce apparently regard, at least in part, types of sexual assault other than those Huang alleges. Without having the slides before us, the extent to which they regard conduct like that Huang alleges is unclear. All in all, Huang has failed to provide a sufficient basis for us to conclude that the slides detailing the survey had enough probative weight "to raise any likelihood that it would have affected the jury's verdict." *Dortch v. Fowler*, 588 F.3d 396, 402 (6th Cir. 2009).

*Second*, the survey appears cumulative of other evidence. In arguing for the slides' admission, Huang's attorney said that the "most important part" of the survey was its discussion of reasons that victims do not report sexual assault. Trial Tr. Vol. V, R. 325-4, PageID 10682. But Huang testified to her own reasons for not reporting immediately. And doctors who treated her testified that her symptoms and reactions were consistent with those of "other victims of sexual violence" at OSU and that "80 percent of assault cases are never reported." Trial Tr. Vol. III, R. 325-2, PageID 10353; Trial Tr. Vol. V, R. 325-4, PageID 10751. Indeed, Huang emphasized these points in her closing argument. Without knowing what the survey said, we cannot say it offered

anything meaningfully above and beyond this other testimony. *See Kocher*, 969 F.3d at 632 (error harmless where, among other things, the "jury heard much of what we [we]re told was contained in" excluded evidence).

In sum, considering that the survey was both of unclear relevance and cumulative of other testimony, Huang has not shown that its exclusion "'potentially chang[ed] the outcome' of the trial." *Huang*, 116 F.4th at 567 (quoting *P.I. & I. Motor Express*, 40 F.4th at 416).

**III. Lost Wages**

Huang next claims that the district court erred in its rulings regarding her claim that she lost wages due to Rizzoni's malfeasance. In her opening brief, Huang (at points) appears to challenge both the district court's "exclusion of economic damages evidence" and its ruling that she could not argue these damages in closing. Appellant Br. at 26 (citation modified). But she identifies no instance in which the district court excluded any evidence that she sought to present about lost wages. Nor does our review of the record reveal such an instance. Because she was never prevented from admitting evidence on the topic, her evidentiary challenge fails.

The district court did prevent Huang from "making any closing arguments as to lost wages damages," Trial Tr. Vol. VII, R. 325-6, PageID 10997, but her challenge to that ruling is likewise unavailing. Typically, Huang's challenge to the district court's rulings on damages would be moot because the jury found no liability on Rizzoni's part—and found facts that led the district court to rule for OSU as a matter of law. *Cf. Grimes v. Mazda N. Am. Operations*, 355 F.3d 566, 573 (6th Cir. 2004). That's because if Rizzoni and OSU are not liable, errors about damages are generally harmless. But Huang also suggests that this error infected the verdict on liability by conveying to

the jury a sense that the alleged assaults weren't that serious, because "if she didn't suffer any economic loss, how bad could her treatment have really been?" Appellant Br. at 28.[2]

We disagree. As noted, the district court did not prevent Huang from introducing evidence about lost wages. And Huang did present evidence about the effects that Rizzoni's conduct had on her earning potential. She also argued in her closing that Rizzoni's alleged conduct seriously affected her—including financially—contending that it delayed her Ph.D., limited her job options, gave her post-traumatic stress disorder and depression, and could have affected her visa to stay in the country. Given that the jury heard all this evidence and argument—and still found for Rizzoni—it seems highly unlikely that reference to an additional theory of damages in her closing argument would have led the jury to return a different liability verdict. *Cf. Thompson v. Camp*, 167 F.2d 733, 734 (6th Cir. 1948). We therefore conclude that any error in the district court's economic damages ruling was harmless, precluding remand for a new trial. *See* 28 U.S.C. § 2111; Fed. R. App. Proc. 61.

## IV. Cumulative Error

Finally, Huang claims that the exclusion of the campus climate survey and the preclusion of her economic damages theory together created unfair prejudice requiring a new trial. In some

[2] The parties appear to agree that we should review this challenge for abuse of discretion, presumably because the ruling functioned as an order on a motion in limine insofar as it limited Huang's ability to argue economic damages during her closing statement. But because the ruling "bar[red] the jury from hearing [Huang's] argument" on economic damages, it "essentially grant[ed] the[] [defendants] judgment as a matter of law on that point." *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020). So arguably, the district court's ruling would be more properly treated as a grant of judgment as a matter of law—and thus reviewed de novo rather than for abuse of discretion. *See, e.g.*, *Arnold v. Wilder*, 657 F.3d 353, 368 (6th Cir. 2011). We need not resolve this issue, however, because Huang's "substantive quarrel with" that ruling "fails under either the abuse-of-discretion standard applicable to review of a motion in limine or under the de novo standard" applicable to review of a grant of judgment as a matter of law. *Petty v. Metro. Gov't of Nashville & Davidson Cnty.*, 687 F.3d 710, 721 (6th Cir. 2012).

cases, the "cumulative effect of errors that are harmless by themselves can be so prejudicial as to warrant a new trial." *United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012). But we cannot determine the effect of the survey's exclusion, and any prejudicial effect of the lost wages ruling was minimal. So even taking these rulings together (and even assuming they both constituted error), Huang has not shown that they affected her substantial rights. She is thus not entitled to a third trial.

**CONCLUSION**

We affirm the judgment of the district court.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-3903

MENG HUANG,

Plaintiff - Appellant,

v.

THE OHIO STATE UNIVERSITY; GIORGIO RIZZONI,

Defendants - Appellees.

Before: KETHLEDGE, Chief Judge; READLER and BLOOMEKATZ, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED. IT IS FURTHER ORDERED that Defendants' motion to dismiss the appeal is DENIED AS MOOT.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk